1        IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF PUERTO RICO
2

3

4    MARÍA ALSINA ORTIZ, et al.,

5    Plaintiffs

6                                          CIVIL 98-1893 (CCC)

7    v.

8    ZOE LABOY, et al.,

9    Defendants

10

11

12          MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

13        This matter is before this court on defendants Zoe Laboy Alvarado (hereinafter

14   "Laboy") and Sixto Marrero Rodríguez' (hereinafter "Marrero") motion for summary

15   judgment filed on May 1, 2000. (Docket No. 94.)  On June 29, 2000, plaintiff María

16   Alsina-Ortiz (hereinafter "Alsina") filed a response in opposition to defendants' motion for

17   summary judgment.  (Docket No. 111.)  Defendants Laboy and Marrero filed on

18   September 15, 2000, a motion pursuant to Rule 56(e) and a response to plaintiff's

19   opposition to their motion for summary judgment. (Docket No. 158.)  On October 25,

20   2000, plaintiff filed a supplement and/or reply statement of contested facts. (Docket No.

21 - 175.)  Plaintiff then filed a supplemental response in opposition to defendants' motion for

22   summary judgment on October 19, 2001.  (Docket No. 224.)  On November 26, 2001,

23   plaintiff filed a motion submitting a second supplement to the statement of contested facts.

24   (Docket No. 229.)

25                          I. Factual Background

26        On or about November 6, 1997, Mr. Orlando Ocasio Alsina arrived at the state

27   prison at Bayamón.  On November 8, 1997, a riot occurred at the state prison, and as a

28   result of the revolt, Mr. Orlando Ocasio Alsina was allegedly hit on the back of his head by

CIVIL 98-1893 (JAG)                    2

a correctional officer and as a result suffered a serious head injury. The right side of his body was immediately paralyzed because of the head injury. Also, he was constantly complaining of pain in his head, his body was shaking, he was evidencing convulsions and had other symptoms. He was suffering physically and mentally, as described, for over six months. During those six months, co-defendants' allegedly committed acts and/or omissions with deliberate indifference, callous disregard and/or recklessness when failing to provide Orlando Ocasio Alsina with adequate medical attention. Prior to November 8, 1997, Mr. Orlando Ocasio Alsina could walk and was very strong. (Docket No. 1, at 9-10.)

On January 2, 1998, he was taken to the Medical Center at Río Piedras because he was suffering from strong and repetitive convulsions. After Mr. Orlando Ocasio Alsina's family requested from the co-defendants for some time to permit him to receive the medical treatment he needed outside the institution, their request was granted. He was also taken to the Medical Center at Río Piedras, after the Superior Court, Caguas Part, issued an order so that Mr. Orlando Ocasio Alsina be provided adequate medical attention he needed. The court issued the order on December 23, 1997, and on January 2, 1998, he was taken to the Medical Center at Río Piedras and remained there for 14 days. (Docket No. 1, at 10.)

On May 11, 1998, Mr. Orlando Ocasio Alsina died. Ms. María Alsina Ortiz is Mr. Orlando Ocasio Alsina's mother who had always lived with him and had the intention of doing so for as long as possible. (Docket No. 1, at 11.) On August 5, 1998, plaintiff Alsina filed a complaint claiming that all the defendants acted with reckless and callous disregard since they knew or should have known that Mr. Orlando Ocasio Alsina was not being provided the medical attention that he needed in order to treat his condition. Plaintiff Alsina claims that defendants are liable under 42 U.S.C. § 1983 and the Eighth Amendment of the Constitution of the United States, for breach of their legal duty to

CIVIL 98-1893 (JAG)                         3

afford adequate medical services and/or attention and for their deliberate indifference towards Mr. Orlando Ocasio Alsina's medical needs.  (Docket No. 1, at 22-26.)

## II.  Summary Judgment Standard

Summary judgment is entered only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001); see Abbadessa v. Moore Bus. Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993).  To find in favor of the defendants, this court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); see also Pérez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001); Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

In a motion for summary judgment, the moving party must demonstrate "an absence of evidence to support the nonmoving party's case" to discharge its burden of proof. Celotex Corp. v. Catrett, 477 U.S. at 325.  Then the nonmoving party adopts the burden of showing that there is a factual disagreement.  "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 332 (1st Cir. 1997) (quoting Leblanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993), cert. denied., 511 U.S. 1018 (1994)).  Plaintiff may not rely on "conclusory allegations, improbable inferences, and unsupported speculation." Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.

1  CIVIL 98-1893 (JAG)                    4

2

3  1990)); see Burns v. State Police Ass'n of Mass., 230 F.3d 8, 9 (1st Cir. 2000). Only at this

4  point does the court construe material facts and reasonable inferences in favor of the

5  nonmoving party. Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997),

6  aff'd, 141 F.3d 1149 (1st Cir. 1998).

7        In the District Court of Puerto Rico, Local Rule 311.12, requires a motion for

8  summary judgment to be accompanied by a separate, short and concise statement of

9  material facts that supports the moving party's claim that there are no genuine issues of

10  material fact in dispute. These facts are then deemed admitted until the nonmoving party

11  provides a similarly separate, short and concise statement of material fact establishing that

12  there is a genuine issue in dispute. Local Rules, United States District Court for the

13  District of Puerto Rico, Local Rule 311(12) (Michie 1996); see Morales v. A.C. Orssleff's

14  EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 26 (1st Cir.

15  2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see also Corrada Betances v.

16  Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001). These facts must be supported by

17  specific reference to the record, thereby pointing the court to any genuine issues of material

18  fact and eliminating the problem of the court having to "ferret through the Record."

19  Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see Stepanischen v. Merchants

20  Despatch Transp. Corp., 722 F.2d 922, 930-31 (1st Cir. 1983); Carmona Ríos v. Aramark

21  Corp., 139 F. Supp. 2d 210 (D.P.R. 2001); Velázquez Casillas v. Forest Lab., Inc., 90 F.

22  Supp. 2d 161, 163 (D.P.R. 2000). Failure to comply with this rule may result, where

23  appropriate, in judgment in favor of the opposing party. Morales v. A.C. Orssleff's EFTF,

24  246 F.3d at 33; Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d at 927.

25        In compliance with Rule 311.12 defendants filed a Statement of Uncontested

26  Material Facts.

27

28

CIVIL 98-1893 (JAG)                              5

## Statement of Uncontested Material Facts

1.   Defendant Laboy-Alvarado became Administrator of the Administration of Corrections on March, 1997.  (See Sworn Statement of Laboy-Alvarado joined hereto and forming part hereof as Exhibit A.)

2.   Defendant Marrero-Rodríguez was Sub-Director of the Bayamón Correctional Complex from January 15th, 1997 through January 14th, 1998. Effective January 15th, 1998 he was assigned to the San Juan Region. (See Sworn Statement of Marrero-Rodríguez joined hereto and forming part hereof as Exhibit B).

3.   That as Sub-Director of the Bayamón Correctional Complex, Marrero-Rodríguez was responsible for the general supervision and coordination of the operations and programs carried out in the various Complex institutions and not of their daily operations.  That duty to carry out the daily operations was the responsibility of the line staff in each particular institution being the highest position that of warden and the lowest that of correctional officer. (See Exhibit B).

4.   On November 8th, 1997, a riot occurred at the Bayamón Regional Metropolitan Institution, known as "308".  Some inmates were injured as a result.  Said inmates, including Orlando Ocasio Alsina were sent to various medical facilities to be examined and to receive medical care.  (See memoranda of November 10, 1997 and November 17, 1997 on the riot joined hereto and forming part hereof as Exhibit C).

5.   In the case of Orlando Ocasio-Alsina he was sent to the Bayamón Regional Hospital, also known as the Ramón Ruiz Arnau Hospital, to receive medical attention.  (See Exhibit C, at page 5; see also Medical Record joined hereto and forming part hereof as Exhibit D).

6.   Defendants Laboy-Alvarado and Marrero-Rodríguez knew about the riot, the fact that some inmates were injured, and that they were provided medical attention.  (See Exhibits A and B, respectively; see also Exhibit C).

7.   Defendant Laboy-Alvarado, at the time of the incident alleged in the complaint, was not placed on notice that Ocasio-Alsina allegedly needed further medical attention and that it was not being provided at the institution where he was confined.  (See Exhibit A; see also excerpts of depositions of Mrs. María Alsina, at pages 56-58, joined hereto as Exhibit E; of Mrs. María Esther Ocasio, at pages 41-43, joined hereto as Exhibit F; of Mr. Juan Alsina Ortiz, at pages 14 and 15, joined hereto as Exhibit G; of Mrs. María Virgen Burgos, at page 12, joined hereto as Exhibit H; of Mrs. Gladys Ocasio-Alsina, at page 22, joined hereto as Exhibit I; and of Mr. Antonio Caratini, at page 17, joined hereto as Exhibit J).

8.   Defendant Laboy-Alvarado, at the time of the incident alleged in the complaint, was not placed on notice, nor had any knowledge, the Orlando Ocasio-Alsina was not allegedly receiving the medical care required by the Medical and Mental Health Care plans.  (See Exhibits A and E through J).

9.   Defendant Marrero-Rodríguez was not placed on notice that Ocasio-Alsina allegedly needed further medial attention and that he was not receiving said medical care at the institution where he was confined.  (See Exhibit B).

10.  Ocasio Alsina did not file a complaint with the Complaint Division of the Administration of Corrections regarding the alleged failure to provide him with medical care.  (See Memoranda joined hereto as Exhibit K).

CIVIL 98-1893 (JAG)                        6

11. That there are approximately 3,000 inmates confined at the Bayamón Correctional Complex and approximately 15,000 system-wide. (See Exhibits A and B).

12. That at the time of the incident alleged in the complaint, the Department of Health was the agency responsible for providing health/medical care, the required health care staff, the required pharmaceutical services, among others, to the inmates under the custody of the Administration of Correction. (See Medical Care and Health Care plans [sic], approved by Judge Pérez Giménez in the Morales Feliciano class action joined hereto and forming part hereof as Exhibit L; see also Exhibits A and B).

13. The Medical Records of the Correctional Health Services Program of the Department of Health reflect the Orlando Ocasio-Alsina was examined, evaluated and/or treated at medical facilities within the correctional system and at external facilities such as the Medical Center and the Ramón Ruiz Arnau Hospital on many occasions between November 8, 1997 through May 11, 1998. (See Exhibit D and the Medical Records of the Correctional Health Services Program, joined hereto and forming part hereof as Exhibit M).

14. Orlando Ocasio-Alsina died on May 11, 1998. Pursuant to the autopsy performed by the Forensic Pathologist, Dra. María Conte, Orlando Ocasio Alsina died of a necrotizing encephalitis associated with AIDS. (See Forensic Pathologist Report, page 3, joined hereto and forming part hereof as Exhibit N).

Docket No. 94, Defendants Zoe Laboy-Alvarado and Sixto Marrero-Rodríguez's Statement of Uncontested Material Facts, at 1-4.

### III. Analysis

"In order to state a valid claim under 42 U.S.C. § 1983 plaintiff must allege and prove the following elements: (1) that the conduct complained of was committed by a person acting 'under color of law.' ... (2) that this conduct 'deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." ... (3) that the defendant was personally and directly involved in causing the violation of the plaintiff's federally protected rights." Rodríguez-Vázquez v. Cintrón-Rodríguez, 160 F. Supp. 2d 204, 209-10 (D.P.R. 2001) (citations omitted). See also Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999); Martínez v. Colón, 54 F.3d 980, 984 (1st Cir.), cert. denied, 516 U.S. 987 (1995). As to the third element required, this may consist of direct acts by the defendant, certain acts performed at defendant's discretion, or

CIVIL 98-1893 (JAG)                                7

knowledge and consent. <u>Rodríguez-Vázquez v. Cintrón-Rodríguez</u>, 160 F. Supp. 2d at 210. "Although a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a respondeat superior theory, ... he may be liable under section 1983 on the basis of his own acts or omissions[.]" <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581(1st Cir. 1994) (citations omitted). To prevail on a supervisory liability claim plaintiff "not only must show deliberate indifference or its equivalent, but also must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." <u>Id.</u> at 582.

Defendants argue that plaintiff has failed to contest the relevant and material facts of the case and has instead raised issues that are not relevant, material and/or genuine to the case against the appearing co-defendants. In addition, defendants claim that plaintiff's failure to comply with Rule 311.12 "anti-ferret rule" has forced them to search through the record in order to determine whether plaintiff's statements are supported by the evidence. Finally, defendants object to plaintiff's use of inadmissible evidence to support many of the alleged contested facts." (Docket No. 158 at 2.)

Defendants argue that it still remains uncontested that defendant Sixto Marrero is responsible for the general supervision and coordination of the operations of the institution under his command rather than of the daily operations. (Docket No. 158, at 5.) Plaintiff's statement of contested facts (Docket No. 111) lists Sixto Marrero's duties and responsibilities but fails to establish that he is also responsible for the daily operations within the institution. Therefore, it remains uncontested that defendant Marrero is responsible for the general supervision and coordination in the various institutions under his command and not for the daily operations of the institution. In plaintiff's Exhibit 1, page 18, line 19, it indicates that defendant Marrero was responsible for the general supervision of the institution operations but was not responsible for implementing the various institutional operations on a daily basis. In fact, the execution of the daily

CIVIL 98-1893 (JAG)                    8

operations was the responsibility of the line staff in each particular institution. (Docket 94, Exhibit B, at 2, l. 5.) Additionally, plaintiff argues that both defendants had the duty to provide medical and/or health assistance to the inmates. From the evidence presented, it is clear that the agency responsible for delivering medical assistance and/or attention is the Department of Health.[1] The Administration of Corrections has the responsibility to provide the "development, construction, renovation and designation of space for medical care, classification and housing, transportation" to afford the inmates the required medical care and not the medical care itself. (Docket No. 111, at 5, ¶ 7.) Thus, it remains uncontested that neither defendant Marrero nor Laboy had the responsibility of delivering medical care to inmates nor to Orlando Ocasio Alsina.

Defendants argue that despite plaintiff's assertion concerning uncontested fact number 4, she has failed to contest that on November 8, 1997, a riot occurred at the Bayamón Regional Metropolitan Institution, that various inmates were injured, including Orlando Ocasio Alsina, and as a result of the revolt all the inmates injured were taken to different medical facilities to receive treatment. (Docket No. 94, at 2, ¶ 4.) Plaintiff responded, not by opposing defendants' statement but rather by arguing that Orlando Ocasio Alsina received insufficient as well as inadequate medical treatment for the injuries he suffered on November 8, 1997. (Docket No. 111, at 7-8, ¶ 12.) Plaintiff's contention does not focus on opposing defendants' allegation and is unsubstantiated by the evidence. The evidence presented by the plaintiff evinces that Orlando Ocasio Alsina made several "sick calls" while at the Bayamón Institution and had a follow-up appointment with an internist that was rescheduled to December 9, 1997. (See Docket No. 111, Exhibits 60, 61, 62, 64 and 63 respectively.) Furthermore, plaintiff's use of testimony from several

---

[1]See Docket 111, Exhibit 39, app. A, at 1.

CIVIL 98-1893 (JAG)                              9

expert witnesses holds no relation to the claims against the defendants. (See Docket No. 111, Exhibit 23, at 30; Exhibit 24, at 15-16, 31-32, 38; Exhibit 28, at 13-14; Exhibit 30.) The testimonies of the experts do not mention or imply in any way the defendants nor their alleged deliberate indifference towards Orlando Ocasio Alsina's medical condition, and therefore are immaterial to the issues raised in this motion. Plaintiff's evidence does not counter defendants' contention that Orlando Ocasio Alsina did in fact receive medical attention after November 8, 1997 and therefore said issue remains uncontested.

As to defendants' uncontested fact number 5, plaintiff also fails to contest said issue. Plaintiff claims that Orlando Ocasio Alsina was treated four days after the injury and because he was not given adequate medical attention, his condition worsened. The issue of the adequacy regarding the medical attention Orlando Ocasio Alsina received after his injury is not raised in defendants' statement of uncontested facts nor is it relevant to plaintiff's claim regarding the violation of Orlando Ocasio Alsina's constitutional rights. "[A] complaint that a physician had been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Furthermore, plaintiff's Exhibit 5 which contains the deposition of Félix Ramos Moulier, an inmate at the Bayamón Institution at the time the riot occurred, points out that on the day of the riot everyone was given medical assistance, including Orlando Ocasio Alsina. (Docket No. 111, Exhibit 5, at 23, ¶ 7-17.) Plaintiff has not contested the testimony of Félix Ramos Moulier.

Whether defendants Marrero and Laboy knew about the riot, that some inmates were injured as a result of said event and that they were provided medical assistance, is an uncontested fact that has not been controverted by the plaintiff. Plaintiff argues that

CIVIL 98-1893 (JAG)                    10

because defendant Laboy was a defendant in the Carlos Morales Feliciano case and was aware of the problems discussed in such case, she knew or should have known that the inmates were not receiving adequate medical attention. (Docket No. 111, at 8-9, ¶ 14.) While plaintiff's Exhibit 20 does demonstrate that at the time of the Carlos Morales Feliciano case she was aware of the risks to inmates and the problems discussed in the Comprehensive Report, there is no evidence that would warrant the conclusion that defendants' knowledge of the Carlos Morales Feliciano case automatically establishes that she knew or should have known about the medical care given specifically to Orlando Ocasio Alsina while at the Bayamón Correctional Institution.   Such inference cannot stand unsupported.  It is also important to note that the opinion and order of January 25, 2000, submitted by the plaintiff makes no reference to the adequacy nor the effectiveness of the health care services in the institution where Orlando Ocasio Alsina was housed at the time of the injury.  (Docket No. 111, Exhibit 20.)

Plaintiff also argues that defendant Marrero knew or should have known that Orlando Ocasio Alsina was receiving adequate medical attention because Ocasio's mother as well as his sister had called Mr. Marrero and left him a message expressing that Ocasio was dying.  Plaintiff has not submitted evidence demonstrating that the defendants are health experts and trained professionals that could discern what medical treatment should or should not be given to an inmate as well as to assess the adequacy of a particular treatment. Plaintiff also claims that defendant Marrero knew or should have known about Ocasio's condition because he had heard and read documents regarding the Carlos Morales Feliciano case and because he as well as defendant Laboy had heard through the press about the inadequacy of the medical services at the institution. (Docket No. 111, at 10, ¶ 14.) The evidence submitted by the plaintiff does not support plaintiff's contention and the newspaper articles proffered make no reference to Orlando Ocasio Alsina nor his

CIVIL 98-1893 (JAG)                    11

medical condition. Thus, this issue remains uncontested. Furthermore, plaintiff argues that defendant Marrero was put on notice of Orlando Ocasio Alsina's condition due to the calls made by his family regarding this matter. However, plaintiff does not offer evidence corroborating that defendant Marrero's did in fact receive those messages. There is also no evidence as to whom and when those messages were made. Hence, Mr. Marrero's contention that he never received the messages from Orlando's Ocasio Alsina's family remains uncontroverted.

As to defendants' uncontested fact number 10, plaintiff presented evidence establishing that Orlando Ocasio Alsina requested a wheelchair on several occasions as well as to see a doctor. (Docket No. 111, Exhibit 60.) The evidence presented by the plaintiff also shows that Orlando's family attempted to contact Dr. Aida Guzmán, Dr. Ileana Torres, Dr. Ernesto Torres, who were all part of the medical staff at the institution, and Mr. Sixto Marrero. (Docket No. 111, Exhibit 8, at 23, ¶ 5-9.) As to plaintiff's Exhibit 21(Docket No. 158, Exhibit A.), defendants argue that said document was received by Sgt. E. González on February 3, 1998. Therefore by that date Orlando Ocasio Alsina had already received treatment at the Río Piedras Medical Center. Consequently, defendants argue that Orlando Ocasio Alsina received medical treatment even before being put on notice that the court had so ordered. (Docket No. 158, at 13.) While plaintiff argues that the Resolution is a certified copy of the record and as such the court can take judicial notice of the document (Docket No. 178, at 27, ¶ 40), she fails to contest that the Resolution was received by Sgt. González on February 3, 1998 and that Ocasio had received treatment before the Resolution was received by the Institution. As to plaintiff's Exhibit 22 (Docket No. 111, Exhibit 22), defendants object to its use since it contains inadmissible hearsay. (Docket No. 158, at 13.) Contrarily, plaintiff argues that the document was offered not to prove the truth of the matter asserted but rather to prove the constructive knowledge

CIVIL 98-1893 (JAG)                    12

of the defendants regarding Ocasio's medical condition.  (Docket No. 178 at 27, ¶ 40.) The document does not mention nor refer to either of the defendants.  In fact the minute specifically orders Dr. Elliot Melecio Vega, and not defendant Laboy or Marrero, to hand over Orlando Ocasio Alsina's medical record and to assure to the court that he is receiving the medical treatment necessary.  (See Docket No. 111, Exhibit 22.)  Hence, said document is immaterial to establish defendants' knowledge of Ocasio's medical condition. In sum, the evidence presented does not contradict defendants' contention that Orlando Ocasio Alsina filed a complaint with the Complaints Division of the Administration of Corrections regarding the alleged failure to provide him with medical assistance.

Regarding defendants' uncontested fact number 13, plaintiff fails to contest said fact by arguing, not that Orlando Ocasio Alsina was not examined nor evaluated at the correctional facilities, but rather by stating that he was not adequately treated and/or evaluated, which in turn she claims constitutes deliberate indifference to Ocasio's constitutional rights. (Docket No. 111, at 13, ¶ 13.)  Plaintiff sustains her contention by presenting several expert witness reports, which make legal conclusions about defendants' knowledge about Ocasio's medical condition and their ability to adequately assess the treatment he was given.  As mentioned before, there is no evidence in the record establishing that the defendants are medical experts and have the proper skills to evaluate Ocasio's medical condition.  There is also no evidence that they are responsible for the medical care given to Orlando Ocasio Alsina and therefore said argument fails.

As to defendants' uncontested fact number 14, plaintiff argues that Orlando Ocasio Alsina's cause of death was an infection in the brain, toxoplasmosis and an increase edema. (Docket No. 111, at 14, ¶ 20.)  Having already determined that the Department of Health is the entity responsible for providing medical and/or health services to the inmates and not

1    CIVIL 98-1893 (JAG)                        13

2

3
     defendants Marrero and Laboy, the cause of death of Orlando Ocasio Alsina is irrelevant
4
     to the claims raised against the defendants.
5
                                    III.   Conclusion
6
           Plaintiff has failed to establish a valid claim under 42 U.S.C. § 1983 as to Laboy and
7
     Marrero.  Plaintiff has not presented evidence that defendant Zoe Laboy Alvarado as
8
     administrator of the Administration of Corrections, through her personal acts and/or
9
     omissions violated Orlando Ocasio Alsina's constitutional rights under 42 U.S.C. § 1893
10
     and the Eighth Amendment of the Constitution of the United States.  She has also
11
     neglected to provide evidence establishing defendant's deliberate indifference to Ocasio's
12
     medical needs and a connection between defendant Laboy's conduct and her subordiante's
13
     violative act or omissions.  In sum, plaintiff has failed to adequately oppose defendant's
14
     motion for summary judgment.  As to defendant Sixto Marrero, plaintiff has also failed to
15
     demonstrate that as sub-director of the Bayamón Correctional Complex, through his
16
     personal acts and/or omissions caused the violation of Orlando Ocasio Alisna's
17
     constitutional rights.  Plaintiff has not presented evidence of particular acts taken by
18
     defendant Marrero which resulted in the failure to provide Orlando Ocasio Alsina medical
19
     attention.  Finally, plaintiff has not presented evidence establishing that there are genuine
20
     issues of material facts that remain to be resolved and therefore has failed to comply with
21
     Rule 311.12.
22
           In view of the above, I recommend that defendants' motion for summary judgment
23
     be GRANTED.
24
           Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party
25
     who objects to this report and recommendation must file a written objection thereto with
26
     the Clerk of this Court within ten (10) days of the party's receipt of this report and
27
     recommendation.  The written objections must specifically identify the portion of the
28

CIVIL 98-1893 (JAG)                              14

recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986); <u>Davet v. Maccorone</u>, 973 F.2d 22, 30-31 (1st Cir. 1992); <u>Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.</u>, 840 F.2d 985 (1st Cir. 1988); <u>Borden v. Secretary of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 22nd day of July, 2002.

JUSTO ARENAS
United States Magistrate Judge

s/cs:to ( )
attys/pts
in ICMS

JUL 2 3 2002