IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| MARÍA ALSINA ORTIZ, | * | CIVIL NO. 98-1893 (JAG) |
| AND/OR THE ESTATE OF MR. | * | |
| ORLANDO OCASIO ALSINA | * | |
| COMPOSE OF MARÍA ALSINA | * | |
| ORTIZ | * | |
| | * | PLAINTIFFS DEMAND TRIAL |
| PLAINTIFFS | * | |
| | * | BY JURY |
| VS. | * | |
| | * | |
| MS. ZOE LABOY IN HER PERSO- | * | |
| NAL CAPACITY, JOHN DOE IN | * | |
| HIS PERSONAL CAPACITY AND, | * | |
| ET. ALS. | * | |
| | * | |
| DEFENDANTS | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | | |

**JOINT PROPOSED PRETRIAL ORDER**

## I.   COUNSELS FOR THE PARTIES

**Plaintiffs,** María Alsina Ortiz and/or the estate of Mr. Orlando Ocasio Alsina compose of María Alsina Ortiz, are represented by attorney Glenn Carl James from James Law Offices, Calle Peñuelas 65-A, San Juan, PR 00918, telephone 763-2888 and 763-2885.

Defendant Emilio Castillo ("Castillo") are represented by Lavinia Aparicio López Esq, and Josué González Ortiz, Esq, Department of Justice, Federal Litigation Division, PO Box 9020192, San Juan, Puerto Rico 00902.

Plaintiffs invited defendants' attorneys so the meeting take place on October 18, 2005 at James Law Offices, Calle Peñuelas 65-A, San Juan, P.R. 00918, and present was: plaintiffs' attorney Glenn Carl James and defendants' attorney Lavy Aparicio.

## II.   NATURE OF THE ACTION AND JURISDICTION

### A.   Plaintiffs' nature of the action and jurisdiction:

The instant case is a civil rights and tort action brought by plaintiffs against Mr. Emilio Castillo, his conjugal partnership and Mercedes Rosado as a result of the damages suffered by plaintiff(s) due to the breach of 42 U.S.C.A. 1983 and 1988; the Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States of America, other federal statutes addressed within this document; Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. 5141-5142 and Santiago Otero v. Méndez, 135 D.P.R. 540, 557(1994).

Plaintiffs have jurisdiction of this Court to entertain this suit pursuant to several different grounds. This Honorable Court has jurisdiction over this cause of action pursuant to 28 U.S.C. sections 1331, 1343 (3), (4) and 1367; 42 U.S.C., Sections 1983 and 1988; the Fifth, Eighth, and Fourteenth Amendments of the

2

Constitution of the United States of America. Also, this Honorable Court has pendant and supplementary jurisdiction of Ms. María Alsina Ortiz and/or the Estate of Mr. Orlando Ocasio Alsina compose of Ms. María Alsina Ortiz' state law claims under Articles 1802 and 1803 of the Civil Code of Puerto Rico, sections 5141 and 5142 of Title 31 of the Laws of Puerto Rico Annotated, and Ramírez Salcedo, etc. vs. Estado Libre Asociado de Puerto Rico, 96 JTS 41.

**B.    Defendant  Emilio  Castillo´s  Nature  of  Action  and Jurisdiction:**

This is a case filed by plaintiff María Alsina Ortiz as the only member of the estate of plaintiff decedent Orlando Ocasio Alsina (Ocasio Alsina). Plaintiff alleges that on November 8th, 1997 Ocasio-Alsina was injured during a riot at the Bayamón 308 institution where he was housed and that as a result developed a serious health condition. Plaintiff alleges that defendant Emilio Castillo acted with deliberate indifference regarding Ocasio Alsina´s medical needs. More specifically, she alleges that said defendants failed to provide and/or deprived Ocasio-Alsina of the necessary medical care, equipment (wheelchair), doctors (specialized medical care) and services (pharmaceuticals, therapy, transfer to external medical facilities).

3

Plaintiff alleges that defendants´ acts and/or omissions violated Ocasio-Alsina´s constitutional rights pursuant to 42 U.S.C. §1983 Fifth, Eighth and Fourteenth Amendments of the United States Constitution. Plaintiff also raises the supplemental jurisdiction of the Court to hear claims under Articles 1802 and 1803 of the Puerto Rico Civil Code.

**III. AMENDMENTS TO THE PLEADINGS:**

### A.   Plaintiffs:

Facts and legal theory covered within this document.

### B.   All Defendants Amendments to the Pleadings:

None.

**IV.   STATEMENT OF EACH PARTY'S FACTUAL VERSION OF THE CASE**

### A.   PLAINTIFFS' FACTUAL CONTENTIONS:

At all times herein relevant, plaintiffs, María Alsina Ortiz and/or the Estate of Mr. Orlando Ocasio Alsina compose of

Ms. María Alsina Ortiz are citizens of the United States of America with residence at Cayey, Puerto Rico. Mr. Orlando Ocasio Alsina suffered for a period of six months before he died after he had received a head injury, he suffered due to the deliberate indifference from the co-defendants. María Alsina Ortíz is the mother of Mr. Orlando Ocasio Alsina and she inherits Mr. Orlando Ocasio Alsina cause of action(s). His estate and/or María Alsina Ortíz is(are) only claiming the damages caused to Mr. Orlando Ocasio Alsina.

Co-defendants, Mr. Emilio Castillo in his personal capacity, Mercedes Rosado in her personal capacity and the community property or conjugal partnership constituted between Emilio Castillo and Mercedes Rosado, are citizens of the United States but residents of the Commonwealth of Puerto Rico. Mr. Emilio Castillo is a high-ranking official of the Bayamón State Prison, with the title of the sergeant or lieutenant at the Correctional Complex of Bayamón. He acted with deliberate indifference regarding to Mr. Orlando Ocasio Alsina's medical needs, when he knew or should of known of Mr. Ocasio's physical condition and medical necessities. The defendant failed to take the necessary measures to protect Mr. Orlando Ocasio Alsina, depriving him of his constitutional and civil rights. These defendants are sued in their personal capacity, because Mr. Emilio Castillo's acts and/or omissions were during the scope

and course of his employment with a "state government" agency. All his acts and omissions were done pursuant to state law or under color of state and/or federal law. Co-defendants, Mercedes Rosado in her personal capacity, the Conjugal Partnership or Community Property Constituted Between Emilio Castillo and Mercedes Rosado were liable for the negligent and/or deliberate indifferent acts and/or omissions from Emilio Castillo. Ms. Mercedes Rosado was the wife of Mr. Emilio Castillo.

Mr. Orlando Ocasio Alsina arrived at the state prison at Bayamón, approximately on November 6, 1997. On November 8, 1997, a riot occurred at the state prison, and as a result of the revolt, Mr. Orlando Ocasio Alsina was hit on the back of his head by a correctional officer. Mr. Orlando Ocasio Alsina received a serious head injury. The right side of his body was immediately paralyzed because of the head injury. Also, he was constantly complaining of pain at his head, his body was shaking, he was evidencing convulsions, and he had other symptoms. He was suffering physically and mentally, as described, **for a period of over six months. Over the first two months or first six weeks after the injury co-defendants' acts and/or omissions were with deliberate indifference, callous disregard and/or recklessness, but did nothing to secure medical care for him.**

6

Prior to November 8, 1997, Mr. Orlando Ocasio Alsina could walk and he was very strong.

On January 2, 1998, he was taken to the Medical Center at Río Piedras because the convulsions were so strong and repetitive that Mr. Orlando Ocasio Alsina was dying. He was taken out from the prison because Mr. Orlando Ocasio Alsina's family was behind the co-defendants for along period of time, so that he could receive the required medical attention. The lack of treatment was obvious. Also, he was taken to the Medical Center at Río Piedras, after the Honorable Superior Court, Caguas Part, issued an order so that Mr. Orlando Ocasio Alsina be provided adequate and/or essential medical attention. The Honorable Court issued the order on December 23, 1997, and on January 2, 1998, was when he was taken to the Medical Center at Río Piedras.

On May 11, 1998, Mr. Orlando Ocasio Alsina died from the lack of providing the essential, adequate and/or proper treatment for his serious head injury, of his toxoplasmosis, AIDS and HIV, due to the fact, that co-defendants and/or the employees under their supervision had provided an improper access to medical attention.

At the present time, Mr. Orlando Ocasio Alsina is not in prison, jail, a correctional facility or under the custody of the Correction Bureau.

Ms. María Alsina Ortiz is Mr. Orlando Ocasio Alsina's mother. She always leaved together with Mr. Orlando Ocasio Alsina, because he never married. Both of them had the intention to keep living together as long as possible.

Co-defendants deprived Mr. Orlando Ocasio Alsina of the necessary, essential, proper and/or adequate medical attentions, needs, medical equipment, doctors, medicine, and medical services, in order to take care of his paralyzed right side of his body and head injury. Co-defendants knew or should of known that Mr. Orlando Ocasio Alsina needed medical attention and that it was not provided to him. Co-defendants' acts and/or omissions breach plaintiffs' civil rights, due to their recklessness, callous disregard and/or deliberate indifference. Co-defendant could infer that a substantial risk of serious harms exists. This was one of the adequate and/or proximate causes of plaintiffs' damages.

Mr. Orlando Ocasio Alsina did not receive a wheelchair during an adequate period of time, it lapsed over seven weeks between the head injury and the time he received the wheelchair. He was left with half of his body paralyzed without giving him the proper and required medical equipment. Co-defendants knew or should of known that Mr. Orlando Ocasio Alsina needed a wheelchair and that it was not provided to him. Co-defendants' acts and/or omissions breach plaintiffs' civil rights due to

their recklessness, callous disregard and/or deliberate indifference. This was one of the adequate and/or proximate causes of plaintiffs' damages.

Mr. Orlando Ocasio Alsina was ordered to take therapy and/or be provided medical attention outside from the Bayamón Correctional Facilities, and those services where not given to him. For example, it was not until February 1998, that he started to receive therapies. More than 12 weeks lapsed since he had received the head injury and started the therapies. Co-defendants knew or should of known that Mr. Orlando Ocasio Alsina needed that medical attention. Co-defendants should of known, because over 12 weeks lapsed since the injury. Co-defendants acts and/or omissions breach plaintiffs' civil rights due to their recklessness, callous disregard and/or deliberate indifference. This was one of the adequate and/or proximate causes of plaintiffs' damages.

Co-defendants breach Mr. Orlando Ocasio Alsina's civil rights because they did not transfer him to an adequate or essential facility during a reasonable period of time, so that Mr. Orlando Ocasio Alsina would receive the specialize service needed due to his serious condition. Co-defendants knew or should of known that Mr. Orlando Ocasio Alsina needed an adequate medical attention, and it was not provided to him. Co-defendants' acts and/or omissions breach plaintiffs' civil

9

rights, because they were reckless, acted with callous disregard and/or with deliberate indifference. This was one of the adequate and/or proximate causes of plaintiffs' damages.

Mr. Emilio Castillo saw many times Mr. Orlando Ocasio Alsina in the physical condition described in the prior paragraphs, at the Bayamón State Prison, he delay the access to medical care. He acted with recklessness, with callous disregard and/or deliberate indifference, when he knew of Mr. Orlando Ocasio Alsina's condition and he did not help him to obtain access to medical needs. Also, some prisoners expressly told to Mr. Emilio Castillo that Mr. Orlando Ocasio Alsina had needed medical attention. Those acts and/or omissions from Mr. Castillo were with deliberate indifference. He was a sergeant and/or lieutenant at the Correctional Complex that had the duty to take care of Mr. Orlando Ocasio Alsina and his cell. Co-defendants, Mercedes Rosado in her personal capacity, the Conjugal Partnership or Community Property Constituted between Emilio Castillo and Mercedes Rosado were liable for those negligent and/or deliberate indifferent acts and/or omissions from Emilio Castillo. Ms. Mercedes Rosado was the wife from Mr. Emilio Castillo.

Co-defendants knew or should of known that Mr. Orlando Ocasio Alsina was not suitable to be in his cell or module. They did not provide adequate and essential medical needs at the

10

Bayamón Correctional Facility within a reasonable period of time. Co-defendants' acts and/or omissions breach plaintiffs' civil rights due to their recklessness, callous disregard and/or deliberate indifference. **The breach of that duty** was one of the adequate and/or proximate causes of plaintiffs' damages. The co-defendants breach of plaintiffs' civil rights was undertaken in the course of their duties and within the limits of their authority. Co-defendants had acted with deliberate indifference when they had allowed that Mr. Orlando Ocasio Alsina stayed about two month at the Bayamón State Prison, and later on other improper facilities.

Also, the first eight weeks that lapsed since Mr. Orlando Ocasio Alsina's head injury, how was his condition and the time he was transferred from the Bayamón Correctional Facility, evidence that co-defendants should of known of Mr. Orlando Ocasio Alsina's medical needs. This would evidence their recklessness, callous disregard and/or deliberate indifference.

Emilio Castillo saw Orlando Ocasio Alsina in the condition describe in this document. Prisoners requested Emilio Castillo to provide access to medical assistance.

All of co-defendants' acts and/or omissions were in the course of their duty and within the limits of their authority. Their deliberate indifference to plaintiffs' civil rights was the adequate and/or proximate cause of plaintiffs' damages.

Due to the facts stated above, plaintiffs were deprived of their rights secured by the Fifth, Eighth and Fourteenth Amendment of the Constitution of the United States.

The facts of the defendants to their factual version are denied, only the facts that are expressly admitted within this section are the ones accepted (it has to be written).

## PLAINTIFFS' DAMAGES

The Honorable Court of the United States in Smith v. Wade, 461 U.S. 30, 51 (1983); states reckless or callous disregard for the plaintiffs' rights, should be sufficient to trigger a jury's consideration of appropriateness of punitive damages. Defendants acted with reckless and callous disregard due to the fact that they knew or should of known that Mr. Orlando Ocasio Alsina was delayed in his medical attention that he needed due to his condition. He approximately suffered for six months. Co-defendant(s), the Estate of Ms. Orlando Ocasio Alsina compose of Ms. Maria Alsina Ortiz and/or Ms. Maria Alsina Ortiz reasonably estimates the punitive damages in the amount of eight million dollars ($8,000,000.00). The Estate of Ms. Orlando Ocasio alsina composes of Ms. Maria Alsina Ortiz and/or Ms. Maria alsina Ortiz, inherits Mr. Orlando Ocasio Alsina's cause of action.

12

Mr. Orlando Ocasio Alsina have suffered mentally and physically as a result of codefendants' acts and omissions. He had a constant pain in his head for approximately six months. He could not even walk, and half of his body was paralyzed. He was not provided with a wheelchair for over a period of six weeks. He painfully and consciously agonized before his death. The Estate and/or Ms. María Alsina Ortiz reasonably estimate(s) his (their) suffering and mental anguish in the amount of three million dollars ($3,000,000.00). Due to Mr. Orlando Ocasio Alsina's death, this amount of money will be inherited by his Estate composed of Ms. María Alsina Ortiz and/or Ms. María Alsina Ortiz.

Mr. Orlando Ocasio Alsina lost his life, and with it, all the enjoyment that he would have received throughout the years. He lost the possibility to obtain the love, affection, care, attention, companionship, and protection from his family and friends. He suffered the loss of enjoyment of life, which the Estate of Mr. Orlando Ocasio Alsina compose of Ms. María Alsina Ortiz and/or Ms. María Alsina Ortiz claim(s) and estimate(s) to be no less than two million dollars ($2,000,000.00). The Estate of Ms. Orlando Ocasio Alsina compose of Ms. María Alsina Ortiz and/or Ms. María Alsina Ortiz, inherit(s) Mr. Orlando Ocasio Alsina's cause of action.

13

Plaintiffs had incurred in burial's expenses that are estimated in the amount of five thousand dollars ($5,000.00).

## B. Defendants´ Emilio Castillo's Factual Version of the Case:

This is a case filed by plaintiff María Alsina-Ortiz as the only member of the estate of plaintiff decedent Orlando Ocasio-Alsina (Ocasio-Alsina), against defendant Emilio Castillo, at all times relevant to this complaint, lieutenant at the Bayamón 308 Correctional complex.

On November 6th, 1997, Orlando Ocasio-Alsina was admitted in the correctional system for violations to the Controlled Substances Law. On November 8th 1997, approximately at 12:15 in the afternoon, a riot occurred at the Bayamón 308 Institution where Ocasio-Alsina was held.  Ocasio-Alsina, an HIV positive patient and a drug addict, along with other inmates, started and actively participated in the riot. Ocasio-Alsina was injured as result of the incident.  However, Ocasio-Alsina along with the inmates, were duly provided medical attention.    More specifically, Ocasio-Alsina was taken to the Ramón Ruiz Arnau Hospital to receive medical care.  Notwithstanding, the medical records in this case reflect that Ocasio-Alsina received extensive medical treatment for his medical condition.

The very same date of the incident, and after being checked by medical staff, Ocasio-Alsina was transferred to Bayamón Anex

14

292   Institution.   On   November   25th,   Ocasio-Alsina   he   was
transferred back to Bayamón 308 Institution. On December 2nd
1997, when he was transferred again to the Medical Area of
Bayamón 1072 Institution, and on the same date he returned to
Bayamón 308 until December 22th 1997, when he was transferred to
Bayamón 448 Institution. He never returned to Bayamón 308
Institution where defendant Castillo continued to work. Ocasio-
Alsina continued to received extensive medical treatment and
eventually died of toxoplasmosis, HIV, and AIDS related
conditions on may 10th 1998, while he was placed in treatment at
the University Hospital in Rio Piedras (Hospital Universitario
de Rio Piedras).

At all time relevant to this case, Defendant Emilio
Castillo Rosado was a correctional lieutenant stationed at the
Bayamón 308 Institution. On November 8<sup>th,</sup> 1997, he worked the
shift from 8:00 a.m. to 4:00 p.m., and he was present when the
riot broke out. Once the riot was suppressed, he and other
correctional officials immediately took the injured inmates to
the medical area, while others were referred to the Medical
Center. Consequently, since the date of the riot the medical
staff of the correctional system was aware of any medical need
or condition suffered by Ocasio-Alsina. Hence, these health
professionals were in position to diagnose and prescribe the
proper treatment for Ocasio-Alsina.

After the incident of November 8th, Castillo was never placed on notice - by Ocasio-Alsina´s family members, Ocasio Alsina himself, nor anyone else - that Ocasio-Alsina was suffering from a Medical condition for which he was not being provided adequate medical care. In fact, descendant's family members requested medical attention and especial equipment directly to the Institution's medical staff, but they did not make Castillo aware of the Ocasio-Alsina's medical needs. On the other hand, Ocasio Alsina never requested for himself medical attention directly to Castillo. Instead, Ocasio-Alsina relied on his family to seek medical help.

During the short period of time during which Ocasio-Alsina had access to Castillo, Castillo acted within the scope of his duties which did not include to provide medical services itself. In any event, his duty was to give reasonable notice or to channel information regarding Ocasio-Alsina's health condition which, consequently, would give him access to medical care.

## V.   A STATEMENT OF EACH PARTY'S LEGAL THEORY:

### A.   PLAINTIFFS' LEGAL THEORY:

Defendants were liable to plaintiffs, María Alsina Ortiz and/or to Mr. Orlando Ocasio Alsina's Estate, because every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of or Territory, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper redress. 42 U.S.C. 1983. Defendants' breached of this legal duty and their indifference was one of the causes of plaintiffs' damages.

Plaintiffs will prevail in an action brought under section 1983 due to the fact that she was deprived of a **right, secured by the Constitution or laws of the United States.** Valdivieso Ortiz v. Burgos, 807 F .2d 6, 7(1st Cir. 1986). Plaintiff(s) were deprived of a Constitutional right, which will be discussed further on, such as the Fifth, Eighth and Fourteenth Amendments.

Failure or refusal to provide treatment; when indicating a deliberate indifference to serious medical needs of prisoners, could well result in deprivation of life itself and as such, it violates the Due Process Clause, Amendment XIV of the Constitution of the United States. Bowing v. Godwin, C.A. 1977, 551 F 2d 44. Defendants' breached of this legal duty and their indifference was one of the adequate causes of plaintiffs' damages.

17

Defendants were liable to plaintiffs' claim of Mr. Orlando Ocasio Alsina's medical mistreatment rises to proportions of this clause when it asserts refusal to provide essential medical care after prisoner brings his medical complaint to attention of prison authorities. Wright v. Stickler, D.C. Ill. 1981, 523 F. Supp. 193. Defendants' breached of this legal duty and their indifference was one of the adequate causes of plaintiffs' damages.

Also, deliberate indifference to serious medical needs of prison inmates constitutes unnecessary and wanton infliction of pain proscribed by the Due Process Clause, Amendment V of the Constitution of the United States and Amendment VIII. Feliciano v. Barceló, D.C. Puerto Rico 1979, 497 F. Supp. 14. Defendants' breached of this legal duty and their indifference was one of the adequate causes of plaintiffs' damages.

Civil rights action is a proper remedy for a state prisoner to make a constitutional challenge to the conditions of his prison life. Wilson v. Nevada Dept. of Prisons, D.C. Nev. 1981, 511 F. Supp. 750. Defendants' breached of this legal duty and their indifference was one of the adequate causes of plaintiffs' damages.

Co-Defendants were liable to plaintiffs because they breach their duty, when prisoner had showed that he suffered cruel and unusual punishment through **failure of prison officials to permit**

18

**him to see a physician for the first three days following knee injury,** he would be entitled to recover damages in civil rights action for pain and suffering during the three day delay, which could have been alleviated by treatment or medication had it been rendered. Walnorch v. Mc Monagles, D.C. Pa. 1976, 412 F. Supp. 270. Defendants, Ms. Zoe Laboy, Ms. Sixto Marrero and Mr. Emilio Castillo, breached of this duty and their indifference was one of the adequate causes of plaintiffs' damages.

Co-defendants were liable pursuant to 42 U.S.C.A. § 1983 and the Eighth Amendment of the Constitution of the United States, when it was shown that an unreasonable risk of injury and acts or omissions of prison officials causes a sufficient harm, due to their deliberate indifference to the inmate's physical well-being. Swarts v. Johnson, W.D. Mich. 1986, 628 F. Supp. 549. The breach of this duty and their indifference was one of the adequate causes of plaintiffs' damages.

Co-defendants were liable to plaintiffs because they breach the duty, that when the risk of harm was such as to put prison officials on notice that safety problem exists and that protective measures were needed, the absence of any procedure or guideline to protect prisoners from the risk of harm it will constitute a complete indifference to prisoner's safety needs in violation of the Constitution. Hickman v. Hudson, D.C. Vt. 1983, 557 F. Supp. 1341. The breach of this duty and their

indifference was one of the adequate causes of plaintiffs' damages.

Defendants were liable to plaintiffs pursuant to Nelson vs. Collins, D.C. Md. 1978, 455 F. Supp. 727, affirmed in part and remanded on other grounds 588 F.2d 1378; that states that confinement of mentally ill inmates in isolated confinement section constituted **cruel and unusual punishment where necessary medical assistance was not available within reasonable time**. The breach of this duty and their indifference was one of the adequate causes of plaintiffs' damages.

Defendants were liable to plaintiffs because they breach their duty, that when each inmate was placed in isolation, whether he was in pretrial or post trial confinement, they must receive medical visits or attention to insure that his physical and mental well-being were not being harmed and the frequency of such visits should be determined in accordance with acceptable medical standards and security considerations. Collins v. Schoonfield, D.C. Md. 1972, 344 F. Supp. 257, supplemented 363 F.Supp. 1152. The breach of this duty and their indifference was one of the adequate causes of plaintiffs' damages.

Defendants were liable to plaintiffs when the jail physician denied a state prisoner the medical cares in violation of a court order, was sufficient to state a claim against physician. Maclin v. Paulson, C.A. 1980, 627 F. 2d 83. The

20

breach of this duty and their indifference was one of the adequate caused of plaintiffs' damages.

In context of civil rights action, prisoner must show not only that prison officials were callously indifferent to his medical needs, but that those needs were serious and that the failure to treat them resulted in considerable harm; a serious medical need was one which has been a mandating treatment or one which was so obvious that even a lay person would easily recognize the necessity for a doctor's assistance. Laaman v. Helgemoe, D.C. 1977, 437 F. Supp. 269. Co-defendants did not provide a serious medical need to Orlando Ocasio Alsina and it was very obvious that he needed assistance. The breach of this duty and their indifference was the adequate cause of plaintiffs' damages.

Co-defendants were liable to plaintiffs due to the fact that they deprived Orlando Ocasio Alsina of a medical treatment, that it seriously dangered his well-being, so that this act or omission would be actionable as violation of section 1983 and U.S.C.A. Conts. Amed. 8. Stokes v. Hurdle, D.C. Md. 1975, 393 F. Supp. 757 affirmed 535 F 2d 1250. The beach of this duty and their indifference was one of the adequate causes of plaintiffs' damages.

A showing in a civil rights action of prison officials' deliberate indifference to prisoner's serious medical needs

requires showing of official's actual awareness of substantial risk of serious harm. Walker v. Godinez, N.D. Ill. 1995, 912 F. Supp. 307. Defendants' acted with deliberate indifference and of the breach of the duty stated here, was an adequate cause of plaintiffs' damages.

A prison doctor's deliberate indifference to serious medical needs of paralyzed prisoner, as needed in 1983 civil rights action, was established where the doctor **knew of prisoner's paraplegia, knew that prisoner was not permitted wheelchair in cellblock, and refused to admit prisoner to infirmary where wheelchair could be used; prisoner was not bathed or given hospital mattress for several days. Weeks v. Chabound, C.A. 6 (Ohio) 1993, 984 F. 2d 185.** Mr. Orlando Ocasio Alsina was not provided a wheelchair for over a month and a half, even though he could not even walk anymore. Mr. Orlando Ocasio Alsina was not provided his medication on time by the defendants and/or the Correction Bureau, many times other prisoners had to provide him with their medications, because Mr. Orlando Ocasio Alsina was not given his medication. The breach of this duty and their indifference was one of the adequate causes of plaintiffs' damages.

The Honorable Supreme Court of Puerto Rico states that the liability of the supervisors is based on their act and omissions within their duty as supervisors. Leyva vs. Aristud, 93 JTS 5,

at page 10305. The Supreme Court of Puerto Rico quotes
Gutiérrez-Rodríguez v. Catagena, 882 F. 2d 553 (1 er Circ.
1989); Lipsett v. University of Puerto Rico, 864 F .2d 881, 901-
902 (1er Circ. 1988). At page 10306, the Honorable Supreme Court
of Puerto Rico, states that in order that a supervisor be
liable, one has to establish that defendants acted reckless or
with callous indifference. The Honorable Supreme Court continues
stating at page 10311, footnote 6, that the duty to supervise is
triggered by proof of, absent supervision, that harm was highly
likely, given the circumstances of the case. When the inaction
in the face of a substantial threat of harm is shown, it can be
said that the supervisor acquiesced in the resulting of a
constitutional violation.

Mr. Emilio Castillo had the duty to provide and/or
supervise that sufficient correctional officers and vehicles
were available to transport inmates to outside consultations in
order to receive medical attention. Also he had the duty to
provide and/or supervise that sufficient correctional officers
were provided to transport inmates to the medical area within
the institutions. Order dated 28, 1992, in Carlos Morales
Feliciano vs. Rafael Hernandez Colón, Civil No. 79-4(PG).

Mr. Emilio Castillo had the duty to provide and/or
supervise to ensure that inmates have immediate access to
correctional officers in the event of a health care emergency.

Order dated 28, 1992, in Carlos Morales Feliciano vs. Rafael
Hernandez Colón, Civil No. 79-4(PG). This was part of co-
defendant scope and/or course of their employment.

Mr. Emilio Castillo had the duty to provide and/or
supervise that sufficient correctional officers and vehicles
were available to transport inmates to outside consultations.
Order dated 28, 1992, in Carlos Morales Feliciano vs. Rafael
Hernandez Colón, Civil No. 79-4(PG).

Mr. Emilio Castillo had the duty to provide and/or
supervise that the mutual responsibilities for the delivery of
health care by the two agencies that were developed jointly by
the Secretary of Health and the Administrator of Corrections and
submitted to the Court, were provided to the inmates. They had
the mutual responsibilities for development, construction,
renovation and designation of space for medical care and
service, including the coordination of medical and mutual
responsibilities for classifications and housing of prisoners
with medical and surgical problems, equipment, transportation
and movement of inmates for medical care, payment for prostheses
and medical apparatuses, (e.g., walkers, crutches and braces).

An implicit authorization, approval or knowingly
acquiesced in unconstitutional conduct of offending officers
makes liable a prison official. Hicks v. Frey, 992 F.2d 1450(6th

Cir. 1993). Mr. Emilio Castillo are liable because he breached this duty.

Estelle v. Gamble, 97 S.Ct.285, 291(1976); states that prison guards can manifest the deliberate indifference by delaying access to medical care. Mr. Emilio Castillo breached this duty.

Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576(1st Cir. 1994); **even if a supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if he had have known of it but for his deliberate indifference or willful blindes, and if he had the power and authority to alleviate it**. Mr. Emilio Castillo is liable because they could have of known it. Also, supervisors are liable if there is known history of widespread abuse sufficient to alert a supervisor to ongoing violations. Maldonado-Denis vs. Castillo-Rodríguez, supra, 582. Co-defendants failed to take measures in order to prevent Orlando Ocasio Alsina's damages.

**Gross negligence can signify deliberate indifference and as a basis for supervisory liability.** Maldonado-Denis v. Castillo-Rodríguez, supra, page 582.

None of the co-defendants may claim qualified immunity because inter alia, they knew that their acts or inaction and acquiescence to the civil rights violations brought them within the scope of section 1983. Concerning several of the co-

defendants, their acts and/or omissions set in motion a series or chain of acts by others which they knew or should have known, would cause the correctional's police officers, correctional's employee, correctional's supervisors, Correctional Health Program's supervisors, and Correctional Health Program's doctors to inflict injuries upon others. Co-defendants are liable and qualify immunity do not protect them because they breach a clearly establish law (See all the theory and facts addressed by the plaintiffs in this document). See Harlow v. Fitzgerald, 457 U.S. 800 (1982) and Crawford-El v. Britton, 118 S.Ct. 1584 (1998). **In order to establish the element of the constitutional violation actionable through § 1983: "For example, in Eighth Amendment claims involving the denial of medical care were deliberately indifferent to their serious medical needs. Steinglass, Steven A., Litigation in State Courts, St. Paul, Mn., West Group, 1999, pag. 15-46.** Plaintiffs hereby deny good faith.

Plaintiffs are also claiming supplemental jurisdiction, Baicker-Mckee, Jansssen & Corr, Federal Civil rules Handbook, supra, page 42 states that the supplemental jurisdiction authorized by Congress at 28 U.S.C.A. § 1367, is the means by which parties may add state law counts in federal case, even, through the state law counts not have been brought by themselves because they cannot satisfy the requirements of either federal

question or diversity jurisdiction. Plaintiffs are claiming and have a cause of action pursuant U.S.C.A. § 1983 and the Eight, Fifth and Fourteen Amendment of the Constitution of the United States, which allows the appearing to have a cause of action under supplement jurisdiction.

Defendants were liable to plaintiffs pursuant to Ramírez Salcedo v. Estado Libre Asociado, 96 JTS 41, at page 868; states that it is natural and evident that who assumes the custody of a citizen, also he assumes the duty for the security of the person under his custody up to the point to which he cannot take care of himself. The Honorable Supreme Court of Puerto Rico recognizes a **special duty of care between the government and the citizens that are under the custody of their employees, imposing a duty to the first to take measures to counteract the vulnerability of the person under custody. The vulnerability originates from government employees' acts. The breach of this legal duty and the indifference by the defendants was one of the adequate causes of plaintiffs' damages.**

Furthermore, plaintiffs do not have to exhaust administrative remedies pursuant to 42 U.S.C.A. 1997 e. The Honorable Supreme Court of the United States in Robinson v. Shell Oil Co., 117 S.Ct. 843, 846(1997); that the plainness or ambiguity of statutory **language is determined by reference to the language itself, the specific context in which that language**

27

**is used, and the broader context of the statute** as a whole. Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477, 112 S.Ct. 2589, 2589, 2589, 2594-2595, 120 L.Ed.2d 379 (1992); McCarhty v. Bronson, 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L. Ed.2d 194(1991). 42 U.S.C.A. § 1997 e (a); states that no action shall be brought regarding prison conditions under section 1983 of this title, or any other Federal Law, **by a prisoner confined** in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. This statute does not apply to this case because Orlando Ocasio Alsina is not confined; he is dead at the time of the filing of the case. He was not a prisoner. 42 U.S.C.A. 1997 e (h); states that as used in this section, the term "prisoner" means **any person incarcerated or detained in any facility............... Orlando Ocasio Alsina is not or when the case was filed incarcerated or detained, reason why 42 U.S.C.A. 1997 e does not apply. See Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998)** Furthermore, who filed the case was not Orlando Ocasio Alsina, it was María Alsina Ortiz as an inheritor and/or the Estate of Mr. Orlando Ocasio Alsina, reason why who filed the case was not a prisoner confined. The Honorable Court in **Kerr v. Puckett, supra, 323; states:**

28

"The statutory language does not leave wringle room;
out on parole is not a 'person incarcerated or detained in
any facility who is adjudicated delinquent in any facility
who is………adjudicated delinquent for, violations of…………..
the terms and conditions of parole'. Most sections of the
PLRA use the term 'prisoner', and we held in Robbins v.
Swetzer, 104 F .3d 895 (7th Cir. 1997), that in 28 U.S.C. §
1915(b) this term does not comprehend a felon who has been
released. § 1997 e (h) shows that the same reading is right
for § 1997 e (h) shows that the same reading is right for §
1997 e."

See also, Geig v. Goord, 169 F.3d 165 (2nd Cir. 1999); here,
we hold that litigants-like Greig- who file prison condition
actions after release from confinement are no longer 'prisoners'
for purposes of § 1997e(a). Also, see Patsy vs. Florida Board of
Regents, 457 102 S.Ct. 2557.

Plaintiffs demand a trial by Jury.

## B. Defendant Emilio Castillo's Legal Theory:

### 1.   Deliberate indifference under the Eighth

#### Amendment

The Eighth Amendment of the Constitution provides that
cruel and unusual punishment shall not be inflicted. U.S. Const.
Amend. VIII. Per this prohibition the Correctional Institutions
must provide its inmates of at least the minimal civilized
measure of life necessities, Wilson v. Seiter, 501 U.S. 294, 298
(1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981),
including necessary medical care. Farmer v. Brennan 511 U.S. 825

(1994). However, a prison official cannot be held liable unless the he or she incur in deliberate indifference, i.e., the official knows of and disregards an excessive risk to inmate health or safety. Plaintiff must show that the official was aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and in fact, the official draw the inference. Ibid, at 837. Mere negligence does not suffice Daniels v. Williams 474 U.S. 327 (1986). On the other hand, inmates do not have a right to limitless doctors visits or their choice of medication. See Rollins v. Magnusson 2004 WL 1770141(D.ME) (Citing 2004 WL 1770141(D.ME) (Citing Daniels ). The test requires not only that an objective adverse or inhuman condition exist, but also an inquiry into a prison official state of mind. Farmer, supra, at 838.

The First Circuit has explained that "deliberate indifference" in this context means that "[the official] cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Giroux v. Somerset County, 178 F.3d 28, 178 F.3d 28 at 32.

In the case at bar there is absolute lack of evidence that supports any act of deliberate indifference from part of the defendant. Plaintiff avers that Ocasio was in a serious need of medical attention and that defendant knew or should have known

30

of this condition. According to the Farmer test this is not enough to prevail in the Eighth Amendment cause of action. First, defendant was not a health professional and he did not have the intellectual expertise to detect the seriousness of any medical condition that Ocasio may suffer. In any event, during the months of November and December 1997, especially just after the Nov 7th riot, Ocasio was in several occasion brought to medical attention within and outside the institution, which suggests that correctional officials, including Castillo, made reasonable attempts to facilitate Ocasio's health care.

Second, if Ocacios' delicate health condition was not apparent to the defendant, it was impossible to draw any inference of substantial risk and serious harm. Finally it is important to point out that Ocasio died almost six months after transferred from the Bayamón 308 Institution and after having intense medical intervention. Hence, while he was in the Bayamón 308 Institution, he did not endure a substantial risk to his health.

## 2. Lack of control or supervisory authority

In order to establish a claim under 42 U.S.C. § 1983 plaintiff must prove that the acts and/or omissions at issue occurred under color of law; that said acts and/or omissions violated plaintiff's constitutional rights and that there is an affirmative link between the alleged conduct and the alleged

31

constitutional violation.  To establish a supervisor's liability under 42 U.S.C. § 1983 plaintiff must show that an affirmative link exists between the constitutional deprivation and either the supervisor's personal involvement, exercise of control or direction, or failure to supervise.  See Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988); see also Green v. Branson, 108 F.3d 1296 (10th Cir. 1997).  Supervisory officials are not liable under section 1983 on the basis of respondent superior or vicarious liability.

On the other hand, though we concede that inmates are entitle to live in humane conditions within the correctional institution, Wilson v. Seiter, 501 U.S. 294, 298 (1991) inmates do not have a right to limitless doctors visits or their medications.

In the case at bar, there is no controversy as to the fact that Castillo had no supervisory authority or control over the provision of medical services by the health care personnel that treated Ocasio-Alsina.  Pursuant to Medical and Mental Health Care plans, approved by the Hon. Perez Jimenez in the Morales Feliciano v. Roselló class action, the primary responsibility for the delivery of health care services to inmates in the custody of the Administration of Corrections, at the time of the incident alleged in the complaint, corresponded to the Deparmentt of Health (DOH), through its

Correctional Health Services program. Pursuant to said plans, all health care provided to inmates in the AOC shall be delivered by employees of the DOH or by individuals under contract with the DOH. The DOH was responsible for all health care needs of the inmate population. For instance, pharmaceutical services in all correctional facilities were directed and supervised by the Director of Pharmaceutical Services who reported to the Administrative Director of the Correctional Health Services program of the DOH. Pursuant to the Medical Care Plan, only pharmacists, pharmacy assistants under the supervision of a pharmacist, physicians or nurses were permitted to dispense medication. The plan specifically states that "no correctional officer or inmate may be involved in the delivery or administration of any prescribed medication." On another related matter, pursuant to the Medical Care Plan, access to ambulatory care clinics staffed by a licensed physician was to be determined exclusively by medical staff.

In light of defendant obvious lack of control or authority over the delivery of medical care, personnel, specialized treatment, pharmaceuticals and equipment, and referral to external medical facilities, Ocasio-Alsina's claims against Castillo must fail.

### 3.    Lack of personal involvement.

Contrary to what plaintiffs would like this Court to believe, "{a} general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability."    Camberos    v. Branstand, 73 F. 3d 174, 175 (8th Cir. 1995) citing Ouzts v. Cummins, 825 F. 2d 1276, 1277 (8th Cir. 1985).    In order to state a viable Eight Amendment claim against prison officials, plaintiff has to show a serious medical need and he must show the defendants' purposeful indifference, thereto.    See Sires v. Berman, 834 F.2d 9 (1st. Cir. 1987) citing Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976).    Purposeful indifference requires a sufficiently culpable state of mind to a substantial risk of serious harm, that is, a prison official is liable if he knows of and disregards an excessive risk to inmate health and safety.    It is not enough to establish that the official should have known of the risk of harm. "The Eight Amendment outlaws cruel and unusual "punishments," not conditions," and the failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment under the Court's cases."    Farmer v. Brennan, 511 U.S. 825, 826, 114 S. Ct. 1970, 1973, 128 L.Ed.2d 811 (1994). "[p]rison officials may not be held liable if they prove that

34

they were unaware of even an obvious risk or if they responded
reasonably to a known risk, even if the harm ultimately was not
averted." Id., 511 U.S. at 826, 114 S. Ct. at 1974.

The uncontroverted evidence in this case reflects that
Castillo was not aware, and/or was placed on notice, of the
alleged substantial risk of harm to Ocasio-Alsina in not
allegedly delivering the medical care he needed. Moreover, it
must be highlighted that Ocasio-Alsina did not file a complaint
with the Complaints Division of the Administration of
Corrections regarding the inadequate medical care he was
allegedly receiving.

> 4. Ocasio-Alsina was not deprived of his access to
> medical care.

Appearing defendant contend that Ocasio-Alsina was provided
and/or had access to medical care and that he was not deprived
of his constitutional rights thereto. A perusal of the medical
records of Ocasio-Alsina reflect that he was evaluated and
treated at the Ramón Ruiz Arnau Hospital immediately after the
November 8th, 1997 riot. Thereafter, the medical records
reflect that he was treated at medical facilities in the
correctional institutions were he was confined and at external
medical facilities such as the Ramón Ruiz Arnau Hospital and the
Medical Center.

The evidence is overwhelming as to the fact that Ocasio Alsina did receive medical attention. Plaintiff, in turn, has failed to produce any evidence to the effect that Castillo, through, for instance, any kind of policy or failure to provide the required correctional escorts, denied Ocasio Alsina access to medical care or caused a delay in the provision of medical service. See Williams v. Mueller, 13 F.3d 1214 (8th Cir. 1994) (Affirmed district court ruling dismissing counts because no evidence was presented to the effect that warden was responsible for delay in providing medical attention).

Whether the medical care provided was adequate or not according to professional standards is beyond the expertise of appearing defendant. As we mentioned above, Castillo is not a health care professional. On a daily basis his primary responsibility was overseeing the administration of the correctional institutions. Insofar as he lacks medical expertise, he cannot be liable for the medical staff's diagnostic decisions in treating Ocasio-Alsina. See e.g., Camberos v. Branstad, 73 F.3d at 175; Belcher v. City of Foley, Alabama, 30 F.3d 1390 (11th cir. 1994). The First Circuit Court has held, in a related context, that where the dispute concerns not the "absence of help, but the choice of certain course of treatment, or evidences mere disagreement with considered medical judgment, [it] will not second guess the doctors."

36

Sires, 834 F.2d at 13.   Appearing defendant could not at the
time of the incident, nor can at this time, second guess the
professional decisions of the health care personnel that
examined and treated Ocasio-Alsina.   However, insofar as their
responsibility of facilitating the access of inmates to medical
care, the evidence is overwhelming to the effect that Ocasio-
Alsina had access to medical services and that appearing
defendants did not delay, impede or restrict, in any way, said
access.

### 5.   Ocasio-Alsina was not deprived of his
### substantive due process right to life.

Plaintiff alleges that deliberate indifference to the
serious medical needs of Ocasio Alsina violated his substantive
due process right to life (& 40).   Defendant contends that
according the Supreme Court case of Daniels v. Williams, 474
U.S. 327, 333, 106 S. Ct. 662 (1986), the protections of the Due
Process Clause "are not triggered by lack of due care by prison
officials."   See e.g., Doe v. Wigginton, 21 F.3d 733, 739 (6th
Cir. 1994), where the Court held that although defendants
intentionally implemented a policy which left plaintiff
untreated for his HIV infection defendant did not deliberately
decide to reduce plaintiff's life expectancy.   Therefore, there
has to be a deliberate intention to deprive a particular
individual of his right to life.

As has been extensively discussed in the previous sections, plaintiff has failed to present a viable 42 U.S.C. §1983 claim because there is no affirmative link between appearing defendant acts and/or omissions and the alleged constitutional violation and because, in any case, no constitutional violation occurred. Being that the case, it follows that appearing defendant could not have acted in such a way as to intend to deprive Ocasio-Alsina of his right to life. Hence, no substantive due process violation occurred.

### 6. Plaintiff did not exhaust administrative remedies

The Prison Litigation Reform Act imposes a strict exhaustion requirement on prisoners bringing suit with respect to prison conditions. 42 U.S.C. §1997e(a). Pursuant to the Act no action Ander 42 U.S.C. §1983 can be brought by a prisoner confined in a prison facility unless the administrative remedies that are available are exhausted. Ocasio Alsina did not file any complaint before the Corrections complaints' division for the alleged failure to provide adequate medical care. Therefore, the required administrative remedies to bring a section 1983 claim were not exhausted. Plaintiff is therefore barred from bringing this action.

### 7. Qualified immunity is warranted.

As pointed out by both the Supreme Court and the Court of Appeals for this Circuit, a principal purpose of the objective

38

immunity doctrine established in Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L.E.2d 396 (1982), is precisely to prevent public officials from being subjected to the cost of trial and the attendant disruption of government, by permitting the resolution of many insubstantial claims through summary judgment.   Harlow, 457 U.S. at 817-818; krohn v. United State, 742 F.2d 24 (1st Cir. 1984); De Abadía v. Izquierdo-Mora, 792 F.2d 1187 (1st Cir. 1986).   The qualified immunity doctrine enables courts to weed out unfounded suits and to protect state officials from "undue interference with their duties and from potentially disabling threats of liability".   Souza v. Pina, 53 F.3d 423, 425 (1st Cir. 1995) quoting Elder v. Holloway, ____ U.S. ___, 114 S. Ct. 1019, 1022, 127 L.Ed.2d 344 (1994).

State officials exercising discretionary authority are entitled to qualified immunity insofar as their conduct does not transgress clearly established constitutional or federal statutory rights of which a reasonably prudent official should have been aware.   Buenrostro v. Collazo, 973 F.2d 39, 42 (1st Cir. 1992), referring to Harlow, 475 U.S. at 818, 102 S. Ct. At 2738 and Roque-Rodriquez v. Lemar Moya, 926 F.2d 103, 107 (1st Cir. 1991).

The inquiry whether the right at issue was clearly established properly focuses 'not upon the right at its most general or abstract level, but at the level of its application

to the specific conduct being challenged.' Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994) (quoting Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992)). "Moreover, 'the manner in which this [clearly established] right applies to the actions of the official must also be apparent.'" Id. (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)) (citations omitted). "[I]f there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." Id. (quoting Tarantino v. Baker, 825 F.2d 772, 775 (4th Cir. 1987) (emphasis supplied).

Singer v. State of Maine, 49 F.3d 837, 845 (1st Cir. 1995). Thus, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstance." Dolihite v. Maughon, 74 F.3d 1027, 1040 (11th Cir. 1996) quoting Lassiter v. Alabama A & M University, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc).

Finally, the First Circuit Court "has observed that the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Lowinger v. Broderick, 50

F.3d 61, 65 (1st Cir. 1995) citing Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992).

In light of the above discussed standards and the facts in this case defendant Castillo respectfully submits that in this case there is not a trial worthy issue. The material facts show that said defendant did not violate plaintiff's constitutional rights. Therefore, there are no disputes as to facts relevant to the affirmative defense of qualified immunity raised by appearing defendants.

8.   Pendent jurisdiction claims warrant dismissal.

It is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. See, 28 U.S.C. §1367; United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Nevertheless, where, as here, all federal claims warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

It has been stated that the holding in Gibbs "seems clearly to require dismissal without action on the merits and without any exercise of discretion if all the federal claims...are found to be short of trial, deficient." Snowden v. Millinocket Regional Hosp. 727 F. Supp 701, 709 (D. Me. 1990). Such a result is warranted in view that "[t]he power of a federal court

41

to hear and to determine state-law claims in non-diversity cases
depends upon the presence of at least one 'substantial' federal
claim in the lawsuit". Newman v. Burgin, 930 F. 2d 955, 963
(1st Cir. 1991).

Although district courts are not obligated to dismiss
pendent state law claims, in the usual case in which all
federal-law claims are dismissed before trial, the balance of
factors to be considered under the pendent jurisdiction
doctrine-judicial economy, convenience, fairness, and comity-
will point toward declining to exercise jurisdiction over the
remaining state law claims. In such a case, state-law claims
should be dismissed. Carnegie-Mellon University v. Cohill, 484
U.S. 343, 350 n. 5 (1988); citing Gibbs, 383 U.S. at 726-727;
see Mercado-Garcia v. Ponce Federal Bank, 979 F.2d 890, 896 (1st
Cir. 1992); Rivera v. Murphy, 979 F. 2d 259, 264 (1st Cir.
1992); Figueroa -Ruiz v. Alegria, 896 F.2d 646 (1st Cir. 1990);
cf Feinstein v. Resolution Trust Corp., 942 F.2d 34, 47 (1st
Cir. 1991) (stating that "since federal question jurisdiction
hinged on that [dismissed] count, and there was no complete
diversity of citizenship or other cognizable basis for the
assertion of subject matter jurisdiction in the district court,
the pendent state law claims were properly dismissed under the
rule of the United Mine Workders v. Gibbs"). Supplemental
jurisdiction should be declined in this case in view that all

42

federal claims warrant dismissal. Since plaintiff is not entitled to any award under section 1983, the only award plaintiff could, in any event, pursue would be under state law.

As thoroughly discussed in the previous paragraph, there is no single piece of evidence that connect the death of Ocasio-Alsina with the appearing defendant. On the contrary, the evidence is overwhelmed of instances which establish without any doubt that Ocasio-Alsina at all times had access to medical care within and outside the correctional institution. Since plaintiffs' federal claim is meritless, any supplemental claim must also fall.

9.   Plaintiff's Due Process Claim Warrants Dismissal.

The Due Process Clause of the Fourteenth Amendment requires the responsible governmental authorities to provide medical care to persons who have been injured while being apprehended by the police and their due process rights extend as far as the protection that the Eight Amendment gives to a convicted prisoner. City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983). However, the due process clause of the Fourteenth Amendment does not serve as an alternative basis for substantive protection to convicted prisoners and affords the plaintiff "no greater protection than does the Cruel and Unusual Punishment Clause." Whitley v. Albers, 475 U.S. 312, 327 (1986). Accordingly, plaintiffs' due process claim should be

43

dismissed as well, since as we have established, no Eighth
Amendment violation took place.

11.   Pendent claims should also be dismissed

Federal courts in a no-diversity case, such as this, must
have the presence of at least one "substantial" federal claim in
the lawsuit in order to hear and determine pendent state law
claims.   See United Mine Worker v. Gibbs, 383 U.S. 715, 725
(1966).   Pretrial termination of federal-law claims forces
dismissal of pendent state-law claims in the absence of any
other cognizable basis for federal jurisdiction.   Rodriguez v.
Doral Mortgage Corp., 57 F.3d 1168, 1175-117 (1st Cir. 1995).
Consequently, once it is determined that plaintiffs lack a
federal cause of action, any claims brought before this court
under pendent jurisdiction should also be dismissed.

## VI.   STATEMENT OF ALL MATERIAL UNCONTESTED FACTS:

### A.   PARTIES' STATEMENT OF ALL MATERIAL UNCONTESTED FACTS:

1.   Mr. Emilio Castillo is married to Ms. Mercedes Rosado
and was married to her during November and December, 1997.
During that period of time she was not a correctional system
employee.

2.   On November 6, 1997, Orlando Ocasio Alsina was admitted in the correctional system for a violation to a controlled substance statute.

2.   Maria Alsina Ortiz is the only inheritor of Orlando Ocasio Alsina.

3.   Emilio Castillo was working as a correctional lieutenant officer at the Bayamon Correctional facilities of the Commonwealth of Puerto Rico during the period of time that Orlando Ocasio Alsina was an inmate there, from November to December, 1997.

4.   On November 8th , 1997 a riot occurred at the Bayamon Correctional Complex.

5.   During November and December 1997 Orlando Ocasio Alsina's family had been requesting for medical treatment for Orlando Ocasio Alsina.

6.   After January 2, 1998, Orlando Ocasio Alsina was transferred from Bayamon correctional facility to receive medical treatment and never return.

7.   The day after the November 8th, 1997 riot, Ocasio Alsina wrote a letter to his mother.

**B.   PARTIES' STIPULATED AS EXHIBITS (ADMISSIBILITY IS STIPULATED)**

1.  Record of the Health Department, Health Correctional Program Services regarding Mr. Orlando Ocasio Alsina. (Plaintiffs' Exhibit 1).

2.  Forensic Medical Report regarding Mr. Orlando Ocasio Alsina. (Plaintiffs' Exhibit 2).

3.  Document dated November 10, 1997, from Mr. Orlando Ocasio Alsina, in which he was requesting a wheelchair, entitled Request for Medical\Dental Services "Sick Call". (Plaintiffs' Exhibit 3).

4.  Document dated November 17, 1997, from Mr. Orlando Ocasio Alsina, in which he states that he feels very bad, his sight is very bad and half of his body is dead, entitled Commonwealth of Puerto Rico Health Correctional Program Infirmary Department. (Plaintiffs' Exhibit 4).

5.  Determination of the heirs of Orlando Ocasio Alsina, Superior Court of Puerto Rico, Cayey Part, Civil Núm. CD99-747. Plaintiffs will take judicial notice of this document at trial. (Plaintiffs' Exhibit 5).

6.  Receipt number 766465, dated November 23, 1999 for the amount of $1,800.00. (Plaintiffs' Exhibit 6).

7.  Receipt number 310427, dated May 12, 1998 for the amount of $250.00. (Plaintiffs' Exhibit 7).

8. Receipt from the Funeral El Reposo, Inc. for the amount of $1,850.00 dated May 18, 1998. (Plaintiffs' Exhibit 8).

9. Summary of the hearing that transcribe on April 27, 1998, at the Superior Court, Caguas Part, criminal Number ESC97G0426. (Plaintiffs' Exhibit 9). Plaintiffs will take judicial notice the date of trial.

10. Resolution and Order from the Honorable Court, Caguas, Part, Criminal Number ESC97G-0426. (Plaintiffs' Exhibit 10). Plaintiffs will take judicial notice the date of trial.

# VII. STATEMENT OF THE CONTESTED MATERIAL FACTS:

## A. PLAINTIFFS' STATEMENT OF THE CONTESTED MATERIAL FACTS:

1. If defendants are liable for Plaintiffs' damages, that started when Orlando Ocasio Alsina received a head injury propounded by correctional officers on November 8, 1997.

2. Defendants' acts or omissions were reckless, callous disregard and/or deliberate indifference, when they knew or should of known of Mr. Orlando Ocasio Alsina's serious medical needs.

3. If defendants are liable to the plaintiffs for deliberate indifference, because they should have known of Orlando Ocasio Alsina's serious medical needs, because he lack of the adequate, essential and/or necessary medical attention during weeks and/or months for his serious medical needs.

4. If defendants were liable to the plaintiffs for delaying access of essential, adequate and/or necessary medical attention to Orlando Ocasio Alsina, being the nexus, proximate and/or an adequate cause of Orlando Ocasio Alsina's death.

5. If defendants were liable to the plaintiffs for not providing a wheelchair since and when Orlando Ocasio Alsina needed it, breaching his civil rights, not giving him the essential, adequate and/or necessary medical attention, being one of the nexus, one of the proximate or an adequate causes of Orlando Ocasio Alsina's death and/or damages.

6. If defendants knew or should have known that Orlando Ocasio Alsina was not being provided serious medical needs.

7. If Orlando Ocasio Alsina was not given the necessary, adequate, and/or essential medical attention for his serious head injury on November 8, 1997 caused and/or accelerated his death.

8. If Orlando Ocasio Alsina was not given the necessary, adequate, and/or essential medical attention for his serious head injury, HIV condition, AIDS condition and Toxoplasmosis

48

condition prior, on and after November 8, 1997, caused and/or accelerated his death.

9.    If defendants did not comply with their duties with good faith because they knew or should have known of plaintiffs' serious medical needs and they failed to take the necessary measures to protect Orlando Ocasio Alsina and provide him of adequate, necessary and/or essential medical attention.

10.    If defendants are liable for punitive damages to the plaintiffs.

11.    If defendants are liable under the Civil Code of Puerto Rico for their negligence to the plaintiff.


**B.    DEFENDANTS STATEMENT OF THE CONTESTED MATERIAL FACTS:**

1.    If defendant Castillo knew or should have known that the symptoms shown by Orlando Ocasio Alsina' while he was housed at Bayamón 308, required immediate medical attention.

2.    If there was any breach of duties by defendant Castillo which affected the quality of medical services provided to Ocasio-Alsina.

3.    If plaintiff, family members, or any other person directly talked to and/or left him written requests to defendant

Castillo regarding the serious Orlando Ocasio-Alsina's medical needs.

4.    Whether Ocasio Alsina filed a complaint with the Complaints Division of the Correction Administration regarding the alleged failure to provide him with medical care.

5.    If at time relevant to this complaint, Ocasio-Alsina's medical record reflects that the health provider staff lacked information regarding Orlando Ocasio-Alsina's medical needs.


VIII.    STATEMENT OF THE CONTESTED ISSUES OF LAW


A.    PLAINTIFFS' STATEMENT OF THE CONTESTED ISSUES OF LAW

1.    If defendants are liable pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico because they breached the special duty of care required to the government (plaintiffs alleges that it includes employees) regarding the citizens that are under the custody of their employees, imposing a duty to take measures to counteract the vulnerability of the person under custody.

2.    If defendants have a cause of action pursuant to 42 U.S.C.A. § 1983, the Eighth, Fifth and Fourteen Amendment of the Constitution of the United States.

3.    If   defendants   acts   and/or   omissions   were   with deliberate indifference, because they knew or should of known of plaintiffs' serious medical needs.

4.    If   plaintiffs   can   prove   through   the   use   of circumstantial   evidence   the   fact   that   the   defendants   had knowledge of the plaintiffs' serious medical needs, making them liable for their acts and/or omissions because they constituted deliberate indifference.

5.    If defendants are liable due to their inaction in the face of a substantial threat of harm, that is shown, reason why they are liable as supervisor because they acquiesced, resulting in the constitutional violation of plaintiffs' rights.

6    If   defendants   were   liable   due   to   their   personal involvement(for their own acts or omissions) after the prisoners brought to the attention the serious medical needs to the prison and medical authorities.

7.    If defendants were liable due to the fact that they had to alleviate the conditions that led to the breached of his civil rights, this was the nexus, adequate, and proximate cause of the breached of plaintiffs' civil rights and death.

8.    If defendants were liable due to the failure of prison officials to permit or delay access the inmate to see a physician (ie: a neurosurgeon) and/or provide him a wheelchair after three or more days have lapsed since the head injury.

51

9.    If  defendants  were  liable  for  cruel  and  unusual punishment were medical assistance was not available within a reasonable time, this was the nexus, adequate, and proximate cause of the breached of plaintiffs' civil rights and death.

10.  If  defendants  deprived  plaintiffs  the  access  to medical care, this was the nexus, adequate, and proximate cause of the breached of plaintiffs' civil rights and death.

11.  If defendants deprived plaintiffs of his substantive due process of life, this was the nexus, adequate, and proximate cause of the breached of plaintiffs' civil rights and death.

12.  If defendants lack of immunity because their acts were with deliberate inference because they knew and/or should have known of plaintiffs' serious medical needs and they did not took the necessary measures to provide him adequate, necessary and/or essential medical attention.

**B.    Defendants Emilio Castillo's Contested Issues of Law:**

1.    Whether Castillo was personally involved in the facts that gave rise to plaintiff's cause of action.

2.    Whether  Castillo  violated  plaintiff  Ocasio-Alsina's constitutional rights under the Eight Amendment.

3.    Whether Castillo is liable under 42 U.S.C.§ 1983.

4.   If there is any causal connection between defendants alleged acts and/or omissions and the damages allegedly suffered by plaintiff.

5.   Whether Castillo violated plaintiff's substantive due process right to life.

6.   Whether defendant Castillo is entitled to qualified immunity.

7.   Whether Castillo's acts or omissions were contrary to the standard established in the case of Morales Feliciano.

8.   Whether the acts or omission of defendant Castillo reached to the level of callous disregard, recklessness or deliberate indifference upon Ocasio-Alsina's civil rights.

**IX. A STATEMENT OF ANY OTHER ISSUES OF FACT AND LAW DEEMED TO BE MATERIAL, BUT WHICH THE OTHER PARTY OR PARTIES DEEM IMMATERIAL:**

**A.   PLAINTIFFS' STATEMENT OF ANY OTHER ISSUES OF FACT AND LAW DEEMED TO BE MATERIAL, BUT WHICH THE OTHER PARTY OR PARTIES DEEM IMMATERIAL:**

1.   If Mr. Orlando Ocasio Alsina was unable to understand the wrongfulness or nature and quality of its behavior.

53

2.   If Mr. Orlando Ocasio Alsina never gave inform consent to refuse treatment or medical attention.

## X.   EACH PARTY'S LIST OF DEPOSITIONS

## A.   PLAINTIFFS' LIST OF DEPOSITIONS

1.   Mr. Felix Ramos Moulier's deposition. Regarding the statements in the deposition at the following page 7 lines 2-20; page 12 lines 4-10; page 37 lines 17-20; page 50 lines 7-24 to page 51 lines 1-19; page 5 lines 17-23; page 41 lines 14-18; page 4 lines 4-24 to page 5 lines 1-15 will be used as substantive evidence according to the Federal Rules of Evidence and Civil Procedure.

2.   Ms. María Alsina Ortiz's deposition. Regarding the statements in the deposition at the following page 41 lines 21-24; page 47 lines 12-13; page 67 lines 5-16 will be used as substantive evidence according to the Federal Rules of Evidence and Civil Procedure.

3.   Mr. Eric Ariel Diaz Davila 's deposition. Regarding the statements in the deposition at the following pages 5 lines 13-24; page 7 lines 3-10; page 9 lines 21-24; page 10 lines 8-24 to page 11 lines 1-11; page 12 lines 1-3; page 14 lines 16-19; page 22 lines 2-9; page 24 lines 17-22; and page 27 lines 9-20

be used as substantive evidence according to the Federal Rules
of Evidence and Civil Procedure.

4.    Ms. María Esther Ocasio Alsina's deposition. Regarding
the statements in the deposition at the following page 40 lines
3-22 will be used as substantive evidence according to the
Federal Rules of Evidence and Civil Procedure.

5.    Ms. Gladys Ocasio Alsina's deposition. Regarding the
statements in the deposition at the following page 16 lines 1-14
will be used as substantive evidence according to the Federal
Rules of Evidence and Civil Procedure.

Plaintiffs reserve their right to use the deposition
transcripts for rebuttal and impeachment purposes to the Federal
Rules of Civil Procedure and Evidence. Also, for just cause
plaintiffs reserve their right to add other portions of the
transcripts of the depositions.

### B. Defendant Emilio Castillo's List of Depositions:

1.    All depositions taken by any party in the case will be
used, if necessary, and as allowed by the Federal Rules of Civil
Procedure and the Federal Rules of Evidence.

## XI.  WITNESS LIST:

**A.    PLAINTIFFS' WITNESS LIST:**

a.              Felix A. Ramos Moulier
                Penitenciaria Estatal de Río Piedras
                Complejo Correccional de RP
                Box 21380
                Río Piedras, P.R.   00960
                Calle 21 AA 29
                Jardines de Palmarejo
                Barrio San Isidro
                Canovanas, P.R.   00729
                Tel. 256-0556
                Expect to present
                He will testify regarding facts that will
                establish defendants' deliberate indifference,
                callous disregard, recklessness, direct
                statements he made to Emilio Castillo about
                Orlando Ocasio Alsina; knowledge of Emilio
                Castillo when he saw and talked to Orlando Ocasio
                Alsina about his needs and physical condition,
                facts addressed in his deposition, and other
                matters (such as knowledge of defendants or that
                they should have known of Orlando Ocasio Alsina's
                medical needs).  Facts that establish that Emilio
                Castillo was a correctional officer, that at the
                time of the facts he was working in the scope and
                course of his employment within the state agency.
                Also, he will testify regarding plaintiff's
                damages. Furthermore, he will testify regarding
                the authenticity and admissibility of documents.
                Needs an interpreter.

b.              Nathaniel Mojica Reyes
                Carcel Regional de Guayama
                Colonia Los Dolores
                Carr. # 3
                Interior 7710
                Guayama, P.R.
                May call if need arises
                He will testify regarding facts that will
                establish defendants' deliberate indifference,
                callous disregard, recklessness, direct
                statements he made to Emilio Castillo about
                Orlando Ocasio Alsina; knowledge of Emilio

Castillo when he saw and talked to Orlando Ocasio
Alsina about his needs and physical condition,
and other matters (such as knowledge of
defendants or that they should have known of
Orlando Ocasio Alsina's medical needs). Facts
that establish that Emilio Castillo was a
correctional officer, that at the time of the
facts he was working in the scope and course of
his employment within the state agency. Also, he
will testify regarding plaintiff's damages.
Furthermore, he will testify regarding the
authenticity and admissibility of documents.
Needs an interpreter.

c.   Javier Del Valle Llopiz
     Hogar Adaptación Social de Carolina
     Calle Amadeous # 8 Altos
     Carolina, P.R.  00985
     Expect to present
     He will testify regarding facts that will
     establish defendants' deliberate indifference,
     callous disregard, recklessness, direct
     statements he made to Emilio Castillo about
     Orlando Ocasio Alsina; knowledge of Emilio
     Castillo when he saw and talked to Orlando Ocasio
     Alsina about his needs and physical condition,
     and other matters (such as knowledge of
     defendants or that they should have known of
     Orlando Ocasio Alsina's medical needs). Facts
     that establish that Emilio Castillo was a
     correctional officer, that at the time of the
     facts he was working in the scope and course of
     his employment within the state agency. Also, he
     will testify regarding plaintiff's damages.
     Furthermore, he will testify regarding the
     authenticity and admissibility of documents.
     Needs an interpreter.

d.   Gilberto Rivera Rodríguez
     Hogar Adaptación Social de Río Piedras
     Calle Norte #64
     Río Piedras, P.R.  00925
     May call if need arises
     He will testify regarding facts that will
     establish defendants' deliberate indifference,

57

callous     disregard,     recklessness,     direct
statements  he  made  to  Emilio  Castillo  about
Orlando   Ocasio   Alsina;   knowledge   of   Emilio
Castillo when he saw and talked to Orlando Ocasio
Alsina about  his  needs  and  physical  condition,
and   other   matters   (such   as   knowledge   of
defendants that  or  they  should  have  known  of
Orlando Ocasio Alsina's medical needs). Also,  he
will testify regarding plaintiff's damages. Facts
that   establish  that   Emilio   Castillo   was   a
correctional  officer,  that  at  the  time  of  the
facts he was working in the scope and course of
his    employment    within    the    state   agency.
Furthermore,   he    will    testify    regarding   the
authenticity  and  admissibility  of  documents.
Needs an interpreter.


e.    Erick Diaz Davila
      Hogar de Adaptación Social de Río Piedras
      Calle Norte #64
      Río Piedras, P.R.   00925
      Barrio Lomas Jagua
      Naranjito, P.R.
      (787) 869-7079
      May call if need arises
      He   will   testify   regarding   facts   that   will
      establish  defendants'  deliberate  indifference,
      callous disregard, direct statements he made to
      Emilio  Castillo  about  Orlando  Ocasio  Alsina;
      knowledge  of  Emilio  Castillo  when  he  saw  and
      talked to Orlando Ocasio Alsina about his needs
      and physical condition, recklessness and other
      matters (such as knowledge of defendants or that
      they should have known of Orlando Ocasio Alsina's
      medical needs). Facts that establish that Emilio
      Castillo was a correctional officer, that at the
      time of the facts he was working in the scope and
      course of his employment within the state agency.
      Also,  he  will  testify  regarding  plaintiff's
      damages. Furthermore, he will testify regarding
      the authenticity and admissibility of documents.
      Needs an interpreter.


f.    Luis López Negrón
      Wackenhut PR, Inc.

Calle Final #28
Barrio Juan Sánchez, Centro Industrial Luchetti
Bayamón, P.R.   00961
May call if need arises
He  will  testify  regarding  facts  that  will
establish  defendants'  deliberate  indifference,
direct  statements  he  made  to  Emilio  Castillo
about  Orlando  Ocasio  Alsina;  knowledge  of  Emilio
Castillo  when  he  saw  and  talked  to  Orlando  Ocasio
Alsina  about  his  needs  and  physical  condition,
callous   disregard,   recklessness   and   other
matters  (such  as  knowledge  of  defendants  or  that
they  should  have  known  of  Orlando  Ocasio  Alsina's
medical  needs).  Facts  that  establish  that  Emilio
Castillo  was  a  correctional  officer,  that  at  the
time  of  the  facts  he  was  working  in  the  scope  and
course  of  his  employment  within  the  state  agency.
Also,  he  will  testify  regarding  plaintiff's
damages.  Furthermore,  he  will  testify  regarding
the  authenticity  and  admissibility  of  documents.
Needs  an  interpreter.

g.   Carmelo Román Hernández
Hogar de Adaptación Social de Carolina
Calle Amadeos # 8 Altos
Carolina, P.R.   00985
May call if need arises
He  will  testify  regarding  facts  that  will
establish  defendants'  deliberate  indifference,
direct  statements  he  made  to  Emilio  Castillo
about  Orlando  Ocasio  Alsina;  knowledge  of  Emilio
Castillo  when  he  saw  and  talked  to  Orlando  Ocasio
Alsina  about  his  needs  and  physical  condition,
callous  disregard,  recklessness  and  other  matters
(such  as  knowledge  of  defendants  or  that  they
should  have  known  of  Orlando  Ocasio  Alsina's
medical  needs).  Facts  that  establish  that  Emilio
Castillo  was  a  correctional  officer,  that  at  the
time  of  the  facts  he  was  working  in  the  scope  and
course  of  his  employment  within  the  state  agency.
Also,  he  will  testify  regarding  plaintiff's
damages.  Furthermore,  he  will  testify  regarding
the  authenticity  and  admissibility  of  documents.
Needs  an  interpreter.

h.   Wilson García Cueva
     Hogar de Adaptación Social de Humacao
     Ave. Roosevelt # 5
     Humacao, P.R.  00791
     May call if need arises
     He  will  testify  regarding  facts  that  will
     establish  defendants'  deliberate  indifference,
     direct  statements  he  made  to  Emilio  Castillo
     about  Orlando  Ocasio  Alsina;  knowledge  of  Emilio
     Castillo when he saw and talked to Orlando Ocasio
     Alsina  about  his  needs  and  physical  condition,
     callous   disregard,   recklessness   and   other
     matters  (such  as  knowledge  of  defendants  or  that
     they have should have known of Orlando Ocasio Alsina's
     medical needs). Facts that establish that Emilio
     Castillo was a correctional officer, that at the
     time of the facts he was working in the scope and
     course of his employment within the state agency.
     Also,  he  will  testify  regarding  plaintiff's
     damages.  Furthermore,  he  will  testify  regarding
     the authenticity and admissibility of documents.
     Needs an interpreter.


I.   Edwin Rivera
     Carcel Regional de Bayamón
     Detrás de la Comandancia Norte de Bayamón
     Carr. # 5
     Bayamón, P.R.
     May call if need arises
     He  will  testify  regarding  facts  that  will
     establish  defendants'  deliberate  indifference,
     callous disregard, direct statements he made to
     Emilio  Castillo  about  Orlando  Ocasio  Alsina;
     knowledge  of  Emilio  Castillo  when  he  saw  and
     talked to Orlando Ocasio Alsina about his needs
     and  physical  condition,  recklessness  and  other
     matters  (such  as  knowledge  of  defendants  or  that
     they should have known of Orlando Ocasio Alsina's
     medical needs). Facts that establish that Emilio
     Castillo was a correctional officer, that at the
     time of the facts he was working in the scope and
     course of his employment within the state agency.
     Also,  he  will  testify  regarding  plaintiff's
     damages.  Furthermore,  he  will  testify  regarding
     the authenticity and admissibility of documents.
     Needs an interpreter.

j.   Edwin Meléndez Meléndez
     Carcel Regional de Bayamón
     Detrás de la Comandancia Norte de Bayamón
     Carr. # 5
     Bayamón, P.R.
     May call if need arises
     He will testify regarding facts that will
     establish defendants' deliberate indifference,
     callous disregard, direct statements he made to
     Emilio Castillo about Orlando Ocasio Alsina;
     knowledge of Emilio Castillo when he saw and
     talked to Orlando Ocasio Alsina about his needs
     and physical condition, recklessness and other
     matters (such as knowledge of defendants or that
     they should have known of Orlando Ocasio Alsina's
     medical needs). Facts that establish that Emilio
     Castillo was a correctional officer, that at the
     time of the facts he was working in the scope and
     course of his employment within the state agency.
     Also, he will testify regarding plaintiff's
     damages. Furthermore, he will testify regarding
     the authenticity and admissibility of documents.
     Needs an interpreter.


k.   Javier Rodríguez Torred
     Hogar de Adaptación Social de Carolina
     Calle Amadeous # 8 Altos
     Carolina, P.R.
     May call if need arises
     He will testify regarding facts that will
     establish defendants' deliberate indifference,
     callous disregard, recklessness, direct
     statements he made to Emilio Castillo about
     Orlando Ocasio Alsina; knowledge of Emilio
     Castillo when he saw and talked to Orlando Ocasio
     Alsina about his needs and physical condition,
     and other matters (such as knowledge of
     defendants or that they should have known of
     Orlando Ocasio Alsina's medical needs). Facts
     that establish that Emilio Castillo was a
     correctional officer, that at the time of the
     facts he was working in the scope and course of
     his employment within the state agency. Also, he
     will testify regarding plaintiff's damages.

Furthermore, he will testify regarding the
authenticity and admissibility of documents.
Needs an interpreter.

l.  María Alsina Ortiz
    C K 20  Reparto Montellano
    Caguas, P.R.  00736
    Tel. 263-4683
    Expect to call
    She will testify regarding facts that will
    establish defendants' deliberate indifference,
    callous disregard, direct statements he made to
    Emilio Castillo about Orlando Ocasio Alsina;
    knowledge of Emilio Castillo when he saw and
    talked to Orlando Ocasio Alsina about his needs
    and physical condition, recklessness and other
    matters (such as knowledge of defendants or that
    they should have known of Orlando Ocasio Alsina's
    medical needs). Facts that establish that Emilio
    Castillo was a correctional officer, that at the
    time of the facts he was working in the scope and
    course of his employment within the state agency.
    Also, she will testify regarding plaintiff's
    damages. Furthermore, she will testify regarding
    the authenticity and admissibility of documents.
    Needs an interpreter.

m.  María E. Ocasio Alsina
    C K 20  Reparto Montellano
    Caguas, P.R.  00736
    Tel. 263-2046
    Expect to call
    She will testify regarding facts that will
    establish defendants' deliberate indifference,
    callous disregard, recklessness, direct
    statements he made to Emilio Castillo about
    Orlando Ocasio Alsina; knowledge the physical
    condition and needs of Emilio Castillo when he
    saw Orlando Ocasio Alsina, and other matters
    (such as knowledge of defendants or that they
    should have known of Orlando Ocasio Alsina's
    medical needs). Facts that establish that Emilio
    Castillo was a correctional officer, that at the
    time of the facts he was working in the scope and
    course of his employment within the state agency.

Also, she will testify regarding plaintiff's damages. Furthermore, she will testify regarding the authenticity and admissibility of documents. Needs an interpreter.

n.  Gladys Ocasio Alsina
    Calle 11 P 8 Villa Castro
    Caguas, P.R.  00725
    Tel. 258-2162
    Expect to call
    She will testify regarding facts that will establish defendants' deliberate indifference, callous disregard, knowledge the physical condition and needs of Emilio Castillo when he saw Orlando Ocasio Alsina, recklessness and other matters (such as knowledge of defendants or that they should have known of Orlando Ocasio Alsina's medical needs). Facts that establish that Emilio Castillo was a correctional officer, that at the time of the facts he was working in the scope and course of his employment within the state agency. Also, she will testify regarding plaintiff's damages. Furthermore, facts addressed in her deposition, she will testify regarding the authenticity and admissibility of documents. Needs an interpreter.

o.  Juan Alsina Ortiz
    Carr. #1 km. 0.5 Sector Pepe Hoyos
    Sector Montellanos
    Cayey, P.R. 00736
    May call if need arises
    He will testify regarding facts that will establish defendants' deliberate indifference, callous disregard, recklessness, knowledge the physical condition and needs of Emilio Castillo when he saw Orlando Ocasio Alsina, and other matters (such as knowledge of defendants or that they should have known of Orlando Ocasio Alsina's medical needs). Also, he will testify regarding plaintiff's damages. Facts that establish that Emilio Castillo was a correctional officer, that at the time of the facts he was working in the scope and course of his employment within the state agency. Furthermore, he will testify

63

regarding the authenticity and admissibility of documents. Needs an interpreter.

p.    Antonio Carattini Laboy
      C K 20  Reparto Montellano
      Caguas, P.R.  00736
      Tel. 263-2046
      Expect to call
      He will testify regarding facts that will establish defendants' deliberate indifference, callous disregard, recklessness and other matters (such as knowledge of defendants or that they should have known of Orlando Ocasio Alsina's medical needs). Also, he will testify regarding plaintiff's damages. Furthermore, he will testify regarding the authenticity and admissibility of documents. Needs an interpreter.

q.    Ms. María Virgen Burgos
      Carr. #1 km. 0.5 Sector Pepe Hoyos
      Sector Montellanos
      Cayey, P.R. 00736
      Expect to call
      She will testify regarding facts that will establish defendants' deliberate indifference, callous disregard, recklessness and other matters (such as knowledge of defendants or that they should have known of Orlando Ocasio Alsina's medical needs). Also, she will testify regarding plaintiff's damages. Furthermore, she will testify regarding the authenticity and admissibility of documents. Needs an interpreter.

v.    Plaintiffs reserve their right to notify further witnesses and/or the use defendants as hostil witnesses.

## B.    Defendant Emilio Castillo's List of Witnesses:

1.    Emilio Castillo Rosado

2.    Mercedes Rosado

3.    Francisco Santos Falcón.

64

4.    We reserved the right to call as witnesses any of
plaintiff's announced witnesses.

## All Defendants' Objections to Plaintiff's Witnesses:

Defendant objects to the general reservation of right to
notify additional witnesses.    Defendant objects to the use of
witnesses that could have but were not notified within the
discovery period that ended on March 31st, 2000.    Defendant,
however, does not object if application is made to the Court and
good cause is shown.

**Plaintiffs' Response:** All of plaintiffs' witnesses were
duly notified during the discovery period. Plaintiff had not
included any new witness. The use of the above-stated witnesses
were duly notified in plaintiffs' answer to the interrogatories
forward by Emilio Castillo, Zoe Laboy and Sixto Marrero, answer
to interrogatories number 11 and 14, dated June 14, 1999.

**OBJECTION: Plaintiffs object** to the use at the trial of the
witnesses that were not notified according to the Case
Management Order, Rules 26 to 37 of the Federal Civil Procedure
Rules. Also, plaintiffs object due to the fact that the Due
Process Clause of the Constitution of the United States had been

breached, because plaintiff could not perform the discovery against does witnesses that never were notified within the period of discovery. Plaintiffs raise Rule 37, of the Federal Rules of Civil Procedure. The witnesses that defendants did not notified prior to this date to the plaintiffs are Emilio Castillo and Francisco Santos Falcon; plaintiffs raise Rule 37, Federal Rules of Civil Procedure. Those witnesses should not be allowed to testify. Regarding all the witnesses, plaintiffs object that a very brief and general statement as to the testimony of such witnesses was not provided as required by Civil Local Rule 16(d) (5) and (7). Plaintiff needs to know the brief statement of each witness and their address in order to prepare her case. Also, plaintiffs object to the use of Mercedes Rosado in order to testify that her husband presents mental condition that precludes that him from testifying, specifically in matters that an expert witnesses should testify, pursuant to Rules 601-602 and 701-705, Federal Rules of Evidence. Also, Plaintiff objects to the use of Emilio Castillo, pursuant to Perdue Farms, Inc. v. NLRB, 144 F.3d 830, 834(D.C. Cir. 1998); states that ALJ properly precluded evidence as evidenciary sanction for failing to respond to subpoena on the same topic. This witness and defendant cannot testify without giving an oath or affirmation sufficient to comply with Federal Rules of Evidence, Rule 603 and the oath does not adequately awaken the

witness' conscience or impress upon the witness a duty to testify truthfully(also pursuant to Rule 603). In United States v. Fowler, 605 F.2d 181(5th Cir. 1979); states that a party or witness who will not give an undertaking to testify truthfully may not testify. In United States v. Fowler, 605 F.2d 181 (5th Cir. 1979); states that a party or a witness who will not offer to testify completely and accurately and to be subject to penalties for perjury may not testify. Also, plaintiff objects because if Emilio Castillo testify it will call for speculation and there is no evidence to support a finding that Castillo has personal knowledge, because he was involved in a car accident and he lost his memory regarding the facts of the case.


## XII. EACH PARTY'S EXPERT WITNESSES


### A. PLAINTIFFS' EXPERT WITNESSES:


a.  Víctor J. Llado, M.D.
    374 Lamar Street
    Hato Rey, PR  00918
    Expect to call
    He will testify regarding Mr. Orlando Ocasio
    Alsina's damages, the adequate or proximate cause
    of the damages of Mr. Orlando Ocasio Alsina, lack of
    medical                  attention to Orlando Ocasio
    Alsina, areas covered in his expert report, his
    qualifications, authenticity of documents
    admissibility of documents, and other areas. He has a

forensic psychiatric training. For his qualifications,
see his curriculum vitae and deposition.

b.          Dr. Farhat Mahjouri Sabat, Neurological Surgery
            La Torre de Plaza, Suite 614, 6th Floor
            525 F.D. Roosevelt Ave.
            San Juan, P.R.   00918
            Tel. 1-787-753-7440
            May call if need arises
            He will establish defendants' deliberate indifference,
            callous disregard and/or recklessness. He will testify
            regarding the medical attention, equipment, and
            services that Mr. Orlando Ocasio Alsina should have
            been provided. Also, he will establish the adequate
            and/or proximate cause of plaintiffs' damages.
            Furthermore, he will testify regarding his expert
            report, his qualifications, his curriculum vitae,
            nature and quality of Orlando Alsina's acts,
            authenticity of documents and admissibility of
            documents. His areas of expertise are neurological
            conditions, he has treated prisoners in Puerto Rico
            and California, and other in other areas.

c.          Dr. Raul Marcial Rojas, patólogo
            Condominio Madrid-Suite 201
            Calle Loiza 1760
            San Juan, P.R.   00911-9222
            Tel. 1-787-753-5336
            Expect to call
            He will testify regarding Mr. Orlando Ocasio Alsina's
            damages. Also, he will testify regarding the cause of
            the death of Mr. Orlando Ocasio Alsina, the adequate
            or proximate cause of death of Mr. Orlando Ocasio
            Alsina, areas covered in his expert report, his
            qualifications, authenticity of document,
            admissibility of documents, and other areas. He is a
            forensic pathologist.

**B. Defendant Emilio Castillo's Expert Witnesses:**

1.        Dr. Glenn Garayalde-Cotroneo – neurologist, will

          testify as to the medical treatment provided to

          Orlando Ocasio-Alsina from November 8, 1997 until

          May 11, 1998.  The use of Dr. Garayalde as expert

          witness was notified on March 31, 2000, copy of

          curriculum vitae also produced.

**OBJECTION:** Plaintiffs object to the use at the trial of the
expert witness, Glenn Garayalde-Cotroneo. Plaintiffs object the
use of the expert witness due to non-compliance of Rule 26
(a)(2)(B). Defendants have not produced the written report of
their expert witness as required on Rule 26 (2)(B). Also, they
did not provided the information required as the qualifications
of the expert witness with all the requirements of Rule 26
(2)(B); such as all publications authorized by the witness
within the preceding ten years; the compensation paid for study
and testimony and a listing of any other cases in which the
witness has testified as an expert at trial or deposition within
the preceding four years. Plaintiff raises Rule 37, Federal
Rules of Civil Procedure. Also, plaintiff objects to the use of
doctor Glenn Garayalde-Cotroneo based on that his opinion is not
supported by reliable methodologies and reasoning, his testimony
should be excluded as speculative. Schneider v. Fried, 320 F.3d
396(3rd Cir. 2003).  He cannot testify as to the cause of death
of Orlando Ocasio Alsina, he never perform any testing with the

evidence that exists at the Forensic Institute, neither examined the decedent. In Washigton v. Armstrong World industries, Inc., 839 F.2d 1121, 1123(8th Cir. 1998); it is a wrongful death case. The decendent's widow alleged that her husband's death resulted from never examined the decendent, but relied solely upon examinations performed by others in reaching his conclusion. The trial court concluded that the medical expert testimony was pure speculation and fundamentally unreliable and excluded the testimony under Federal Rule Evidence Rule 703. The opinion was lacking in reliability and probative value because it was based on possibilities that might exist. The Court may inquire into the reliability and foundation of any expert's opinion to determine its admissibility. In Solorio vs. United States, No. 02-4227, 85 Fed. Approx. 705, 2004 WL 65295(10th Cir. Jan. 15, 2004); states that in a wrongful death case for an accident caused by a government vehicle, the testimony of a neurologist regarding the timing of a seizure suffered by the driver of the vehicle was properly excluded in a summary judgment proceding. This expert should be excluded pursuant to Yeti By Molly Limted vs. Deckers Outdoor Corporation, 259 F.3d 1101 (9th Cir. 2001).

## All Defendants Objections to Plaintiff's Expert Witnesses:

Víctor J. Lladó, M.D. - defendant objects to this witness' testimony as much as it concerns a subject matter not at issue

in this case as is the alleged injuries resulting from a riot in
November 8th, 1997.

Inasmuch as his testimony is based on the opinion of another
expert in this case to which an objection has already been
raised, the use of this witness is also objected.    Defendants
further object to this witness' testimony with regards to what
he calls "institutional professional negligence".    No agency of
the Commonwealth of Puerto Rico nor any official in his official
capacity is a party to this case and the introduction of
evidence regarding this matter will only confuse the jury.
Dr. Farhat  Mahjouri-Sabat – Defendant objects to this witness'
testimony with regards to the adequacy of the forensic
examination, which is a matter not an issue in this case.    It is
further objected as much as this testimony concerns matters
beyond the scope of his expertise in forensic pathology.    As
much as his opinion consists of conclusory assertions it is also
objected.

Dr. Raúl Marcial-Rojas – Defendants object to this witness'
testimony regarding medical treatment or any other matter beyond
his expertise as a pathologist.    Plaintiff seeks to obtain from
this witness an opinion on a subject that calls for expertise
not possessed by this witness.    Defendants also object to these
witness conclusory assertions. Defendants further object to this
witness as his expertise concerns a matter not at issue at this

71

case as are the adequacy of the forensic examination and the cause of plaintiff decedent's injury.

**Plaintiffs' response to objections:**

a)   Dr. Marcial Rojas pursuant to Rule 702 could testify regarding scientific, technical, or other specialized knowledge, over areas covered in his deposition and/or expert report. He can testified as a forensic pathologist, he has knowledge and/or expertise of the areas covered in his expert report and/or deposition. He even performed testing with the slides provided by the Forensic Institute. Expert witness can give an opinion over the evidence he has examined and the cause of death of Orlando Ocasio Alsina. The allege conclusory assertions are on evidence he had examined. Matters covered by the expert are relevant to the case. His testimony is admissible pursuant to Deering v. Reich, 183 F.3d 645 (7th Cir. 1999); pathologist's experience was sufficient to support his testimony that defendant's wounds indicated a certain physical condition.

b)   Dr. Farhat Mahjouri-Sabat pursuant to Rule 702 could testify regarding scientific, technical, or other specialized knowledge, over areas covered in his deposition and/or expert report. Matters covered in his report are relevant to the case. Also, expert witness could use as evidence in order to provide his expert opinion, evidence that usually an expert witness will

use to base his opinion. The allege conclusory assertions are based on evidence he had examined.

c) Víctor J. Lladó could testify regarding scientific, technical, or other specialized knowledge, over areas covered in his deposition, nature and quality of his acts, unable to understand the wrongfulness and/or expert report. Matters covered in his report are relevant to the case. Also, expert witness could use as evidence in order to provide his expert opinion, evidence that usually an expert witness will use to base his opinion. The allege conclusory assertions are bases on evidence he had examined. Areas covered in his expert report derives on knowledge, skill, experience, training, or education. In Wilson v. Muckala, 303 F.3d 1207(10th Cir. 2002); the expert witness testimony can contain opinions on the plaintiff's psychological condition and treatments. In United States v. Hall, 93 F.3d 1337(7th Cir. 1996); the Court reversed a conviction as the result of exclusion of expert testimony from a psychologist and psychiatrist who opined that the defendant suffers from a personality disorder which causes him to be susceptible to making false confessions. The court concluded that the proposed testimony based upon human behavior and mental disorders was sufficiently based upon human behavior and mental disorders was sufficiently based upon a reliable body of specialized knowledge to assist the trier of fact in reaching a

decision in the action. In Skidmore v. Presicion Printing and Packaging, Inc., 188 F.3d 606(5th Cir. 1999); the Court concluded that the experience and qualifications of the expert witness, and the criteria and methology utilized in reaching the diagnosis of the plaintiff's post traumatic stress disorder were sufficient to support admission. In Newsome v. McCabe, 319 F.3d 301(7th Cir. 2003); it affirms the admission in Section 1983 action of testimony of psychologist to support plaintiff's theory that police coached three eyewitnesses identify him as perpetrator; psychologist testified about extensive tests that revealed that odds of three eyewitnesses mistakenly identifying suspect was less than 1 in 1,000, indication that police coaching was reaponsible. In Howle v. PYA/Monarch, Inc., 344 S.E. 2d 157, 161(S.C. App. 1986; a psychologist, who was not a physician, could testify as an expert on a party's mental and emotional condition. The psychologist could be qualified to testify by virtue of education, training and experience. In United States vs. Thigpen, 4 F.3d 1573, 1579(11th Cir. 1993); states that expert testimony as to whether a victim of schizophrenia would be unable to appreciate the nature and quality of his acts concerned the general effect of schizophrenic disorder. It explained disorder. It explained the disease and its typical effect, and therefore, was admissible. In United States vs. Brown, 32 F.3d 236(7th Cir. 1994).

74

Psychiatric experts were properly permitted to testify regarding the particular characteristics of defendant's mental disease and whether those characteristics would render one unable to understand the wrongfulness or nature and quality of his behavior.

## XIII. EACH PARTY'S STATEMENT SETTING FORTH THE QUALIFICATIONS OF THE EXPERT WITNESSES

### A.   PLAINTIFFS' STATEMENT SETTING FORTH THE QUALIFICATIONS OF THE EXPERT WITNESSES

Experts are qualified to cover the areas covered within their expert reports, curriculum vitae and their deposition. Also, see section XII, A. PLAINTIFFS' EXPERT WITNESSES.

## XIV. EACH PARTY'S STATEMENT AS TO CLAIMS OR DEFENSES WHICH ARE CONSIDERED TO BE WAIVED OR ABANDONED

### A.   PLAINTIFFS' STATEMENT AS TO CLAIMS OR DEFENSES WHICH ARE CONSIDERED TO BE WAIVED OR ABANDONED

What ever is not included in this proposed pretrial order in plaintiffs' part.

**XV.   EACH PARTY'S LIST OF ALL PENDING MOTIONS**

**A.   PLAINTIFFS' LIST OF ALL PENDING MOTIONS**

1.   Plaintiffs reserve their right to file motion(s) to quash and/or motion(s) in limine regarding defendants' witnesses, expert witnesses and/or documentary evidence.

**XVI.  ITEMIZED STATEMENT OF SPECIAL DAMAGES**

**A.   PLAINTIFFS' ITEMIZED STATEMENT OF SPECIAL DAMAGES**

1.   The burial damages stated within plaintiffs' factual version of the case in this document.

2.   The loss of enjoyment, love, affection, care, companionship stated within plaintiffs' factual version of the case in this document.

3.   Other damages claimed by the plaintiffs were physical injuries and/or pain, suffering and mental anguish suffered during does six months, since November, 1997 to May 1998 stated within plaintiffs' factual version of the case in this document.

4.   The punitive damages stated within plaintiffs' factual version of the case in this document.

**XVII.    EACH PARTY'S NEED FOR INTERPRETER**

### A.    PLAINTIFFS' NEED FOR INTERPRETER

Plaintiffs will need an interpreter for the following witnesses:

1.    Mr. Felix Ramos Moulier

2.    Mr. Nathaniel Mojica Reyes

3.    Javier Del Valle Llopiz

4.    Gilberto Rivera Rodríguez

5.    Luis López Negrón

6.    Carmelo Román Hernández

7.    Wilson García Cueva

8.    Edwin Rivera

9.    Edwin Meléndez

10.   Javier Rodríguez Torred

11.   Ms. María Alsina Ortiz

12.   Mr. Eric Ariel Díaz Davila

13.   Mr. María Esther Ocasio Alsina

14.   Ms. María Virgen Burgos

15.   Ms. Gladys Ocasio Alsina

16.   Ms. Antonio Caratini

17.   Mr. Juan Alsina Ortiz

18.   Mercedes Rosado

19.   Custodian of Records

20.   Plaintiffs reserve their right to add other names to this list.


**B.  All Defendants need for Interpreters:**

Yes for all witnesses.


**XVIII.    EACH PARTY LIST OF TECHNICAL WORDS AND PHRASES**


**A.    PLAINTIFFS' LIST OF TECHNICAL WORDS AND PHRASES**

None at the present time, but the appearing party reserve their right to notify a list later on.


**XIX. DOCUMENTARY EVIDENCE**


**PLAINTIFFS' LIST OF EVIDENCE:**


1.   A picture of Mr. Orlando Ocasio Alsina. (Plaintiffs'
     Identification A).

2.   Transcript of deposition of Felix Ramos Moliet page 7
     lines 2-20; page 12 lines 4-10; page 37 lines 17-20;
     page 50 lines 7-24 to page 51 lines 1-19; page 5 lines
     17-23; page 41 lines 14-18; page 4 lines 4-24 to page

5 lines 1-15; it will be used if the declarant is
unavailable at the trial, to refresh the memory of the
witnesses and as prior inconsistent statement.
(Plaintiffs' Identification B).

3.  Transcript of deposition of Erik Díaz Dávila page 5
lines 13-24; page 7 lines 3-10; page 9 lines 21-24;
page 10 lines 8-24 to page 11 lines 1-11; page 12
lines 1-3; page 14 lines 16-19; page 22 lines 2-9;
page 24 lines 17-22; and page 27 lines 9-20; it will
be used if the declarant is unavailable at the trial,
to refresh the memory of the witnesses and as prior
inconsistent statement. (Plaintiffs' Identification
C).

4.  Dr. Farhad Mahjouri's expert report. (Plaintiffs'
Identification D).

5.  Dr. Víctor Llado's expert report. (Plaintiffs'
Identification E).

6.  Dr. Víctor Llado's curriculum vitae. (Plaintiffs'
Identification F.

7.  Dr. Raul Marcial's expert report. (Plaintiffs'
Identification G).

8.  Dr. Farhad Mahjouri's curriculum vitae. (Plaintiffs'
Identification H).

9.    Dr. Raúl Marcial's curriculum vitae. (Plaintiffs' Identification I).

10.   Plaintiffs reserve its right to notify other documents as evidence, due to fact that they are trying to obtain them from co-defendants and third parties.

**B. Defendant Emilio Castillo's List of Exhibits:**

1. Medical Record of Orlando Ocasio-Alsina from the Health Correctional Services Program.

Exhibit 2. Sworn statement by Emilio Castillo of September 4th, 1998.

Exhibit 3. Waiver of responsibility dated, Dec. 30 1997.

Exhibit 4. Waiver of responsibility dated, Dec. 12 1997

Exhibit 5. All sick call forms included in Ocasio-Alsina's medical report.

Exhibit 6. Infirmary Notes Included in the Ocasio-Alsinas' medical report.

Exhibit 7. Administrative investigation report dated 29 the September 1998 and subscribed by Francisco Santos Falcón.

Exhibit 8. Resolution and order from the state court as of December 23rd 1997.

Exhibit 9. Minutes from the state court as of criminal case #ESC-97-G

Exhibit 10. Doctor Certificate as of February 3rd 1998, addressed to Judge Carmen Vargas Medina of the Superior Court of Caguas.

Exhibit 11. Autopsy #1686-98.

Exhibit 12. Negative certificate of Administrative complaint

Exhibit 13. Document of medical care plan of the Administration of Correction of the Commonwealth of Puerto Rico.

Exhibit 14. Letter as of 10th of November 1997, addressed to Mr. Bermúdez

## All Defendants Objections to Plaintiff's Proposed Evidence:

Defendant   reserve   the   right   to   object   plaintiff's documental evidence during trial or through Motion In Limine.


**Plaintiffs response to defendants objections**: Defendants did not comply with Civil Local Rule 16 (d) (6) did not included the supporting authority for their objections to the documents. All of plaintiff exhibits are admissible because defendants failed to objects to them in this document. In Karsten v. Kaiser Foundation Health of the Mid-Atlantic States, inc. 36 F.3d 8, 10(4th Cir. 1994); states that failure to object to exhibits required to be listed in the pretrial order waives right to object at trial. In Koch v. Koch Industries, Inc., 203 F.3d 1202, 1219-1224(10th Cir. 2000); states that court did not err in

excluding issues not listed in the pretrial order and refusing
to amend the pretrial order.

## Plaintiffs objections to defendants' documents:

a) Sworn statement of Emilio Castillo(Exhibit 2): Plaintiffs
object to the admissibility of this document because it is
inadmissible evidence. It is hearsay. Defendants do not
comply with Federal Rule of Evidence, Rule 804(b)(1).
Plaintiff never had an opportunity and similar motive to
develop the testimony by direct, cross or redirect
examination. In Rodriguez vs. Pacificare of Texas, Inc.,
980 F.2d 1014(5th Cir. 1993); in which the deposition
testimony was excluded because opponent not party to
workers' compensation case and had no opportunity to cross-
examine. In Carter vs. Sowders, 5 F.3d 975(6th Cir. 1993); a
video A videotaped deposition may not be admitted against
the accused without opportunity for cross-examination.
Plaintiff never had the opportunity, neither a similar
motive to develop the testimony by direct, cross or
redirect examination of Emilio Castillo when the sworn
statement was prepared. Also, The sworn statement does not
comply with Federal Rules of Evidence, Rule 807. In
Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354(2004);
the Supreme Court of United States expresses that the

Confrontation Clause bars testimonial hearsay unless the witness is unavailable and the accused has had a prior opportunity for cross-examination. Also, Plaintiff argues that there is no circumstantial guarantees of trustworthiness equivalent to those of evidence admissible. Furthermore, the statements within the sworn statement are not more probative on the point, because defendant could have used eye witnesses that could have allegedly testify in favor of Emilio Castillo. They could have allegedly use witness with personal knowledge. No reasonable efforts were made to produce better evidence by defendants. In Schering v. Pfizer, Inc. 189 F.3d 218 (2d Cir. 1999); states that the exception requires necessity and thrustworthiness and should be used rarely and only in exceptional circumstances. In Akrabawi v. carnes Co., 152 F.3d 688, 697(7ᵗʰ Cir. 1998); states that the residual exception is narrowly construed to prevent it from becoming the exception that swallows the rule. In United States v. Tome, 61 F.3d 1446, 1451(10 th Cir. 1995); expresses that Courts must use caution when admitting hearsay under the residual exception, since an expansive interpretation would threaten to swallow the entirety of the hearsay rule. In Conoco, Inc. v. Department of Energy, 99 F.3d 387, 392(Fed. Cir. 1997); states that the residual exception is not intended

to confer a broad license on trial judges to admit hearsay not falling within one of the exceptions in Fed. 803 and 804.

b.     As to defendants Exhibits 3, 4, 7, 10, 12 and 14: Plaintiff objects pursuant to Rules 901-902 of the Federal Rule of Evidence, lack of authentication and it is not admissible by hearsay rules, Rules 801-806, Rules of Evidence. Defendants have not notified witnesses in order to authenticate and make the documents admissible into evidence. It is not admissible to prove the truth of the matter asserted. Also, lack of foundation as to those documents. In Liner v. J.B. Talley & Co., 617 F.2d 327(5th Cir. 1980); states that if the records custodian cannot explain the record keeping procedures for the business, the requirements of Rule 803(6) are not met, and the records are not admissible. Defendants cannot prove at trial the foundation requirements of Federal Rules of Evidence, Rule 803(6) that a person who prepared record had knowledge, the duty to report information and record, personal knowledge of facts and events reported in record, report prepared at or near time acts or events occurred, business regularly prepared such reports and the record exhibits no indication of unreliability or lack of trustworthiness. Defendants neither can establish the foundation required pursuant to Federal Rules of Evidence, Rule 803(8);

which is record is public or official record kept in public custody, record properly prepared in conformance with procedures prescribed by public agency, document prepared by public official who had duty to record facts contained in document, document prepared by public official who had duty to record facts contained in document, public official had personal knowledge of facts contained in document and information in document was of factual nature. Plaintiff also objects to the use of the exhibits listed within this group, for not complying with the Case Management Order and Rule 26 to 37. Plaintiff requests that they be excluded pursuant to Rule 37. Also, in People v. Shipp, 175 Mich. App. 332, 437 N.W. .2d 385(1989); a medical examiner's conclusions contained in an autopsy report do not fall within either the business records or public exception to the hearsay rule. The medical examiner's conclusion about the cause of the victim's death are hearsay statements that do not report acts, transactions, occurances or events, but rather are opinions of a medical examiner not subject to cross-examination. Therefore, the examiner conclusions are not covered by public records exception. Defendants in Exhibits 3, 4, 7, 10, 12 and 14 have opinions not subject to cross-examination. Exhibit 10 constitutes a medical opinion, which is inadmissible under Rule 803(8). In United States v. Davis, 826 F. Supp. 617 (D.R.I. 1993) Rule 803(8); excludes reports of "public offices or

agencies" from hearsay rule. The proponent bears the burden of proving admissibility under Rule 803(8), which requires a showing that the report is a report of a "public agency". Defendants cannot establish this specific requirement as a foundation, regarding Exhibits 3, 4, 7, 10, 12 and 14. In United States v. Oates, 560 F .2d 45 (2d Cir. 1988); states that reports and worksheets of the United States Customs Service chemist were held inadmissible against the defendant in a criminal case because they resulted from an investigation made pursuant to authority granted by law and therefore, were not within the scope of Rule 803(8). Also, the exhibits should be excluded pursuant to Figuers v. Board of Public utilities, 967 F .2d 357 (10th Cir. 1992); in which a draft of a proposed letter to defendant from the U.S. Department of Labor's Office of Federal Contract Complaince  that plaintiff had been a victim of race discrimination was properly precluded from evidence as hearsay because the letter was in draft form and, therefore, did not constitute a factual finding of a public agency.


## XX. DISCOVERY


**Plaintiffs:**

86

Plaintiffs may use any deposition, answer to the interrogatory and answer to the request of production of documents in conformity with the <u>Federal Rules of Civil Procedure</u> and of <u>Evidence</u>.

## XXI. SETTLEMENT DISCUSSIONS:

### Plaintiffs:

Plaintiffs' counsel is willing to enter in settlement conversations once defendants' attorney(s) are willing to make an offer of settlement.

### DEFENDANTS:

On July 10, 2000 plaintiff made a settlement proffer which is under advisement.

## XXII. ESTIMATED TRIAL DAYS

### A.    Plaintiffs:

2 weeks of trial for the plaintiff.

**B.   All Defendants Estimated Length of Trial:**


**XXIII.        SUGGESTED DATE FOR TRIAL**

   October 31, 2005.

**XXIII.    LIMITATIONS AND RESERVATIONS:**

**Plaintiffs:**


   1.   Plaintiffs reserve their right to notify any other evidence, documents, witnesses and/or experts during the proceedings of this case, for good cause.

   2.   Plaintiffs have demanded a jury trial.

   3.   There is reserved to each of the parties the right to call such rebuttal witnesses and documents as may be necessary without prior notice thereof to the other party.

   4.   Plaintiffs reserve their right to file motion(s) to quash and/or motion(s) in limine regarding defendants' witnesses, expert witnesses and/or documentary evidence.

   5.   Plaintiffs will need interpreters.


**B. All Defendants Limitations and Reservations:**

1.    There is reserved to each of the parties the right to further supplement the list of witnesses upon application to the court, and for good cause shown.

2.    There is reserved to each of the parties the right, however, to offer rebuttal testimony of other witnesses, if necessary.

3.    There is reserved to each of the parties the right to call such rebuttal witnesses as may be necessary without prior notice thereof to the other party.

4.    There is reserved to each party the right to submit documents and exhibits   with impeachment and rebuttal purposes without prior notice thereof to the other parties.

5.    It is ordered that the Pretrial Order may be modified at the trial of the action, as prior thereto, to prevent manifest injustice. Such modification may be made either in application of counsel for the parties or on motion of the Court.

6.    It is further ORDERED there is reserved to counsel for the respective parties the right to submit supplemental requests for instructions during the course of trial at the conclusion of the evidence on matters that cannot reasonably be anticipated.


### XVII. Other Matters

A.    Plaintiff

1.    None.

B.    Defendants Emilio Castillo other matters:

None.

The undersigned, Glenn Carl James, represents that the content have been reviewed by the other attorneys and they consent to the filing the undersigned.

**WHEREFORE,** the appearing parties request to the Honorable Court to accept this joint proposed order.

**RESPECTFULLY SUBMITTED.**

At San Juan, Puerto Rico, 24 of October, 2005.

                         s/Glenn Carl James
                         Glenn Carl James, Esq.
                         USDC-PR 207,706
                         Attorney for Plaintiffs
                         JAMES LAW OFFICE
                         PMB 501
                         1353 Rd. 19
                         Guaynabo, PR 00966-2700
                         Tel.(787)763-2888
                         Fax:(787)763-2881
                         E-mail:
                         jameslawoffices@centennialpr.net

                         ROBERTO SANCHEZ RAMOS
                         Secretary of Justice

                         ARLENE GARDON RIVERA
                         Interim Deputy Secretary
                         In Charge of Litigation

                         JO ANN ESTADES BOYER
                         Director of Federal Litigation

                         s/Lavy Aparicio Lopez

LAVY APARICIO LOPEZ
USDC-PR 219503

s/JOSUE GONZALEZ ORTIZ
JOSUE GONZALEZ ORTIZ
USDC-PR 221808
Department of Justice
Federal Litigation Division
P.O. Box 9020192
San Juan, P.R.  00902-0192
Tel. (787) 721-5636
Fax (787) 723-9188
E-mail:
josgonzalez@justicia.gob.pr