IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIA ALSINA ORTIZ, ET AL.<br><br>Plaintiffs<br><br>V.<br><br>ZOE LABOY ALVARADO, ET. AL.<br><br>Defendants | CIVIL CASE NO.  98-1893 (CC)<br><br><br>PLAINTIFFS DEMAND<br>TRIAL BY JURY |

**MOTION FOR RENEWAL OF THE MOTION FOR JUDGMENT
AS A MATTER OF LAW AFTER TRIAL; MOTION FOR NEW TRIAL;
MOTION TO AMEND AND/OR ALTER JUDGMENT; AND/OR REMITTITUR**

**TO THE HONORABLE COURT:**

**COME NOW**, defendants, through the undersigned attorneys and pursuant Rule 50(b), and Rule 59(a) and 59(e) of the Federal Rules of Civil Procedure, very respectfully state and pray as follows:

**I.   INTRODUCTION**

1.0.   The jury trial for this case was held on November 28 2005 and lasted until December 3 2005, pursuant to a civil complaint filed under Section 1983 of the Civil Rights Act, as amended, 42 U.S.C. 1983. ("section 1983") for an alleged lack of access to medical health care to Plaintiff's son, Orlando Ocasio Alsina, while he was incarcerated in the Correctional System at the Bayamón facility.

1.1.   On December 5 2005, judgment was entered on docket pursuant to Rules 58 and 79(a) of the Federal Rules of Civil Procedure, as amended. The Court entered judgment awarding plaintiff, Maria Alsina on behalf of her son, Orlando Ocasio Alsina (hereafter "Plaintiff") the amount of five hundred thousand ($500,000.00) dollars for compensatory damages.

1.2. The appearing defendants contend that the above-mentioned award cannot be sustained by the evidence presented during the trial nor supported by the applicable law. Plaintiff alleged that her son, Ocasio Alsina underwent unnecessary suffering while he was incarcerated at the Bayamón facility due to the alleged fact that defendant, Emilio Castillo did not provide him with access to medical care for his condition of HIV and toxoplasmosis. Notwithstanding, the evidence of record, specifically, Ocasio Alsina's medical record showed that Ocasio Alsina did have access to medical care while he was housed at the Bayamón facility.

1.3. Moreover, after the close of the evidence and absent the jury, the parties discussed with the Court the Jury Instructions. It was well clarified that this case was about the lack of access to medical care, not the medical treatment itself.

1.4. During the deliberation process, the Jury came back with a question regarding the indictment of the case. They wondered if they were supposed to have the indictment of the case to consider while going through the deliberation process. Consequently, the Court, after conferring with the legal counsels, answered the jury's question. Nevertheless, after a total of about two (2) hours of deliberation, the Jury entered a verdict against defendants Emilio Castillo, Mercedes Rosado and their conjugal partnership.

1.5. In view of the foregoing, the appearing defendants contend that the evidence was not sufficient to support the jury's finding in favor of the plaintiff, and that the above-mentioned award cannot be substantiated by the evidence presented in trial nor supported by the applicable law as instructed to the jury. These circumstances constitute the bases for the granting of a judgment as a matter of law under Rule 50(b), a New Trial under Rule 59 (a) of the FRCP be granted, and/or that a Motion to amend and/or alter judgment under Rule 59(e) of the FRCP and/or a Remittitur be entered in favor of defendants. The above-stated will be discussed in detail as follows.

## II. STANDARD FOR MOTION FOR RENEWAL OF THE MOTION FOR JUDGMENTAS A MATTER OF LAW AFTER TRIAL

2.0.  Rule 50(b) of the Federal Rules of Civil Procedure, as amended, states in part:

> (b) RENEWING MOTION FOR JUDGMENT AFTER TRIAL: ALTERNATIVE MOTION FOR NEW TRIAL. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than ten (10) days after entry of judgment- and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:
> (1) if a verdict was returned:
>     (a) allow the judgment to stand,
>     (b) order a new trial, or
>     (c) direct entry of judgment as matter of law; or ....

2.1.  The standard for a court to grant a motion for judgment notwithstanding the verdict (now called Motion for Judgment as a Matter of Law) is the same as that governing motions for directed verdicts.[1] *Joia v. Jo-Ja Service Corp.,* 817 F. 2d 908, 910 (1st Cir. 1987) (See, also *Data General Corp., v. Grammy Systems,* 36 F. 3d 1147 (1st Cir. 1994)). Such motion should only be granted where there can only be one reasonable conclusion drawn from the evidence so that if a fair minded person may disagree as to what the verdict should be, the same should be upheld. *Aggarwal v. Ponce School of Medicine,* 837 F. 2d 17, 19 (1st Cir. 1988). See also, *Loque v. Dore,* 103 F. 3d 1040 (1st Cir. 1997); and *Joia v. Jo-Ja Service Corp., supra,* at pages 910-911. Thus, the motion for Renewal of the Motion for Judgment as a Matter of Law after Trial may be granted when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. When the sufficiency of the evidence is challenged, the

---

[1] As a consequence of the amendments to the Federal Rules of Civil Procedure, this term has been substituted by Motion for Judgment as a Matter of Law.

District Court may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence. *Miranda v. Muñoz,* 770 F. 2d 255, 257 (1st Cir. 1985). Consequently, the court must view the evidence in the light and with all reasonable inferences most favorable to the party who secured a jury verdict. *Feishman v. Clancy,* 763 F. 2d 485, 486 (1st Cir. 1985).

    2.2.    However, the party who secured the jury verdict is not entitled to inferences based on speculation and conjectures. *Jorgensen v. Massachusetts Port Authority,* 905 F. 2d 515, 522 (1st Cir. 1990), citing *Moore's Federal Practice.* The evidence and the inferences to be derived there from must point so strongly in favor of one party that the Court believes that reasonable men could not come to a different conclusion.

    2.3.    As stated in Rule 50(b) of the Federal Rules of Civil Procedure, as amended, the Court can consider a motion under said rule only if the movant has previously moved for a motion for judgment as a matter of law at the close of all the evidence. See, Defendant's Rule 50 Argument presented at trial and included herein as exhibit I. The First Circuit has consistently required that a Motion for Judgment as a Matter of Law cannot be made or considered unless the moving party has properly and timely brought before the Court's attention a Motion for Judgment as a Matter of Law. *Freeman v. Package Machinery Co.,* 865 F. 2d 1331 (1st Cir. 1988); *Wells Real Estate, Inc., v. Greater Lowell Bd. of Realtors,* 850 F. 2d 803 (1st Cir. 1988), cert. denied 488 U.S. 955, 109 S.Ct. 392, 102 L. Ed. 381 (1988); *Della Grotta v. State of Rhode Island,* 781 F. 2d 343 (1st Cir. 1986). The moving party must base its Motion solely on the ground included in the prior motion under Rule 50 (a).

    2.4.    In the instant case, a Motion for Judgment as a Matter of Law under Rule 50(a) was presented after Plaintiff had rested her case. The motion under Rule 50(a) was premised on the fact that Plaintiff had failed to establish a causal link between Ocasio Alsina's suffering and Emilio Castillo's alleged conduct. In other words, that Plaintiff's evidence did not established that Ocasio Alsina had been

denied of access to medical care. From the evidence presented by Plaintiffs it could be reasonably inferred that Ocasio Alsina did not receive adequate medical diagnosis and treatment but there was no evidence at all to establish lack of access to medical health care. Defendant's evidence to establish access to medical care rested exclusively on Ocasio Alsina's medical record, which was stipulated by the parties and admitted in evidence. The medical record cannot be questioned. The record clearly shows that Orlando Ocasio Alsina had access to medical care and therefore, the allegation as to defendant Emilio Castillo denying Ocasio Alsina access to medical care cannot possibly be sustained.

2.5.    In herein defendant's motion under Rule 50 (a), it was brought to the attention of the Honorable Court that Plaintiff had failed to establish the necessary elements to sustain her claim. As in any in a 42 U.S.C. 1983 case the Plaintiff had the burden of proof to establish each and every element of her claim. It was Plaintiff who must have carried the initial burden, under the applicable statute.

2.6.    In other words, Plaintiff had to establish the following:

(a)    that the conduct complained of was committed by a person acting under color of state law;

(b)    that this conduct deprived the plaintiff of right and privileges or immunities secured by the Constitution or laws of the United States, and

(c)    that the defendants' acts were the proximate cause of the injuries and consequently, the damages sustained by the plaintiff.

2.7.    Plaintiff failed to prove all of the three elements necessary to prove her case in chief to then be able to shift the burden of proof to defendants. The alleged conduct was not proven as required by the statute since no intention to harm was established. No connection between the alleged conduct and the damages was established. Given that situation, defendants presented a Rule 50 (a) argument requesting the dismissal of the case. The court reserved the adjudication of the Rule 50. It must be

mentioned that right before Plaintiff presented her last witness, Maria Esther Ocasio Alsina, the court stated that Plaintiff had not yet established a causal link between Ocasio's suffering and defendant Castillo's conduct. Therefore, for Plaintiff to prevail, she had to establish the causal link with the testimony of Maria Esther Ocasio Alsina.

2.8. The only testimony that this witness offered against defendant Emilo Castillo was that she saw Castillo looking at Orlando Ocasio Alsina while in pain and did nothing about it. The was no evidence presented to establish that on that date Orlando Ocasio Alsina did not visit the medical area.

2.9. At the closing of all the evidence, and before the case was submitted to the jury, herein defendants rested and the case proceeded before the jury. We recognize that the jury's role is to evaluate and weigh the evidence, but in the case of caption the only logical explanation for the verdict entered, in the face of the clear insufficiency of the evidence, is that the jury was moved by prejudice against parties ( the correctional medical staff) that were no longer defendants in the case and found defendant Emilio Castillo liable for the conduct of other correctional employees. This is a very clear case of error on the part of the jury that justifies the adjudication of the case as a matter of law.

2.10. It is the jury's duty to determine the facts and in doing so, the jury must consider only the evidence that the Court has admitted in the case. Had the jury truly considered the evidence presented, specially the content of the medical record, the only reasonable conclusion that could have been reached at would have been a verdict in favor of the defendants. The jury took only about two hours of deliberation which suggest that they did not carefully reviewed the medical record which was the only evidence submitted by defendants. Defendant's case rested on that evidence. At least, had the jury understood what a claim under 42 U.S.C. 1983 entailed, what was the liability, if any, of codefendant Emilio Castillo, then the verdict entered would have been proper. In view of the above-stated, defendants very respectfully request that the verdict rendered against defendants Emilio Castillo,

Mercedes Rosado and their conjugal partnership, be set aside.

### III.  STANDARD FOR A MOTION FOR NEW TRIAL

Rule 59:  New Trials, Amendment of Judgments

> (a) Grounds.  A new trial may be granted to all or any of the parties and a on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...."
> (b)  Time for motion.  Any motion for a new trial shall be filed no later than 10 days after entry of the judgment...

3.0.    In both jury and bench trials, the Court should grant a new trial if the verdict is against weight of evidence, damages are excessive, or for other reasons the trial was not fair, or substantial errors occurred in admission or rejection of evidence or giving or refusing to vive an instruction.  *Lewis v. Elliot,* 628 F. Supp. 512, 515-516 (DDC 1986).

3.1.    A new trial may be ordered when the Court is of the opinion that the verdict will result in a miscarriage of justice even if judgment notwithstanding the verdict would not be appropriate.  *Ríos v. Empresas Líneas Marítimas Argentinas,* 575 F. 2d 986, 990 (1st. Cir. 1978); *Quintel Corp., N.V. v. Citibank N.A.*, 606 F.Supp. 898, 906 (SDNY 1985).  Under FRCP 59(a) a new trial can be granted to all or any of the parties and on all or part of the issues, even though courts may decline to make a ruling involving fewer than all parties when the parties' liability is so interrelated as to make such a ruling unfair.

3.2.    The district court may grant a new trial for many reasons.  New trials may be granted, for example, where: a) the district court concludes that the fact finder's verdict is against the "clear" or "great" weight of the evidence and a new trial is therefore necessary to prevent a miscarriage of justice.  See, *Roebuck v. Drexel Univ.,* 852 F. 2d 715, 735-736 (3rd Cir. 1988); and *Piesco v. Koch, 1*2 F. 3d 332, 345 (2nd Cir. 1993); or b) the district court determines that the amount of the verdict is so unreasonable that it shocks the conscience.  See, *Eiland v. Westinghouse Elec. Corp.,* 58 F. 3d 176, 183 (5th Cir. 1995); and

*Consolo v. George,* 58 F. 3d 791, 795 (1st Cir. 1995).

  3.3. Whether the circumstances justify the granting of a new trial is a decision left to the sound discretion of the trial judge. See, *Allied Chemical Corp. v. Daifton, Inc.,* 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed. 2d 193 (1980).

  3.4. The standard for granting a new trial is definitely less onerous than that of granting a motion for judgment as a matter of law. Unlike a motion for judgment as a matter of law, a new trial motion may be granted even if there is substantial evidence to support the verdict. Considering a motion for new trial is not a matter of pure question of law, but of a considerable discretion which allows the trial judge to freely weight all the evidence without viewing it in the light most favorable to the verdict winner. Givens, R., *Manual of Federal Practice,* Volume 2, § 7.70, at page 152. In addition, a waiver of the right to request judgment notwithstanding the verdict does not preclude a party from moving for a new trial. *Wells Real Estate, supra,* at page 810.

  3.5. In light of the above referenced case law, which describes the standards to grant a motion requesting a new trial, this Honorable Court should exercise its discretion in favor of herein defendants in light of the following grounds:

  a). damages award not supported by the evidence and/or was excessive;

  b). jury's verdict is against the clear weight of the evidence; and

  c). the jury instructions given were misinterpreted or erroneous pursuant to the applicable law, and can only be interpreted as being the result of undue passion and prejudice.

  3.6. Since all the above-mentioned reasons are closely intertwined, they will be discussed jointly. In the judgment it was ordered and adjudged that plaintiff Maria Alsina, on behalf of her son, recover from defendants total damages in the amount of five hundred thousand ($500,000.00) dollars.

  3.7. On the first day of trial, after jury selection and opening statements, plaintiff started his

presentation of her case with the testimony of ex-prisoner, Edwin Meléndez. This witness could barely remember the facts of this case. The only testimony he offered against defendant Emilio Castillo was that Castillo would look at Ocasio Alsina all the time, every day. He could not point out a specific date on which he saw this happening probably because he was making it up. He could not establish that on a specific date he saw Castillo looking at Ocasio Alsina, who consequently, was not taken to the medical area. Since the medical record shows that Ocasio Alsina was taken to the medical area many times and to the hospital a few times, the lack of this information leaves Melendez's testimony with very low probative value, if any at all.

    3.8.    This witness testified that he was closed to Orlando Ocasio Alsina most of the time. When asked about Orlando Ocasio Alsina's health condition, he testified that Ocasio Alsina was paralyzed from his waist down. He added that he was certain about it. The medical record and all witnesses did establish that Orlando Ocasio Alsina had part of the right side of his body, particularly, his arm and leg, paralyzed.

    3.9.    Finally, he testified that he had met with Plaintiff's attorney two (2) weeks prior to the trial. This Honorable Judge had been informed by Plaintiff's attorney that he had not been able to reach any inmates (inmates at the time relevant to the facts alleged in this case) to testify at trial until just a couple of days prior to the trial. As a matter of fact, Plaintiff's attorney announced this witness on the first day of trial and the undersigned did object to his testimony. Obviously, the witness was not being truthful.

    3.10.    The second witness for the Plaintiff was expert witness, Dr. Ladó, followed by expert witness Dr. Raúl Marcial Rojas. Their testimony was all about damages and the lack of medical diagnosis and treatment. They pointed out that the medical care that Ocasio Alsina received could not be considered treatment. Therefore, it was their conclusion that Ocasio Alsina was wrongly diagnosed and

therefore, not treated for his medical condition. Neither of them, testified that Ocasio Alsina did not have access to the doctors. Even though they were asked about it, they refused to give a straight answer to the court.

    3.11.    Orlando Ocasio Alsina's mother and two sisters, Maria Esther and Gladys also testified. They testified as to the suffering they saw Ocasio Alsina undergoing. As to defendant Emilio Castillo, they testified that they saw defendant Emilio Castillo looking at Ocasio Alsina while he was in pain, and did nothing about it. They described the scene at that moment in time and testified that they went hysterical went they saw their brother's health condition and that there was another incident with another inmates going on at the same time, causing a lot of noise and revolt. Still, they insisted as to the fact that they saw defendant Castillo looking at Ocasio Alsina even though they did not know who Emilio Castillo was. After eight years, they remember Emilio Castillo and nobody else looking at Ocasio Alsina. At that time, they had no reason to focus on such insignificant detail considering everything else that was going on in that place, as described by witnesses Maria Esther and Gladys, and considering that they did not know Castillo.

    3.12.    During the trial, they both identified defendant Emilio Castillo but it must be taken into account that they had been assisting to the trial for at least three days and they had seen Emilio Castillo every single day prior to the identification. They story is just not believable. After eight years, they all remember the only defendant in this case. They had to testify as to the fact they saw defendant Emilio Castillo looking at Ocasio Alsina because without such testimony they had nothing against defendant Castillo and therefore, no case at all.

    3.13.    Witnesses Maria Esther and Gloria visited Ocasio Alsina three times together and their testimony as to each visit was contradictory. Mrs. Maria Alsina testified that her brother went with her to visit her son. But Maria Esther testified that on their three visits during November and December 1997,

only her mother and her sister went with her. She also had testified so during her deposition in 1999. While Maria Esther Ocasio testified that during their first visit, Orlando Ocasio Alsina was brought before them carried by other inmates, because it was not until Mid-December that a wheelchair had been provided to him, Gloria Ocasio testified that during that first visit, he was in a wheel chair. There were many inconsistencies among their testimony.

    3.14.    The only fact they all agreed on was that they saw defendant Emilio Castillo looking at Ocasio Alsina undergoing pain and did nothing about it. On the other hand, that fact by itself is not sufficient to find Castillo liable. Plaintiff did not establish that on a particular date when defendant Castillo was seen looking at Ocasio Alsina suffering, Ocasio Alsina was not taken to the medical area.

    3.15.    Defendants presented evidence of the dates on which Ocasio Alsina had access to medical care. In turn, Plaintiff's witnesses, testified that Castillo was seen looking at Ocasio Alsina but they cannot establish a specific date. There is evidence in the medical record that shows that Ocasio Alsina was taken to the medical area many times. Maria Esther Ocasio testified during her deposition and during trial that her brother would be taken to the medical area and left there for hours and then they would only give him "Panadol" and "Folic Acid" which did not alleviate his pain. Due to the above, to establish the dates in which defendant Emilio Castillo was seen looking at Ocasio Alsina was crucial for Plaintiff case, because if Ocasio Alsina was taken to the medical area on the same date that defendant Castillo allegedly saw him, then there is no causal link between Ocasio Alsina's suffering and Castillo's conduct. There was no evidence either as to the fact that Emilio Castillo did not do anything. There was no evidence to show that defendant Castillo had nothing to do with the many visits Ocasio Alsina made to the medical area and the external clinics.

    3.16.    Maria Ocasio Alsina testified that she saw defendant Emilio Castillo looking at Orlando Ocasio Alsina screaming in pain and did nothing about it. But, she was confronted with her previous

testimony from a deposition taken on November 3rd 1999, where she testified that defendant Emilio Castillo was responsible for what happened to her brother based solely on the fact that he was present during the November 8th 1997 Riot, and therefore, knew that her brother had been badly hurt and needed medical care. She had never mentioned that she saw defendant Emilio Castillo looking at Ocasio Alsina at any time. It was not until the trial that came up with this version of the facts. Also, her own legal counsel tried to justify her inconsistent testimony by stating that she had been hospitalized at the Panamerican Mental Hospital several times and for that reason she was confused. The court asked her if she had been sick anytime before she was deposed, and she stated that she became ill after her deposition was taken. Therefore, her testimony during the 1999 deposition must be taken as more truthful that her testimony during trial for three reasons. First, her testimony then was more recent from the date of the alleged facts. Second, after the deposition was taken and prior to the trial, she has been mentally ill. Third, when the deposition was taken, there were many other defendants in the case and there was no need to come up with new testimony to put all the blame on defendant Emilio Castillo, so that Plaintiff could prove her case.

      3.17.   Defendants claim that an award of $500,000.00 damages against defendant Emilio Castillo, Mercedes Rosado and their conjugal partnership, in light of the facts developed at trial, is grossly excessive, inordinate and so shocking to the conscience, as to be unconscionable, or the result of undue jury bias or unfair prejudice, and under the applicable statute can not be imposed on them. It is defendants' contention that the award of $500,000.00 in damages is so outrageous that it can only be said to be the result of undue passion and unfair prejudice on the part of the jury, requiring that a new trial be granted or that the judgment be amended or altered and making remittitur an improper alternative. The evidence regarding lack of treatment was entangled with the evidence of lack of access that even if the jury was duly instructed they obviously were not able to establish the difference. This new trial must be

both on the issue of liability and on the issue of damages as the facts of this case and the absence of evidence would not allow for a new trial on the issue of damages only.

3.18.   The verdict against defendants can only be understood as a deviation from the jury instructions, or from the improper understanding of the jury instructions.  We believe that the jury disregarded the instructions and determined liability of the defendants based solely on undue bias and unfair prejudice that they developed during the trial due to the witnesses's testimony about the lack of appropriate treatment to Ocasio Alsina.  It can not be discarded that the Jury may have also misapprehended what was the law, and not understood the law as stated in the jury instructions, even though, from our recollection, a copy of said instructions was present with the Jury during their deliberations.

3.19   The criteria or standard resides and is addressed to the sound discretion of this trial Court.  Neither rigid nor fixed formula can or should prescribe how this principle is to be universally applied.  It corresponds only to the trial Court, which has a feel for the case, how to apply the principle so that substantial justice is done on the facts of the individual case.  See, *Jamison Co. v. Westuass Corp.,* 526 F. 2d 922 (5th Cir. 1976).

3.20.   In the light of the above mentioned statutory and case law which describes the standards to grant a Motion requesting a new trial, this Honorable Court should exercise its discretion in favor of herein defendants in light of the afore-stated grounds.

## IV.  STANDARD FOR A MOTION TO ALTER OR AMEND JUDGMENT

4.0.    Rule 59:  New Trials, Amendment of Judgments

> *(a) Motion to Alter or Amend Judgment.  Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.*

4.1.    Rule 59(e) preserves the district court's right to alter or amend a judgment after the judgment entered.  The case law acknowledges four grounds that justify altering or amending a judgment:

13

to incorporate an intervening change in the law, to reflect new evidence not available at the time of the trial, to correct a clear legal error, and to prevent manifest injustice. See, *E.E.O.C. v. Lockheed Martin Corp.,* 116 F. 3d 110, 112 (4th Cir. 1997). The purpose of a motion to alter or amend a judgment under Rule 59(e) "is to correct manifest errors of law or to present newly discovered evidence." *Committee for the First Amendment v. Campbell,* 962 F. 2d 1517, 1523 (10th Cir. 1992). Thus, under traditional Rule 59(e) standards, motions to alter or amend are granted only if there has been a mistake of law or fact or new material discovered that was unavailable previously. *Figgie International, Incorporated v. Miller,* 966 F. 2d 1178 (7th Cir. 1992). See, also *Corretjer Farinacci v. Picayo,* 149 F.R.D. 435, 437 (1993).

      4.2.     From the issues discussed in the argument for the granting of a motion for a New Trial, it can be determined that the jury verdict has to be set aside, as a matter of law. But, if this Honorable Court does not come to agree with defendant's position, then because the imposition of damages is not supported by the evidence presented during trial, the judgment must be amended accordingly. In the alternative, allowing the jury verdict to stand would constitute manifest injustice, since it would unfairly leave Emilio Castillo, Mercedes Rosado and their legal partnership as responsible parties for the lack of adequate diagnosis and treatment that Orlando Ocasio Alsina was entitled.

      4.3.     Even if defendant Emilio Castillo was liable in some way, the determination on damages is obviously erroneous. Ocasio Alsina was housed at Annex 308 on the 8th day of November 1997, and from the 25th day of November to the 22nd day of December 1997. That is, less that a month out of the about seven month that Ocasio Alsina spent in the correctional system before he died. This data can be easily corroborated by the medical record. The evidence showed that Orlando Ocasio Alsina saw several doctors who knew about his health condition. On many occasions Ocasio was taken to the medical area. If defendant Emilio Castillo was to be found liable, then his liability was minimal compared to that of the doctors and health care personnel who worked for the correctional system who were the ones who could

have helped Ocasio Alsina with his alleged suffering. In addition, the medical record shows that by March 1998, Ocasio Alsina's health condition had significantly improved.

4.4. It is defendants contention that the jury awarded Plaintiff "damages" for the liability of all original parties in this case, instead of making a distinction between the damage allegedly caused by Emilio Castillo and the damage that was allegedly caused by the doctors and medical staff for not diagnosing and treating Ocasio Alsina, correctly.

4.5. We accordingly request that a new trial be ordered. In the alternative, it is requested that the judgment be altered and/or amended to prevent manifest injustice against defendant Emilio Castillo, or that the same be remitted.

## V. REMITTITUR

5.0. Remittitur is a practice used in connection with civil cases tried by jury, whereby the court may grant the plaintiff an election to remit a stated portion of the amount awarded as damages, or submit to a new trial. This practice goes back to the opinion of Justice Story, sitting on circuit, in *Blunt v. Little,* 3 Fed. Cas. 760, No. 1578 (C.C.D. Mass. 1822). Its use in jury cases has become so widespread and has had the apparent approval of so many Supreme Court cases, see, *Dismick v. Shiedt,* 293 U.S. 474, 483-485 (1935), that the remittitur practice has become settled and uniformly accepted by the Federal Courts. See, generally Wright & Miller, *Federal Practice and Procedure*: Civil § 2815 (1973 ed.); 6A *Moore's Federal Practice and Procedure,* Par. 59.08(7).

5.1. If the plaintiff agrees to the remittitur, judgment is entered for the reduced amount. See, *Arkansas Val. Land & Cattle Co. v. Mann,* 130 U.S. 69 (1899). If plaintiff refuses to remit the stated portion of the damages, there must then be a new trial. On appeal from a judgment following the second trial, plaintiff may claim that the court erred in setting aside the original verdict as excessive. But if the plaintiff agrees to remit a portion of the damages, even under protest, he may not later appeal the

propriety of the remittitur. *Donovan v. Penn Shipping Co., Inc.,* 429 U.S. 648, 650 (1977).

  5.2. The majority of cases do not disclose whether the court has guided its discretion under any of these standards. Instead, courts seem to fix the amount somewhere between these two extremes: an amount that Professor Moore describes as one that "a proper functioning jury should have found." We are of the opinion that this standard strikes a proper balance between the court's supervisory powers, judicial economy, and Seventh Amendment's command that no fact tried by jury shall be re-examined other than according to the rules of the common law. As explained by Moore at pp. 59-197-59-198:

> *"This intermediate position gives the defendant the benefit of the full supervisory power of the trial court, and yet the plaintiff has his option to refuse to remit. And it moderately serves the function of remittitur aimed at avoiding the judicial waste of a new trial, for the plaintiff still has a strong incentive to remit. If, on the other hand, the trial court fixes the residue at the lowest amount that it would permit a verdict to stand, this constitutes a considerable intrusion upon the jury's function and the plaintiff's incentive in remitting is reduced to a minimum. True, if the court adopts the other extreme position and orders a remittitur of only the amount which exceeds the very maximum of recovery that it would uphold, the plaintiff has a very strong incentive to accept the option of remittitur. But the defendant, who has no option, does not have the benefit of the trial court's seasoned judgment as to an amount that is ample and yet practicable adjustment."*

  5.3. This intermediate position is particularly fair when the items of damages in a particular case are not susceptible of being placed in a neat compartment, and specially when one of the items relate to mental and emotional damages. Moreover, the difficulty in determining what is the maximum or the minimum of legal damages that may be awarded by a jury in certain cases reveals how unworkable are these two extreme standards. This reality of jury trial is evidenced by the broad discretion that juries and the trial judge are accorded in setting and reviewing damage awards, recognizing that recovery for grief poses special problems for reviewing courts. *Bonn v. Puerto Rico International Airlines, Inc.,* 518 F. 2d 80, 94 (1st Cir. 1975) and cases cited therein.

  5.4. Defendants reinstates the previous paragraphs 4.2 to 4.4. as if fully alleged in this paragraph.

5.4. In view of the afore-stated and in the alternative that the Motion for New Trial and the Motion to Alter or Amend Judgment be denied, defendants request that the compensatory damages be remitted to a just and appropriate amount.

**WHEREFORE**, it is respectfully requested from this Honorable Court that:

a) The motion for renewal of motion for judgment as a matter of law be granted dismissing the claims against the defendants;

b) In the alternative, that the motion for New Trial be granted to defendants because the jury misapprehended the instructions given by this Court and that the jury's verdict was the outcome of undue passion and unfair prejudice because the award is contrary to the weight of the evidence, which will result, if sustained, in a miscarriage of justice.

c) In the alternative, that the motion to alter or amend judgment as to defendants Emilio Castillo, Mercedes Rosado and their conjugal partnership, be granted.

**I HEREBY CERTIFY** that on the 19th day of December 2005, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will sent notification of such filing to the attorneys of record.

**RESPECTFULLY SUBMITTED.**

At San Juan, Puerto Rico, this 19th day of December 2005.

**ROBERTO J. SANCHEZ RAMOS**
Secretary of Justice

**ARLENE GARDON RIVERA**
Assistant Attorney General
In Charge of Litigation

**JO-ANN ESTADES BOYER**

Director of the Federal Litigation Division

S/Lavy Aparicio López
**LAVY  APARICIO LOPEZ**
Attorney at Law
USDC-PR Bar No. 219503

S/Josué Gonzalez
**JOSUE GONZALEZ**
Attorney at Law
USDC-PR Bar No. 221808

**Department of Justice of the**
**Commonwealth of Puerto Rico**
P.O. Box 902192
San Juan Puerto Rico 00902-0192
Tel. (787) 721-2900 Ext. 2615
Fax: No. (787) 723-9188
E-Mail: laaparicio@justicia.gobierno.pr
.