IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIA ALSINA ORTIZ, ET AL.<br><br>Plaintiffs<br><br>V.<br><br>ZOE LABOY ALVARADO, ET. AL.<br><br>Defendants | CIVIL CASE NO. 98-1893 (CC)<br><br><br>PLAINTIFFS DEMAND<br>TRIAL BY JURY |

**MOTION FOR JUDGMENT AS A MATTER OF LAW**

**TO THE HONORABLE COURT:**

    **COME NOW**, defendants, through the undersigned attorneys and pursuant Rule 50(a), very respectfully state and pr

**I. NATURE OF THE CASE**

    1.0.    This is an action brought by Maria Alsina as the sole member of the estate of Orlando Ocasio Alsina against defendants, Emilio Castillo as a result of damages suffered by plaintiff due to alleged breach of Sec. 1983, and 5th, 8th and 14th Amendment of the Constitution of the United States. Plaintiff also invokes the supplemental jurisdiction of this Court as to some state claims.

II. Introduction

    1.1.    This case was initially filed in August 8th 1998 against many defendants including the Correction Administrator and the Correctional Health System, doctors and other state officials. However, after numerous procedural incidents the court granted defendant's Motion for Summary Judgment dismissing the claim in its entirety. The First Circuit reversed as to defendant Emilio Castillo based upon the fact that codefendant Emilio Castillo did not include a statement of

uncontested facts in the Motion for Summary Judgment and the dismissal did not proceed under Rule 12b.

1.2. In synthesis, Plaintiff claims that defendant, Emilio Castillo, as a Correctional employee at Bayamón 308 denied Ocasio Alsina access to medical care. However, after her case in chief, Plaintiff failed to proof the necessary elements to allow a reasonable jury to find defendant Emilio Castillo, liable. No causal connection between defendant Emilio Castillo's action and the damages suffered by Plaintiff Orlando Oacasio Alsina was established.

## II. RULE 50 STANDARD

2.0. Rule 50 requires a court to render judgment as a matter of law when a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56. Thus, the court must review all of the evidence in the record, *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence, *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554-555, 110 S Ct. 1331, 108 L.Ed.2d 504. The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 120 S. Ct. 2097

2.1. In deciding a motion for judgment as a matter of law pursuant to Rule 50 a district court must examine the evidence and draw any inferences in the light most favorable to the nonmoving party. *See, Mangla v. Brown University,* 135 F.3d 80 (1st Cir.1998). In addition, the Court may not "consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 28 (1st Cir.1996) For a court to submit an

issue to the jury, a plaintiff must "present 'more than a mere scintilla' of evidence and may not rely on conjecture of speculation." *Id.* Ultimately, to grant a Rule 50 motion, the Court must find that, as a matter of law, the record would only permit a reasonable jury to reach one conclusion as to the disputed issue. *See, id.; Mangla,* 135 F.3d at 82.

### III    PLAINTIFF 8th AMENDMENT CLAIM

3.0.    To prevail in a Sec. 1983 claim the plaintiff must establish three elements: first, that defendants acted under color of state law, *Gómez v. Toledo,* 446 U.S. 635 (1980); second, that he was deprived of a federally protected right, *Hudson v. Palmer* 468 U.S. 517 (1984); *Daniels v. Williams* 474 U.S. 327 (1986); and third, that defendant or defendants were personally in said violation. This third element requires a showing of a causal connection between the specific defendant and plaintiff's federal rights deprivation. *Gutierrez Rodríguez v. Cartagena,* 882 F2d 553, 559 (1st Cir. 1989); *Pinto v. Jiménez Nettleship* 737 F. 2d 130 (1st Cir. 1984). To make out an Eighth Amendment claim based on the failure to provide adequate medical care, a prisoner must show that the state defendants exhibited "deliberate indifference to his "serious" medical needs; the mere negligent or inadvertent failure to provide adequate care is not enough. *Estelle v. Gamble,* 429 U.S., at 105-106. It must be clarified that, in the instant case the controversy before this court is the lack of access to medical care, not the quality of the treatment offered.

3.1.    Deliberate indifference is defined as: "(1) a grave risk of harm; (2) the defendant's actual or constructive knowledge of that risk; and (3) his failure to take easily available measures to address the risk." *Camilo-Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998)

3.2.    Deliberate indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle v. Gamble,* 429 U.S., at 105-106. In *Farmer v. Brennan*, 511 U.S. 825 the Supreme Court outlined the contours of a prison official liability:

3

"We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.

3.3.    The official must know of and disregard an excessive risk to inmate health or safety, meaning he must be, both, aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference. *Farmer,* 511 U.S. at 837;

"The requisite state of mind may be manifested by the official s response to an inmate's known needs or by denial, delay or interference with prescribed health care." *DesRosiers v. Moran,* 949 F.2d 15, 19 (1st Cir.1991).

On the other hand a "serious medical need" is one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Mahan v. Plymouth County House of Corrections,* 64 F.3d 14 (1rst Cir) Page 18.

3.4.    However, is important to point out that the 1st Circuit have ruled that "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law ", *Layne v. Vinzant,* 657 F.2d 468, 474 (1st Cir.1981)

4

3.5.  This is precisely the situation in the instant case. In order to prevail in her 8th Amendment claim Plaintiff has to establish deliberate indifference from Castillo; Castillo's personal involvement; she must establish that defendant Emilio Castillo knew that Ocasio was at risk and decided to do nothing to prevent that harm from occurring, even though he could have easily done so. *Verser v. Elyea,* 113 F.Supp.2d 1211, 1214 (1st Cir.2000)

3.6.  We concede that Ocasio's condition constituted a serious medical need. However, the evidence presented by plaintiff in this case fall short to demonstrate that Castillo actually knew of, and disregarded an excessive risk to Ocasio's health or safety, since defendants' evidence showed that the medical staff was aware of Alsina's health condition and were prescribing him with "Panadol and Folic Acid. Ocasio's alleged suffering was due to the lack of adequate treatment, not to the lack of access to medical care. In other words, According to the evidence, Ocasio's suffering was not the result of lack of access to medical care due to Emilio Castillo's alleged indifference. It was due to the lack of appropriate diagnosis and treatment by the doctors.

3.7.  Plaintiff sustains that defendant Emilio Castillo ignored Ocasio when he was crying in pain at Annex 308. However, from the medical record, which stipulated by the parties and admitted in evidence, it is clear that Ocasio was taken to the institution medical care unit many times since the first day he arrived to the institution on October 30th 1997. The record shows that after the riot of the November 8th, he was taken to the Bayamón Medical Center and at least one CT Scan was performed. During the period of time of November and December 1997, Ocasio filed sick calls that are part of the medical record in evidence. The record even shows that, in some occasions, he rejected medical attention and to be hospitalized during that time. The medical record also states that the reason why Ocasio rejected treatment and hospitalization was because he did not want to stay in the medical area due to the fact that he was afraid of the gangs. Ex-prisoner and plaintiff's witness, Edwin Melendez declared that Alsina was given a wheelchair. Even though Ocasio signed several

general consents to received medical care he also signed several waivers refusing to be specifically tested and treated for his HIV condition. This is not contradictory evidence because he consented to general medical treatment but excluded specifically testing and treatment for his HIV condition.

3.8.     On the other hand, plaintiff's expert witness, Dr. Marcial Rojas, stated that Ocasio Alsina was wrongly diagnosed, and for that reason, it could be concluded that he received no treatment at all. He never stated that Ocasio never saw a doctor. Though, in his assessment of the case, he disregarded a great deal of important documents that reveals important aspect of Ocasio Alsinas' health condition prior to his confinement, he finally accepted that Ocasio was seen by medical staff but they diagnosed him wrongly.

3.9.     Psychiatrist Dr. Lladó, testified as an expert witness to establish the emotional damages of Ocasio Alsina. It is interesting that he also ignored important aspects of Ocasio Alsina's mental health history like his drug addition to heroine. In any event he declared that the Correction Administration ignored his AIDS Dementia symptoms though he had exhibited those symptoms since June 1997. Contrary to the statements of Marcial Rojas, Lladó declared that Ocasio might have developed AIDS prior to his arrival tyo the Bayamón Institution. In any event, both expert witnesses failed to connect the suffering and death of Ocasio Alcina, which took place on May 11th, with any act or omission of Castillo. Both depicted a problem of wrong diagnostic which resulted in a lack of adequate treatment and <u>not</u> of medical access. They also declared that Ocasio Alsina never ever received any kind of treatment for any of his health conditions, including HIV, Toxoplasmosis, drug abuse, alcohol abuse, and Hepatitis.

3.10.    Finally, Plaintiff Maria Alsina, and Gladys Alsina declared that when they visited Ocasio in jail, sometime during the month of November 1997, they saw Ocasio Alsina very sick and ill and that one of the inmates pointed at Castillo as responsible for the Riot incident. There were some kind of luncheon and at least 60 people, including officials, inmates, and family were gathered.

None of the witnesses could remember if Ocasio was in Annex 308 or 292. They testified that Castillo was looking at Ocasio but could not remember the exact date. They could not establish that when that happened, Ocasio was at Annex 308.   Plaintiff's only evidence against defendant Emilio Castillo was the fact that they saw Castillo looking at Ocasio. That mere incident can't be deemed as a state of mind of denial, delay or interference with prescribed health care." *DesRosiers v. Moran,* 949 F.2d 15, 19 (1st Cir.1991). This incident does not show any intention from Castillo to deny or delay access to medical care or intentionally interfering with the treatment once prescribed specially since Castillo knew that Ocasio had been already taken to the Hospital, as the medical report shows; and there was no medical treatment to follow, as plaintiff's experts witnesses testified..

    3.11.   Plaintiff in this case has entangled lack adequate of medical treatment with lack of access to medical treatment. Both have different standards to constitute violations to the eighth amendment. His claim is posed against the wrong defendant.

    3.12.   In *Morales Feliciano v. Calderon,* 300 F. Supp. 324, the District Court of P.R posed specific examples of what constitutes 8th amendment violations:

Accordingly, the following, have been held to implicate Eighth Amendment rights in the area of mental and medical health care:

  a. Neglecting to fully screen incoming inmates or to detect mental health problems. *De Gidio v. Pung,* 920 F.2d 525, 529-33 (8th Cir.1990); *Lareau v. Manson,* 651 F.2d 96, 109 (2nd Cir.1981); *Inmates of Occoquan v. Barry,* 717 F.Supp. 854 (D.D.C.1989).

  b. Failing to provide a sick call system that ensures access to care and that is capable of effectively handling emergencies. *Bass v. Wallenstein,* 769 F.2d 1173 (7th Cir.1985).

  c. Failure to take steps to minimize the risk of inmate suicide, *see generally, Partridge v. Two Unknown Police Officers,* 791 F.2d 1182 (5th Cir.1986), and appropriate treatment for suicidal patients, *Comstock v. McCrary,* 273 F.3d 693 (6th Cir.2001).

  d. "Interfering with the treatment once prescribed." *Estelle,* 429 U.S at 105, 97 S. Ct. 285. Examples of this form of deliberate indifference are:

    i. the failure to appropriately administer necessary medication, *Montgomery v. Pinchak,* 294 F.3d 492 (3rd Cir.2002) (HIV); *Wynn v. Southward,* 251 F.3d 588

7

        (7th Cir.2001) (heart medication); *Roberson v. Bradshaw,* 198 F.3d 645 (8th Cir.1999) (diabetes);

        ii. the failure to provide transportation to scheduled specialty appointments and other therapy, *Kaminsky v. Rosenblum,* 929 F.2d 922 (2nd Cir.1991); *Waldrop v. Evans,* 871 F.2d 1030 (11th Cir.1989); and

        iii. The failure to provide prescribed medical diets. *Roberson v. Bradshaw,* 198 F.3d 645 (8th Cir.1999); *Kyle v. Allen,* 732 F. Supp. 1157 (S.D.Fla.1990).

    e. Delays in diagnosing and administering appropriate treatment. *Clement v. Gomez,* 298 F.3d 898 (9th Cir.2002); *H.C. v. Jarrard,* 786 F.2d 1080 (11th Cir.1986)

    f. The failure to provide appropriate post surgical care. *Boretti v. Wiscomb,* 930 F.2d 1150 (6th Cir.1991); *Wood v. Sunn,* 865 F.2d 982 (9th Cir.1988).

    g. Cohabitation of severely mentally ill patients with the general population without being tendered any type of mental health treatment, *Cortes-Quinones v. Jimenez Nettleship,* 842 F.2d 556, 560-61 (1st Cir.1988).

    h. Failure to provide a sick call system that ensures the needed care. *Bass by Lewis v. Wallenstein,* 769 F.2d 1173 (7th Cir.1985).

    i. Failure to provide adequate facilities and equipment. *Langley v. Coughlin,* 888 F.2d 252 (2nd Cir.1989), *Inmates of Allegheny County Jail v. Wecht,* 874 F.2d 147 (3rd Cir.1989).

    j. Inadequate record keeping and records management which are critically important to the continuity of medical care, otherwise, the possibility for disaster is created. 342 *Montgomery v. Pinchak,* 294 F.3d 492 (3rd Cir.2002) *Miranda v. Munoz,* 770 F.2d 255 (1st Cir.1985).

Regarding Defendant Castillo, none of these instances were proved.

    3.13.    In sum, the evidence presented in this case is not enough to connect or established any causal connection between the suffering of Ocasio Alsina and any act of Castillo. Defendant's evidence rested completely in the medical record stipulated by the parties and admitted into evidence. There can be no doubt that Ocasio Alsina had constant access to medical care. It does not even matter who provided the access. What matters is that constant access was provided and therefore, even taking plaintiff's witnesses testimony as true as to the fact that defendant Emilio Castillo looked at Ocasio and did nothing about it, there is no connection among Plaintiff's suffering and Castillo's

conduct. Also, Castillo was a Lieutenant whose position was three levels above the correctional officers who had direct contact with the inmates. Plaintiff wrongly moved the jury to adjudicate responsibility to defendant Castillo for lack of diagnosis and treatment to Ocasio Alsina when the controversy was regarding the access to medical care, not medical diagnosis and treatment. It is obvious that regarding Emilio Castillo the required sec. 1983 personal involvement is lacking in this case.

### IV    PLAINTIFF'S 8th SUPPLEMENTAL STATE CLAIMS

4.1.    As to the others state cause of actions "as a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims". *Rodríguez v. Doral Mortg. Corp.,* 57 F. 3d 1168, 1177 (1st Cir. 1995). In those cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims". Id.

4.2.    The use of supplemental jurisdiction in these circumstances is completely discretionary. The exercise of this jurisdiction will be determined on a case-specific basis. See, *Dibbs v. Gonsalves,* 921 F. Supp. 44, 51 (D.P.R. 1996) (restating, *Rodríguez,* 57 F. 3d at 1177. See, also *Rodríguez Cirilo v. García,* 908 F. Supp. 85, 92 (D.P.R. 1995)) ("[t]he assertion of supplemental jurisdiction over state law claims is within a federal court's discretion… [i]f federal law claims are dismissed before trial, however, the state law claims should also be dismissed").

4.3    Considering that plaintiff failed to assert a cognizable §1983 claim and therefore lacks a foundational federal claim to support her alleged state law claims and the Article 1803, this Court should decline to exercise its supplemental jurisdiction over plaintiff's alleged state law claims.

**RESPECTFULLY SUBMITTED.**

**ROBERTO J. SANCHEZ RAMOS**
Secretary of Justice

**ARLENE GARDON RIVERA**
Assistant Attorney General
In Charge of Litigation

**JO-ANN ESTADES BOYER**
Director of the Federal Litigation Division

S/Josué Gonzalez
Josué Gonzalez
Attorney at Law
USDC-PR Bar No. 221808

**Department of Justice of the
Commonwealth of Puerto Rico**
P.O. Box 902192
San Juan Puerto Rico 00902-0192
Tel. (787) 721-2900 Ext. 2615
Fax: No. (787) 723-9188
E-Mail: laaparicio@justicia.gobierno.pr