IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARÍA ALSINA ORTIZ, ET. AL.   *   CIVIL NO. 98-1893 (JAG)
AND/OR THE ESTATE OF MR.    *
ORLANDO OCASIO ALSINA      *
COMPOSE OF MARÍA ALSINA    *
ORTIZ                       *
                           *   PLAINTIFFS DEMAND TRIAL
PLAINTIFFS            *
                           *   BY JURY
VS.                 *
                           *
MS. ZOE LABOY IN HER PERSO-  *
NAL CAPACITY, JOHN DOE IN   *
HIS PERSONAL CAPACITY AND,  *
ET. ALS.              *
                           *
DEFENDANTS           *
                           *

* * * * * * * * * * * * * * *

**PLAINTIFFS' OPPOSITION TO THE MOTION FOR JUDGMENT AS A MATTER OF LAW AFTER TRIAL; MOTION FOR NEW TRIAL; MOTION TO AMEND AND/OR ALTER JUDGMENT; AND/OR REMITTITUR**

**TO THE HONORABLE COURT:**

**COME NOW**, Plaintiffs through their undersigned attorney, and respectfully state and pray:

**I. INTRODUCTION**

1.  On 12/19/05 defendants filed the document entitled Motion for Renewal of the Motion For Judgment As A Matter Of Law After Trial; Motion For New Trial; Motion To Amend And/Or Alter Judgment; and/or Remittitur at docket 337. Plaintiffs hereby file their opposition to the document filed at docket 337. December 24, 25, 26, 31, 2005 and January 1 and 2, 2006 were

Saturdays, Sundays, days appointed as holidays or office of the clerk was inaccessible.

2.  The jury trial for this case was held from November 28 to December 3, 2005 due to the delay of medical access of Orlando Ocasio Alsina. Judgment was entered against defendants for the amount of five hundred thousand dollars($500,000.00). Plaintiffs proved during the trial all necessary elements with more than substantially sufficient evidence and the verdict was according to the clear weight of the evidence. Proof was given that Emilio Castillo delayed the medical access causing the damages to the plaintiffs.

3.  Moreover, the jury instruction filed at docket 332, page 15, letter H was discussed by all the parties and never objected at trial. That instruction expressly **covers the delay of medical access**. Defendants never objected at trial to that instruction; reason why they waived their right at this stage regarding that instruction. Both sides agreed with the Honorable Judge that jury instruction letter H was proper and was read to the jury.

3a. This Honorable Court has jurisdiction of the case pursuant to 28 U.S.C. sections 1331. The instant case is a civil rights case and tort action brought by plaintiffs against Mr. Emilio Castillo, his conjugal partnership and Mercedes Rosado his wife as a result of the damages suffered by plaintiff(s) due

to the breach of 42 U.S.C.A. § 1983, the fifth, Eighth and fourteenth Amendments of the Constitution of the United States of America, other federal Statutes addressed within the Joint Pretrial Order filed at docked 306; Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. 5141-5142, Ramirez Salcedo vs. E.L.A. 96 JTS 41 and Santiago Otero v. Mendez, 135 D.P.R. 540, 557(1994).

## II.  Evidence Presented At Trial

**a.    The Inmate, Edwin Melendez, testified:**

4.   See Edwin Melendez testimony at trial(from now on Exhibit A which is attached to this document), page 4, lines 20-24); states:

"Q. When did you physically see Mr. Orlando Ocasio Alsina? An approximate period of time.  A. From two to three weeks. Q. Okay where you saw him? A. At 308."

See Exhibit A, page 5, lines 1-10; states:

Q. THE COURT: Could you give us the year when you saw – you know, what year was this? THE WITNESS: It was around the 8th of – around the 8th of December…. – December of '97. Q. How many times did you see Mr. Orlando Ocasio Alsina? A. Always. Q. What do you mean "always"? Always during does three weeks? A. Yes.

5.   "Q. After November 8 of 1997, how was he? A. Bad. Q. What do you mean that he was not well? A. Well, that he would get – his eyes would turn around and he would get attacks." (See

Exhibit A, page 5, lines 13-17). "Q. How were his legs? A. From his waist down, they were dead. They were dead. Q. And how looked the semblance of Mr. Orlando Ocasio Alsina? A. Bad." (See Exhibit A, page 6, lines 3-7). "He started to have problems with his body and to have his eyes roll and having those attacks in his body after the riot." (See Exhibit A, page 24, lines 9-11).

6.   See Exhibit A, page 9, lines 19-25 to page 10, lines 1-7); expresses:

> "Q. Where did you see Orlando Ocasio Alsina during those three weeks that you stated for the record? A. At 308. Q. Okay. In what part of 308, sir? A. In the cell. Otherwise in the dining and living area. Q. And who do you know that saw, in that particular area, Mr. Orlando Ocasio Alsina? A. Lieutenant Castillo. Q. How did Mr. Orlando Ocasio Alsina look physically when Mr. Emilio Castillo saw him? ……….. THE witness: Not well."

See Exhibit A, page 10, lines 15-17 to page 11, lines 1-11); states:

> "Q. Where was Mr. Emilio Castillo looking to Orlando Ocasio Alsina? A. In the Cell. Otherwise in the dining hall area. …………………… Q. What happened the first time – let me strike the question for the record. I want to clear it out. What happened the first time that you saw Emilio Castillo looking to Orlando Ocasio Alsina? A….. That Orlando asked him to go to the medical area, but he said that he would send an officer to pick him up or that otherwise he could go directly there, but he never sent an officer to get him or he didn't go pick him up either. Q. You stated for the record that you saw in three weeks Mr. Emilio Castillo seeing Mr. Orlando Ocasio Alsina. When did you see Mr. Emilio Castillo helping Mr. Orlando Ocasio Alsina? A. Never."

7.    See Exhibit A, page 11, lines 12-25 to page 13,

line 1; expresses:

"Q. Why was Mr. Emilio Castillo around the area of the
cell when you saw him? What he was doing, sir? A.
Doing the rounds. ……………….. Q. What did usually Mr.
Emilio Castillo do during that time that he went
through the cell? A. … What they did was they would go
doing the rounds and they would watch to see that
everything was okay. Q. And during those times that
you saw him through the cells and Orlando Ocasio
Alsina was there also, when did Mr. Emilio Castillo
help Mr. Orlando Ocasio Alsina? A. Never. Q. When you
saw Mr. Emilio Castillo take to the informary Mr.
Orlando Ocasio Alsina? A. Never. Q. What noises, if
any, was making Mr. Orlando Ocasio Alsina at his cell?
A. He would just start yelling and saying that he
wanted to be taken to the medical area because – he
wanted to be helped to go to the medical area because
he did not want to die in the institution. When Mr.
Emilio Castillo went to his cell, Mr. Orlando Ocasio
Alsina yelled any time? …… The Witness: That's right.
………. Q. How did Mr. Orlando Ocasio Alsina look every
day that went through, sir? …… The Witness: Well, he
seemed bad. Every day days would go by, he was worse."


8.    See Exhibit A, page 23, lines 17-25; states:

"Q. Okay do you remember on what date did you see
Ocasio Alsina asking help to Castillo, as you
testified before? A. Well, he would always ask
him. Q. So you saw him – about how many times did
you see this? A. I would see that always. I mean,
he would always ask him to take him to the
medical area or to have an officer take him to
the medical area."


9.    See Exhibit A, page 24, lines 16-25 to page 25,

lines 1-6; expresses:

"Q.  Did  Alsina  ever  complained  to  the
correctional officers that were working in that
cell area A. Yes Q.Did he ever complain to

Castillo that he told a correctional officer and that they did nothing? ….. A. That's right."

**b.    Testimony of expert Witness Victor Llado:**

10.  See Exhibit B attached to this document, page 3, lines 3-20); expresses:

"Q. Okay, what is your opinion, sir, with a reasonable degree of medical certainty, as to the emotional damages or mental disorder of Orlando Ocasio Alsina **due to the delay of medical access** when he had toxoplasmosis, HIV dementia, and a head trauma, sir? A. …………….. Therefore, **that lack of access to adequate diagnosis and treatment** from the psychiatric point of view contributed to his suffering and his becoming very emotional, very unstable, due to the depression he was suffering, and it's possible that it may have, in some way, affected his physiological and his physical conditions. Like I explained before, there is a close relationship between the somatic over the physical and the psychological."

See Exhibit B, page 6, lines 8-24; states:

"And then, **after several days, realizing that you can't walk, feeling so dependent, feeling so upset, not** getting sufficient treatment, wanting treatment and **not getting treatment**, will get a person very anxious and very desperate, and eventually start contributing to a depression. Because, after all, ultimately, in many ways, when this happens, it makes you feel you are good for nothing. If nobody pays attention to you, **nobody treats you, nobody helps you,** you feel so bad. You know, you start feeling upset and guilty and feeling, you know, "What's wrong with me? I must be really in bad shape. And then that contributes to the sense of sadness and the depression, because it affects your self-image, your body image, feeling like that. So as time goes by, the depression, untreated, continues to distend and aggravate. That's the normal course of an untreated depression.

### c.    Medical Record of Orlando Ocasio Alsina

11.   Medical record of Orlando Ocasio Alsina evidence that he was injured in the head on November 8, 1997 riot, that he had hemiparalysis after the head injury, he had toxoplasmosis and developed AIDS after the trauma. No treatment was provided to Orlando Ocasio Alsina from November 8, 1997 to January 1, 1998. In no place within the medical record states that Emilio Castillo gave medical access to Orlando Ocasio Alsina. (See Plaintiffs' exhibit #1 marked at trial). Medical record establishes he died in May 1998.

### d.    Testimony of Maria Alsina Ortiz, Maria Esther Ocasio Alsina and Gladys Ocasio Alsina testified:

12.   During the trial Maria Alsina Ortiz, Maria Esther Ocasio Alsina and Gladys Ocasio Alsina testified that Orlando Ocasio Alsina was screaming due to pain and half of his body paralyzed. That Emilio Castillo saw Orlando Ocasio Alsina in the condition that he was during a visit at the end of November, 1997 and he never did anything to help Orlando Ocasio Alsina. Maria Alsina Ortiz testified that she saw during her visits from November to December, 1997 and even after that Orlando Ocasio Alsina was suffering. All of them identified Emilio Castillo in the courtroom as the person that they saw seeing Orlando Ocasio Alsina screaming of the pain and half of his body paralyzed at the Bayamon Correctional Prison. Gladys Ocasio Alsina stated

that Emilio Castillo saw Orlando Ocasio Alsina in that particular time at section 308.

**e.    See Plaintiffs' exhibit # 2:**

13.    Orlando Ocasio Alsina died on May, 1998.

**f.    Testimony of Pathologist Marcial Rojas:**

14.    During the trial the pathologist testified that Orlando Ocasio Alsina was not treated from November 8, 1997 to begging of January, 1998. After, he was qualified he testified that with reasonable medical degree of certainty the delay of medical access, the fact that no treatment was given during the stated period of time, the toxomoplasmosis and the HIV caused him his death. To a question made by the Honorable Court, he answered that Orlando Ocasio Alsina would have been alive longer if he would have been treated and not delayed his medical access during the stated period of time.

**g.    Stipulated Facts:**

15.    Mr. Emilio Castillo is married to Ms. Mercedes Rosado and was married to her during November and December, 1997. (See Proposed Pretrial Order, uncontested facts, pages 44, paragraph 1, docket 306; it was part of the jury instructions, docket 332, page 8, paragraph 1).

16.    Maria Alsina Ortiz is the only inheritor of Orlando Ocasio Alsina. (See Proposed Pretrial Order, uncontested facts,

pages 45, second paragraph 2, docket 306; it was part of the jury instructions, docket 332, page 8, paragraph 2).

17. Emilio Castillo was working as a correctional lieutenant officer at the Bayamón facilities of the Commonwealth of Puerto Rico during the period of time that Orlando Ocasio Alsina was an inmate there, from November to December, 1997. (See Proposed Pretrial Order, uncontested facts, pages 45, paragraph 3, docket 306; it was part of the jury instructions, docket 332, pages 8-9, paragraph 3).

18. On November 8th, 1997 a riot occurred at the Bayamón Correctional Complex. (See Proposed Pretrial Order, uncontested facts, pages 45, paragraph 4, docket 306; it was part of the jury instructions, docket 332, page 9, paragraph 4).

19. After January 2, 1998, Orlando Ocasio Alsina was transferred from Bayamón correctional facility to receive medical treatment and never return. (See Proposed Pretrial Order, uncontested facts, pages 45, paragraph 6, docket 306; it was part of the jury instructions, docket 332, page 9, paragraph 6).

**h. Allege waiver:**

20. The allege waiver were not signed, but the sick calls requesting medical attention were signed by Orlando Ocasio Alsina. The expert witness Marcial Rojas testified that the allege waivers were not valid ones, they do not even state the

alternatives in order to have inform consent from Orlando Ocasio Alsina. Furthermore, one allege waiver was not signed by Orlando Ocasio Alsina, and then two days later a sick call requesting medical attention for Orlando Ocasio Alsina was signed by him.

### III. STANDARD FOR MOTION FOR RENEWAL OF THE MOTION FOR JUDGMENT AS A MATTER OF LAW AFTER TRIAL

21. Rule 50(b) must put the court and the parties on notice of the relief or issue being raised. Andreas v. Volkswagen of America, Inc., 336 F.3d 789(8th Cir. 2003). The motion may include only the grounds raised in the motion for judgment as a matter of law. Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1289-90(11th Cir. 1998) and Freund v. Nycomed Amersham, 347 F.3d 752, 761(9th Cir. 2003). "It is well establish that a motion for judgment n.o.v. 'should be granted only upon a determination that the evidence could lead reasonable men to but one conclusion, a determination made without evaluating the credibility of the witness or the weight of the evidence at trial'". The Honorable Court must view the evidence in the light and with all reasonable inferences most favorable to the party who secured a jury verdict. Feishman v. Clancy, 763 F.2d 485, 486(1st Cir. 1985). It cites Hubbard v. Faros Fisheries, Inc. 626 F.2d 196, 199(1st Cir. 1980); Cazzola v. Codman & Shurtleff, 751 F.2d 53(1st Cir. 1984); Borras v. Sea-Land Service, Inc., 586 F.2d 881, 885(1st Cir. 1978); and Dumas v. MacLean, 404 F.2d

1062, 1064(1st Cir. 1968). The facts stated within paragraphs 4 to 20 of this document at pages 3 to 10; they have to be view in the light most favorable to the plaintiff, credibility determinations or weight of the evidence cannot be given; and those facts can only lead reasonable men to the conclusion that the verdict was proper, without evaluating the credibility of the witness or the weight of the evidence at trial; reason why defendants requests for a Motion For Renewal of the Motion For Judgment as a Matter of Law After Trial should be denied. Plaintiff proved all the elements of their cause of action. Reasonable men could be lead to the conclusion that the verdict was proper.

22. Plaintiffs will prevail in an action brought under section 1983 due to the fact that she was deprived of a right, secured by the Constitution or laws of the United States. Valdivieso Ortiz v. Burgos, 807 F .2d 6, 7(1st Cir. 1986). Plaintiff(s) were deprived of a Constitutional right, which will be discussed further on, such as the Fifth, Eighth and Fourteenth Amendments. Facts stated within paragraphs 4 to 19 of this document, pages 3 to 10 will establish this cause of action.

23. Under a 42 U.S.C. § 1983 case it has to be established that the conduct complied was committed by a person under color of state law. Second, that this conduct deprived the plaintiff

of right and privilege or immunities secured by the Constitution or laws of the United States. Third, that defendants' acts were the proximate cause of the injuries sustained by the plaintiffs. Facts that establish that the conduct complied was committed by a person under color of state law are within paragraph 6 pages 4-5, paragraph 7 page 5, paragraph 12 at page 7, paragraph 8 page 5 and paragraph 17 pages 8-9 of this document. Facts that establish that the conduct deprived the plaintiff of right and privilege or immunities secured by the Constitution or laws of the United States are within paragraph 4 page 3, paragraph 5 page 3-4, paragraph 6 pages 4-5, paragraph 7 page 5, paragraph 8 page 5, paragraph 9 pages 5-6, paragraph 10 pages 6-7, paragraph 11 page 7, and paragraph 12 page 7. Facts that establish that defendants' acts were the proximate cause of the injuries sustained by the plaintiffs are within paragraph 6 pages 4-5, paragraph 7 page 5, paragraph 8 page 5, paragraph 9 pages 5-6, paragraph 10 pages 6-5, paragraph 12 page 7, paragraph 11 page 7, paragraph 12 page 7 and paragraph 14 page 8. **The expert witness's testimonies stated within paragraphs 10 at pages 6-7 and paragraph 14 at page 8 of this document, clearly proves that the delay to medical attention was the proximate cause of the damages of the plaintiff.**

23. Co-defendants were liable, **when prisoner had showed that he suffered cruel and unusual punishment through failure of**

**prison officials to permit him to see a physician for the first three days** following knee injury, **he would be entitled to recover damages in civil rights action for pain and suffering during a three day delay**, which could have been alleviated by treatment or medication had it been rendered. Walnorch v. Mc Monagles, D.C. Pa. 1976, 412 F. Supp. 270. Facts stated within paragraphs 4 to 19, pages 3 to 9 of this document will establish this cause of action.

24.  Co-defendants were liable pursuant to 42 U.S.C. A. § 1983 and Eighth Amendment of the Constitution of the United States, when it was shown that an unreasonable risk of injury and acts or omissions of prison officials causes a sufficient harm, due to their deliberate indifference to the inmate's physical well-being. Swarts v. Johnson, W.D. Mich. 1986, 628 F.Supp. 549. See facts stated within paragraphs 4 to 19 of this document at pages 3 to 9 that will establish this cause of action.

25.  A prison doctor's deliberate indifference to serious medical needs of paralyzed prisoner, as needed in 1983 civil rights action, was established where the doctor knew of prisoner's paraplegia, knew that prisoner was not permitted wheelchair in cellblock, and refused to admit prisoner to infirmary where wheelchair could be used; prisoner was not bathed or given hospital mattress for several days. Weeks v.

13

Chabound, C.A. 6 (Ohio) 1993, 984 F.2d 185. Facts stated within paragraphs 4 to 19 at pages 3-9 of this document will establish this cause of action.

26. Estelle v. Gamble, 97 S.Ct. 285, 291(1976); states that prison guards can manifest the deliberate indifference by delaying access to medical care. Plaintiff establishes the deliberate indifference by delaying medical care in paragraph number 6 at pages 4-5; paragraph 7, page 5; paragraph 8, page 5; paragraph 8 at page 5; and paragraph 12 at page 7; paragraph 9 at pages 5-6; paragraph 10 at pages 6-7; paragraph 14 at page 8 and paragraphs 4 and 5 at pages 3-4 of this document.

27. Alsina-Ortiz vs. Laboy, 400 F.3d 77, 83(1st Cir. 2005); states:

> **"…..prison officials still had a duty to report health needs to the doctors. ………….. But if Castillo knew of prolonged, manifest, and agonizing pain being suffered by Ocasio and did nothing to advise others, we can hardly say it would be impossible to find deliberate indifference.**
> ……………….However, two prisoners testified that Castillo learned of Ocasio's condition in mid-November–shortly after Ocasio was returned to his cell from the Ocasio's extreme suffering–to raise a trial–worthy issue.
> …………………..Even if there were complaints, Castillo might still have believed that nothing more could be done by doctors. Or Castillo may have passed information about Ocasio on to supervisors or to health authorities. But given the evidence already recounted, summary judgment in his favor was not warranted…………..."

Regarding facts that establish that Castillo knew of the prolonged, manifest, and agonizing pain being suffered by Ocasio and did nothing to advise others are within paragraph number 6 at pages 4-5; paragraph 7, page 5; paragraph 8, page 5; paragraph 12 at page 7; paragraph number 9 at pages 5-6; paragraph 10 at pages 6-7; paragraph 12 at page 7; paragraph 10 at pages 6-7; and paragraph 14 at page 8 of this document. Plaintiffs can hardly say it would be impossible to find deliberate indifference with those facts. Defendants never offered evidence during the trial that Castillo might still have believed that nothing more could be done by doctors or Castillo may have passed information about Ocasio on to supervisors or to health authorities. Furthermore, the evidence stated within paragraphs 5 to 19 at pages 3 to 9 of this document is much stronger than the one offered in the opposition to the motion of summary judgment regarding Emilio Castillo, which was reviewed by the Honorable Court of the First Circuit of Boston in the case of Alsina-Ortiz vs. Laboy, 400 F.3d 77, 83(1st Cir. 2005). Finally, the medical record alleged by defendants in no place states that Emilio Castillo did anything for Orlando Ocasio Alsina.

28. Deliberate indifference is defined as: "(1) a grave risk of harm; (2) the defendant's actual or constructive knowledge of that risk and (3) his failure to take easily

available measures to address the risk." Camilo-Robles v. Hoyos, 151 F.3d 1, 7(1st Cir. 1998). Plaintiff establishes the first requirement of grave risk of harm in facts stated in paragraph number 5 at pages 3-4; paragraph 6 at pages 4-5; paragraph 7 at page 4; and paragraph 12 at page 7 of this document. Plaintiff establishes the second requirement of defendant's actual or constructive knowledge of that risk in facts stated in paragraph number 6 at pages 4-5; paragraph 7, pages 5; paragraph 8, page 5; paragraph 8 at page 5; and paragraph 12 at page 7 of this document. Plaintiff establishes the third requirement of failure to take easily available measures to address the risk in facts stated in paragraph number 6 at pages 4-5; paragraph 8 at page 5; paragraph 7 at page 5; paragraph 9 at pages 5-6; paragraph 10 at pages 6-7; paragraph 12 at page 7; paragraph 10 at pages 6-7; and paragraph 14 at page 8 of this document. **The third element is very important, because plaintiffs' cause of action can be proved due to the failure to take easily available measures.**

**29. It is very important to stress, that the causal connection or proximate cause between Castillo's acts, delay or failure to provide medical access was proven in the facts stated in paragraph 10 at pages 6-7; paragraph 14 at page 8; paragraph 12 at page 7, and paragraphs 6 to 9 from pages 4-6.**

30. Edwin Melendez, Maria Alsina Ortiz, Gladys Ocasio Alsina, Maria Esther Ocasio Alsina and Maria Esther Ocasio

Alsina all testified and established the Emilio Castillo's actual knowledge of the grave risk of harm of Orlando Ocasio Alsina and the delay of medical access. See facts within the paragraphs 6 to 9 at pages 4–5; paragraph 12 at page 12 and paragraphs 4 to 5 at pages 3–4 of this document.

## IV. STANDARD FOR A MOTION FOR NEW TRIAL

31.  In Rios v. Empresas Líneas Marítimas, 575 F.2d 986, 990(1st Cir. 1978); states:

> "……..A trial court, in assessing whether to grant a new trial for lack of legally sufficient evidence, does not properly do so merely because it might have come to a result different from that reach by the jury. The district court should order a new trial only when convinced that a miscarriage of justice would otherwise obtain. Where credibility of witnesses is at issue, special care should be taken not to invade the province peculiarly pertaining to the jury. Tennant v. People v. Peoria & Pekin Union Ry., 321 U.S. 29, 35, 64 S.Ct. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520(1944); …………………..We cannot say that the verdict returned by the jury, denying Lineas indemnification from Fred Imbert, was clearly against the weight of the evidence………………….."

Facts stated within paragraphs 4 to 20 of this document at pages 3 to 10; establish that no miscarriage of justice occurred, jury's verdict is clearly and substantially supported by the evidence and that the verdict is not against the weight of the evidence. Where credibility of witnesses is at issue, special care should be taken not to invade the province peculiarly pertaining to the jury.

32.  Paragraphs 4 to 30 at pages 3 to 16 of this document are made part of this section in order to oppose the motion and request for new trial.

33.  Jury instructions were correct and correctly interpreted pursuant to the applicable law. The jury instruction filed at docket 332, page 15, letter H was discussed by all the parties and never objected at trial. That instruction expressly **covers the delay of medical access**. Defendants never objected at trial to that jury instruction; reason why they waived their right at this stage. Both sides agreed with the Honorable Judge that jury instruction letter H was proper and that was why it was read to the jury.  The jury instruction covers the delay of the medical access. See case law and facts discussed in this document regarding the delay of medical access within paragraphs 26, 27, 29 and 30.

34.  In Datskow v. Teledyne Continental Motors Aircraft Prods., a Div. of Teledyne Indus., Inc., D.C.N.Y. 1993, 826 F. Supp. 677; **the jury award was $107,000,000.00** for conscious pain and suffering to estate of individuals who died in airplane crash. The size of the award was indicative of jury's belief that individuals had suffered intensely and that damages should be correspondingly high.

35.  An award in damages to the plaintiff in this case is not infected or tainted by prejudice, it was not excessive and

was well supported in evidence. Plaintiff suffered from November 8, 1997 to the day of death in May, 1998. It was pain and suffering for months. Ms. Maria Alsina Ortiz testified that she saw suffering during different visits that she saw him during November and December, 1997. Furthermore, facts that establish the pain and suffering are within paragraphs 4 to 10 at pages 3–6 of this document. **The Honorable First Circuit Court of Boston in this same case Alsina vs. Laboy, 400 F.3d 77, 78(1ˢᵗ Cir. 2005); states drawing permissible inferences in favor of Alsina, it appears likely that during this six–week period Occasion was in considerable pain, was seriously disabled, cried and screamed in pain and, half paralyzed, could not get about.** The expert witness doctor Victor Llado establishes the pain and suffering, his damages and causal connection in paragraph 10 at pages 6–7. See facts that easily establish an award to the plaintiff for $500,000.00 within paragraphs 4 to 19 pages 3–9 of this document. In Datskow v. Teledyne Continental Motors Aircraft Prods., a Div. of Teledyne Indus., Inc., supra, **the jury award was $107,000,000.00, which 214 times bigger than the award to the estate of Orlando Ocasio Alsina and it was determined that the jury's belief that individuals had intensely suffered and that damages should be correspondingly high. The award in this case is 214 times smaller. The award to the estate of Orlando Ocasio Alsina was not excessive.**

36.   Edwin Melendez remembered very well the facts stated in paragraphs 4 to 11 of this document. Edwin Melendez states facts that far more than just seeing Emilio Castillo Orlando Ocasio Alsina. He stated that Orlando Ocasio Alsina directly requested to Emilio Castillo to take him to the medical area or provided him access, but he never did take him or never send an officer to take him(see paragraphs 6 to 9 and 12 of this document). Specific times when Emilio Castillo delayed the medical access are seen in paragraphs 6 to 9 and 12 of this document. Jury's verdict is clearly supported by the evidence and the verdict is not against the weight of the evidence.

37.   Edwin Melendez was first notified as a witness since the initial disclosures. He was notified also in the Joint Case Management Memorandum filed on July 23, 1999 at docket 55, page 40 letter j. Moreover, his name was part in the Joint Proposed Pretrial Order filed on July 12, 2000, at docket 121, page 146, letter j. Also, his name was part of Plaintiff's Proposed Pretrial Order filed on April 20, 2005 at docket 291, page 37, letter j. Furthermore, his name was part of the Joint Proposed Pretrial Order filed in October 24, 2005, docket 306, page 61, letter j. Defendants should have performed discovery of Edwin Melendez during the discovery period, but they waived their right. The witness was notified since the beginning. His name never was objected by the defendants within the Joint Proposed

Pretrial Order filed on October 24, 2005. Defendants did not object to the admissibility of his testimony at trial at the specific time that he was called as a witness, so defendants waived their objection at this stage. Plaintiff even reduced their list of witness in the document entitled plaintiffs' informative disclosure at docket 317. Defendants provided the address of the inmates on November 15, 2005, and plaintiff reduced the list, excluding 5 inmates as witnesses on November 21, 2005, at docket 317. Plaintiff confronted problems in order to subpoena for trial the inmates, that is why only Edwin Melendez was used.

38. The testimony of both expert witnesses covered the delay of medical access, the proximate cause or casual connection, not just damages. See paragraph 10 at page 6-7 and paragraph 14 at page 8 of this document.

39. Maria Esther Ocasio Alsina, Maria Alsina Ortiz and Gladys Ocasio Alsina identified Emilio Castillo in the courtroom as the person they saw seeing Orlando Ocasio Alsina screaming and half of his body paralyzed and that he did nothing. Those facts are good enough to establish plaintiff's cause of action(including all other facts stated within paragraphs 4 to 20 of this document) and the verdict is not against the weight of the evidence. **Where credibility of witnesses is at issue, special care should be taken not to invade the province**

**peculiarly pertaining to the jury**. In Rios v. Empresas Líneas Marítimas, 575 F.2d 986, 990(1st Cir. 1978; which cites Tennant v. People v. Peoria & Pekin Union Ry., 321 U.S. 29, 35, 64 S.Ct. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520(1944); Litherland v. Petrolane Offshore Const. Services, 546 F.2d 129, 134 (5th Cir. 1977), rehearing denied; University Computing Co. v. Lykes-Youngstown Corp., supra, 504 F.2d at 531; Fireman's Fund Ins. Co. v. Aalco Wreckling Co., Inc., 466 F.2d 179, 186-187(8th Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592(1973). Tennant v. People v. Peoria & Pekin Union Ry., 321 U.S. 29, 35, 64 S.Ct. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520(1944); Litherland v. Petrolane Offshore Const. Services, 546 F.2d 129, 134 (5th Cir. 1977), rehearing denied; University Computing Co. v. Lykes-Youngstown Corp., supra, 504 F.2d at 531; Fireman's Fund Ins. Co. v. Aalco Wreckling Co., Inc., 466 F.2d 179, 186-187(8th Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592(1973).

## V.   STANDARD FOR A MOTION TO ALTER OR AMEND JUDGMENT

40. Rule 59(e) is appropriate where the court misunderstood the facts, a party's arguments, or the controlling law. Servants of Paraclete v. Does, 204 F.3d 1005, 1012(10th Cir. 2000). Furthermore, Rule 59(e) applies were a clear legal error exists and to prevent a manifest injustice. See Bogart v. Chapell, 396 F.3d 548, 555(4th Cir. 2005) and Caswell v. City of

Detroit Housing Com'n, 418 F.3d 615(6th Cir. 2005). Plaintiff hereby incorporates the case law and legal arguments stated within paragraphs 22 to 39 of this document within this section. Those paragraphs evidence that no legal error occurred, neither manifest injustice, neither the court misunderstood the facts, controlling law and parties arguments. Facts stated within paragraphs 4 to 20 and legal arguments within paragraphs 22 to 39 in this document evidence that no manifest injustice occurred neither the court misunderstood the facts. No amendments are required, neither the jury verdict should be set aside due to the delay of medical access.

41. Within the medical record in no place is even the name of Emilio Castillo. That evidence that he never help Orlando Ocasio Alsina causing the delay to medical access. Also, see paragraphs 6 to 10, paragraph 12, and paragraph 14 in this document that establishes that the verdict for $500,000.00 is not excessive. Plaintiffs incorporate in this argument paragraphs 27 and 28 of this document.

42. An award in damages to the plaintiff in this case is not infected or tainted by prejudice, it was not excessive and was well supported in evidence. Plaintiff suffered from November 8, 1997 to the day of death in May, 1998. It was pain and suffering for months. Ms. Maria Alsina Ortiz testified that she saw suffering during different visits that she saw him during

November and December, 1997. Furthermore, facts that establish the pain and suffering are within paragraphs 4 to 10 at pages 3-6 of this document. **The Honorable First Circuit Court of Boston in this same case Alsina vs. Laboy, 400 F.3d 77, 78(1st Cir. 2005); states drawing permissible inferences in favor of Alsina, it appears likely that during this six-week period Ocasio was in considerable pain, was seriously disabled, cried and screamed in pain and, half paralyzed, could not get about.** The expert witness doctor Victor Llado establishes the pain and suffering, his damages and causal connection in paragraph 10 at pages 6-7. See facts that easily establish an award to the plaintiff for $500,000.00 within paragraphs 4 to 14 pages 3-4 of this document.

## VI.    REMITTITUR

43.  Kennon v. Glimer, 1989, 9 S.Ct. 696, 131 U.S. 22, 33 L.Ed. 110; the Honorable Supreme Court states that the court may not arbitrarily reduce the amount of damages, for to do so would deprive the parties of their constitutional right to a jury trial. In general, remittitur is employed when damage award is intrinsically excessive in sense of being greater than amount reasonable jury could have awarded. Datskow v. Teldyne Continental Motors Aircraft Prods., a Div. of Teledyne, D.C.N.Y. 1993, 826 F.Supp. 677. An award in this case of $500,000.00 is

not intrinsically excessive and the verdict of the jury does not require a new trial neither should be reduced.

44. Plaintiff hereby incorporates paragraph 42 of this document within this section.

**WHEREFORE,** Plaintiffs very respectfully request this Honorable Court to deny defendants' requests stated within the document entitled Motion for Renewal of the Motion for Judgment as a Matter of Law After Trial; Motion for New Trial; Motion to Amend and/or Alter judgment; and/or Remittitur.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY:** I hereby certify that on 3 day of January, 2006 I electronically filed the foregoing with the Clerk of the Court, using CM/ECF system which will send notification of such filing: laaparicio@justicia.gobierno.pr, rurorodriguez@justicia.gobierno.pr,

joestades@justicia.gobierno.pr,        josgonzalez@justicia.gob.pr, and lavyaparicio@yahoo.com.

In San Juan, Puerto Rico, this 4 day of January, 2006.

```
s/ Glenn Carl James          Guaynabo, PR 00966-2700
Glenn Carl James             Tel.(787)763-2888
Attorney for Plaintiffs      Fax:(787)763-2881
USDC-PR 207,706              E-mail:
JAMES LAW OFFICE             jameslawoffices@centennialpr.net
PMB 501
1353 Rd. 19
```