## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| MARÍA ALSINA ORTIZ, ET. AL. | * | CIVIL NO. 98-1893 (JAG) |
| AND/OR THE ESTATE OF MR. | * | |
| ORLANDO OCASIO ALSINA | * | |
| COMPOSE OF MARÍA ALSINA | * | |
| ORTIZ | * | |
| | * | PLAINTIFFS DEMAND TRIAL |
| PLAINTIFFS | * | |
| | * | BY JURY |
| VS. | * | |
| | * | |
| MS. ZOE LABOY IN HER PERSO- | * | |
| NAL CAPACITY, JOHN DOE IN | * | |
| HIS PERSONAL CAPACITY AND, | * | |
| ET. ALS. | * | |
| | * | |
| DEFENDANTS | * | |
| | * | |

* * * * * * * * * * * * * * * *

## PLAINTIFFS' OPPOSITION TO THE MOTION FOR JUDGMENT AS A MATTER OF LAW

**TO THE HONORABLE COURT:**

**COME NOW**, Plaintiffs through their undersigned attorney, and respectfully state and pray:

### I. INTRODUCTION

1.    On 12/19/05 defendants filed the document entitled Motion for Judgment as a Matter of Law filed at docket 337. Plaintiffs hereby file their opposition to the document filed at docket 337.

2.    Plaintiffs proved during the trial the necessary elements to allow a reasonable jury to find defendants liable. Also, proof was given that Emilio Castillo's action or omission

1

and the damages suffered by Plaintiff Orlando Ocasio Alsina were related. Emilio Castillo delayed the medical access to Orlando Ocasio Alsina being the cause of his damages and he died before due to the deliberate indifference of Emilio Castillo in delaying the medical access.

## II. NATURE OF THE CASE

3.    This Honorable Court has jurisdiction of the case pursuant to 28 U.S.C. sections 1331. The instant case is a civil rights case and tort action brought by plaintiffs against Mr. Emilio Castillo, his conjugal partnership and Mercedes Rosado his wife as a result of the damages suffered by plaintiff(s) due to the breach of 42 U.S.C.A. § 1983, the fifth, Eighth and fourteenth Amendments of the Constitution of the United States of America, other federal Statutes addressed within the Joint Pretrial Order filed at docked 306; Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. 5141-5142, Ramirez Salcedo vs. E.L.A. 96 JTS 41 and Santiago Otero v. Mendez, 135 D.P.R. 540, 557(1994).

## III. Evidence Presented At Trial

**a.    The Inmate, Edwin Melendez, testified:**

4.    See Edwin Melendez testimony at trial(from now on Exhibit A which is attached to this document), page 4, lines 20-24); states:

"Q. When did you physically see Mr. Orlando Ocasio Alsina? An approximate period of time. A. From two to three weeks. Q. Okay where you saw him? A. At 308."

See Exhibit A, page 5, lines 1-10; states:

Q. THE COURT: Could you give us the year when you saw – you know, what year was this? THE WITNESS: It was around the 8th of – around the 8th of December…. – December of '97. Q. How many times did you see Mr. Orlando Ocasio Alsina? A. Always. Q. What do you mean "always"? Always during does three weeks? A. Yes.

5.    "Q. After November 8 of 1997, how was he? A. Bad. Q. What do you mean that he was not well? A. Well, that he would get – his eyes would turn around and he would get attacks." (See Exhibit A, page 5, lines 13-17). "Q. How were his legs? A. From his waist down, they were dead. They were dead. Q. And how looked the semblance of Mr. Orlando Ocasio Alsina? A. Bad." (See Exhibit A, page 6, lines 3-7). "He started to have problems with his body and to have his eyes roll and having those attacks in his body after the riot." (See Exhibit A, page 24, lines 9-11).

6.    See Exhibit A, page 9, lines 19-25 to page 10, lines 1-7); expresses:

"Q. Where did you see Orlando Ocasio Alsina during those three weeks that you stated for the record? A. At 308. Q. Okay. In what part of 308, sir? A. In the cell. Otherwise in the dining and living area. Q. And who do you know that saw, in that particular area, Mr. Orlando Ocasio Alsina? A. Lieutenant Castillo. Q. How

did Mr. Orlando Ocasio Alsina look physically when Mr. Emilio Castillo saw him? ……….. THE witness: Not well."

See Exhibit A, page 10, lines 15–17 to page 11, lines 1–

11); states:

"Q. Where was Mr. Emilio Castillo looking to Orlando Ocasio Alsina? A. In the Cell. Otherwise in the dining hall area. …………………… Q. What happened the first time – let me strike the question for the record. I want to clear it out. What happened the first time that you saw Emilio Castillo looking to Orlando Ocasio Alsina? A….. That Orlando asked him to go to the medical area, but he said that he would send an officer to pick him up or that otherwise he could go directly there, but he never sent an officer to get him or he didn't go pick him up either. Q. You stated for the record that you saw in three weeks Mr. Emilio Castillo seeing Mr. Orlando Ocasio Alsina. When did you see Mr. Emilio Castillo helping Mr. Orlando Ocasio Alsina? A. Never."

7. See Exhibit A, page 11, lines 12–25 to page 13, line

1; expresses:

"Q. Why was Mr. Emilio Castillo around the area of the cell when you saw him? What he was doing, sir? A. Doing the rounds. ……………………….. Q. What did usually Mr. Emilio Castillo do during that time that he went through the cell? A. … What they did was they would go doing the rounds and they would watch to see that everything was okay. Q. And during those times that you saw him through the cells and Orlando Ocasio Alsina was there also, when did Mr. Emilio Castillo help Mr. Orlando Ocasio Alsina? A. Never. Q. When you saw Mr. Emilio Castillo take to the informary Mr. Orlando Ocasio Alsina? A. Never. Q. What noises, if any, was making Mr. Orlando Ocasio Alsina at his cell? A. He would just start yelling and saying that he wanted to be taken to the medical area because – he wanted to be helped to go to the medical area because he did not want to die in the institution. When Mr. Emilio Castillo went to his cell, Mr. Orlando Ocasio Alsina yelled any time? …… The Witness: That's right.

4

………. Q. How did Mr. Orlando Ocasio Alsina look every day that went through, sir? …… The Witness: Well, he seemed bad. Every day days would go by, he was worse."

8.   See Exhibit A, page 23, lines 17-25; states:

"Q. Okay do you remember on what date did you see Ocasio Alsina asking help to Castillo, as you testified before? A. Well, he would always ask him. Q. So you saw him – about how many times did you see this? A. I would see that always. I mean, he would always ask him to take him to the medical area or to have an officer take him to the medical area."

9.   See Exhibit A, page 24, lines 16-25 to page 25, lines 1-6; expresses:

"Q. Did Alsina ever complained to the correctional officers that were working in that cell area A. Yes Q.Did he ever complain to Castillo that he told a correctional officer and that they did nothing? ….. A. That's right."

**b.   Testimony of expert Witness Victor Llado:**

10.   See Exhibit B attached to this document, page 3, lines 3-20); expresses:

"Q. Okay, what is your opinion, sir, with a reasonable degree of medical certainty, as to the emotional damages or mental disorder of Orlando Ocasio Alsina **due to the delay of medical access** when he had toxoplasmosis, HIV dementia, and a head trauma, sir? A. …………….. Therefore, **that lack of access to adequate diagnosis and treatment** from the psychiatric point of view contributed to his suffering and his becoming very emotional, very unstable, due to the depression he was suffering, and it's possible that it may have, in some way, affected his physiological and his physical conditions. Like I explained before, there is

5

a close relationship between the somatic over the
physical and the psychological."

See Exhibit B, page 6, lines 8-24; states:

"And then, **after several days, realizing that you
can't walk, feeling so dependent, feeling so upset,
not** getting sufficient treatment, wanting treatment
and **not getting treatment,** will get a person very
anxious and very desperate, and eventually start
contributing to a depression. Because, after all,
ultimately, in many ways, when this happens, it makes
you feel you are good for nothing. If nobody pays
attention to you, **nobody treats you, nobody helps you,**
you feel so bad. You know, you start feeling upset and
guilty and feeling, you know, "What's wrong with me? I
must be really in bad shape. And then that contributes
to the sense of sadness and the depression, because it
affects your self-image, your body image, feeling like
that. So as time goes by, the depression, untreated,
continues to distend and aggravate. That's the normal
course of an untreated depression.

c.  **Medical Record of Orlando Ocasio Alsina**

11.  Medical record of Orlando Ocasio Alsina evidence that
he was injured in the head on November 8, 1997 riot, that he had
hemiparalysis after the head injury, he had toxoplasmosis and
developed AIDS after the trauma. No treatment was provided to
Orlando Ocasio Alsina from November 8, 1997 to January 1, 1998.
In no place within the medical record states that Emilio
Castillo gave medical access to Orlando Ocasio Alsina. (See
Plaintiffs' exhibit #1 marked at trial).

d.  **Testimony of Maria Alsina Ortiz, Maria Esther Ocasio
Alsina and Gladys Ocasio Alsina testified:**

6

12.    During the trial Maria Alsina Ortiz, Maria Esther Ocasio Alsina and Gladys Ocasio Alsina testified that Orlando Ocasio Alsina was screaming due to pain and half of his body paralyzed. That Emilio Castillo saw Orlando Ocasio Alsina in the condition that he was during a visit at the end of November, 1997 and he never did anything to help Orlando Ocasio Alsina. Maria Alsina Ortiz testified that she saw during her visits from November to December, 1997 and even after that Orlando Ocasio Alsina was suffering.

**e.    See Plaintiffs' exhibit # 2:**

13.    Orlando Ocasio Alsina died on May, 1998.

**f.    Testimony of Pathologist Marcial Rojas:**

14.    During the trial the pathologist testified that Orlando Ocasio Alsina was not treated from November 8, 1997 to begging of January, 1998. After, he was qualified he testified that with reasonable medical degree of certainty the delay of medical access, the fact that no treatment was given during the stated period of time, the toxomoplasmosis and the HIV caused him his death. To a question made by the Honorable Court, he answered that Orlando Ocasio Alsina would have been alive longer if he would have been treated and not delayed his medical access during the stated period of time.

**g.    Stipulated Facts:**

15.  Mr. Emilio Castillo is married to Ms. Mercedes Rosado and was married to her during November and December, 1997. (See Proposed Pretrial Order, uncontested facts, pages 44, paragraph 1, docket 306; it was part of the jury instructions, docket 332, page 8, paragraph 1).

16.  Maria Alsina Ortiz is the only inheritor of Orlando Ocasio Alsina. (See Proposed Pretrial Order, uncontested facts, pages 45, second paragraph 2, docket 306; it was part of the jury instructions, docket 332, page 8, paragraph 2).

17.  Emilio Castillo was working as a correctional lieutenant officer at the Bayamón facilities of the Commonwealth of Puerto Rico during the period of time that Orlando Ocasio Alsina was an inmate there, from November to December, 1997. (See Proposed Pretrial Order, uncontested facts, pages 45, paragraph 3, docket 306; it was part of the jury instructions, docket 332, pages 8-9, paragraph 3).

18.  On November 8th, 1997 a riot occurred at the Bayamón Correctional Complex. (See Proposed Pretrial Order, uncontested facts, pages 45, paragraph 4, docket 306; it was part of the jury instructions, docket 332, page 9, paragraph 4).

19.  After January 2, 1998, Orlando Ocasio Alsina was transferred from Bayamón correctional facility to receive medical treatment and never return. (See Proposed Pretrial Order, uncontested facts, pages 45, paragraph 6, docket 306; it

was part of the jury instructions, docket 332, page 9, paragraph 6).

### h.  Allege waiver:

20.  The allege waiver were not signed, but the sick calls requesting medical attention were signed by Orlando Ocasio Alsina. The expert witness Marcial Rojas testified that the allege waiver were not valid ones, they do not even state the alternatives in order to have inform consent from Orlando Ocasio Alsina. Furthermore, one allege waiver that was not signed by Orlando Ocasio Alsina, and then two days later a sick call requesting medical attention for Orlando Ocasio Alsina was signed by him.

### V. STANDARD UNDER RULE 50

21.  The Court must view all evidence in the light most favorable to the party opposing the motion. Galloway v. United States, 319 U.S. 372, 63 S. Ct. 1077, 87 L.Ed. 1458 (1943). It might not make credibility determinations or weight the evidence. Andrade v. Jamestown Housing Authority, 82 F.3d 1179, 1186 (1st Cir. 1996) and Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555, 110 S.Ct. 1331, 108 L.Ed.2d 504. The Court is limited to deciding whether there is evidence on which reasonable people could find for the party opposing the motion. Anderson v. Liberty Lobby, Inc. 1986, 106 S. Ct. 2505, 477 U.S. 242, 91 L.ed.2d 202 and Sullivan v. National Football League,

C.A. 1st, 1994, 34 F.3d 1091. Regarding the facts stated within paragraphs 4 to 19 of this document at pages 2 to 8; they have to be view in the light most favorable to the plaintiff, credibility determinations or weight of the evidence cannot be given; and limited to decide if that evidence would take reasonable people to find for plaintiffs.

## V. PLAINTIFF 8Th AMENDMENT AND 1983 CLAIM

22. Plaintiffs will prevail in an action brought under section 1983 due to the fact that she was deprived of a right, secured by the Constitution or laws of the United States. Valdivieso Ortiz v. Burgos, 807 F .2d 6, 7(1st Cir. 1986). Plaintiff(s) were deprived of a Constitutional right, which will be discussed further on, such as the Fifth, Eighth and Fourteenth Amendments. Facts stated within paragraphs 4 to 19 of this document, pages 2 to 8 will establish this cause of action.

23. Co-defendants were liable, **when prisoner had showed that he suffered cruel and unusual punishment through failure of prison officials to permit him to see a physician for the first three days** following knee injury, **he would be entitled to recover damages in civil rights action for pain and suffering during a three day delay**, which could have been alleviated by treatment or medication had it been rendered. Walnorch v. Mc Monagles, D.C. Pa. 1976, 412 F. Supp. 270. Facts stated within

paragraphs 4 to 19 of this document, pages 2 to 8 will establish this cause of action.

24. Co-defendants were liable pursuant to 42 U.S.C. A. § 1983 and Eighth Amendment of the Constitution of the United States, when it was shown that an unreasonable risk of injury and acts or omissions of prison officials causes a sufficient harm, due to their deliberate indifference to the inmate's physical well-being. Swarts v. Johnson, W.D. Mich. 1986, 628 F.Supp. 549. See facts stated within paragraphs 4 to 19 of this document at pages 2 to 8 that will establish this cause of action.

25. A prison doctor's deliberate indifference to serious medical needs of paralyzed prisoner, as needed in 1983 civil rights action, was established where the doctor knew of prisoner's paraplegia, knew that prisoner was not permitted wheelchair in cellblock, and refused to admit prisoner to infirmary where wheelchair could be used; prisoner was not bathed or given hospital mattress for several days. Weeks v. Chabound, C.A. 6 (Ohio) 1993, 984 F.2d 185. See facts stated within paragraphs 4 to 19 of this document at pages 2 to 8 that will establish this cause of action.

26. Estelle v. Gamble, 97 S.Ct. 285, 291(1976); states that prison guards can manifest the deliberate indifference by delaying access to medical care. Plaintiff establishes the

deliberate indifference by delaying medical care  in paragraph number 6 at page 3-4; paragraph 7, pages 4-5; paragraph 8, page 5; paragraph 8 at page 5; and paragraph 12 at page 7; paragraph 9 at page 5; paragraph 10 at pages 5-6; paragraph 14 at page 7 and paragraphs 4 and 5 at pages 2-3 of this document.

27.  Alsina-Ortiz vs. Laboy, 400 F.3d 77, 83(1st Cir. 2005); states:

> "…..**prison officials still had a duty to report health needs to the doctors. ………….. But if Castillo knew of prolonged, manifest, and agonizing pain being suffered by Ocasio and did nothing to advise others, we can hardly say it would be impossible to find deliberate indifference.**
> ………………However, two prisoners testified that Castillo learned of Ocasio's condition in mid-November-shortly after Ocasio was returned to his cell from the Ocasio's extreme suffering-to raise a trial-worthy issue.
> …………………..Even if there were complaints, Castillo might still have believed that nothing more could be done by doctors. Or Castillo may have passed information about Ocasio on to supervisors or to health authorities. But given the evidence already recounted, summary judgment in his favor was not warranted…………..."

Regarding facts that establish that Castillo knew of the prolonged, manifest, and agonizing pain being suffered by Ocasio and did nothing to advise others are within paragraph number 6 at page 3-4; paragraph 7, pages 4-5; paragraph 8, page 5; paragraph 12 at page 7; paragraph number 9 at page 5; paragraph 10 at pages 5-6; paragraph 12 at page 7; paragraph 10 at pages 5-6; and paragraph 14 at page 7 of this document. Plaintiffs can

hardly say it would be impossible to find deliberate indifference with those facts. Defendants never offered evidence during trial that Castillo might still have believed that nothing more could be done by doctors or Castillo may have passed information about Ocasio on to supervisors or to health authorities. The evidence stated within paragraphs 5 to 19 of this document is much stronger than the one offered in the opposition to the motion of summary judgment, which was reviewed by the Honorable Court of the First Circuit of Boston in the case of Alsina-Ortiz vs. Laboy, 400 F.3d 77, 83(1st Cir. 2005).

28. Deliberate indifference is defined as: "(1) a grave risk of harm; (2) the defendant's actual or constructive knowledge of that risk and (3) his failure to take easily available measures to address the risk." Camilo-Robles v. Hoyos, 151 F.3d 1, 7(1st Cir. 1998). Plaintiff establishes the first requirement of grave risk of harm in facts stated in paragraph number 5 at page 3; paragraph 6 at pages 3-4; paragraph 7 at pages 4-5; and paragraph 12 at page 7 of this document. Plaintiff establishes the second requirement of defendant's actual or constructive knowledge of that risk in facts stated in paragraph number 6 at page 3-4; paragraph 7, pages 4-5; paragraph 8, page 5; paragraph 8 at page 5; and paragraph 12 at page 7 of this document. Plaintiff establishes the third requirement of failure to take easily available measures to

address the risk in facts stated in paragraph number 6 at pages 3-4; paragraph 8 at page 5; paragraph 7 at page 4-5; paragraph 9 at page 5; paragraph 10 at pages 5-6; paragraph 12 at page 7; paragraph 10 at pages 5-6; and paragraph 14 at page 7 of this document. **The third element is very important, because plaintiffs' cause of action can be proved due to the failure to take easily available measures.**

**29. Finally, the causal connection between Castillo's acts, delaying or failure to provide medical access was proven in the facts stated in paragraph 10 at pages 5-6; paragraph 14 at page 7; paragraph 12 at page 7, and paragraphs 6 to 9 from pages 3-5.**

### VI. PLAINTIFFS' SUPPLEMENTAL CLAIMS

30. Ramírez Salcedo v. Estado Libre Asociado, 96 JTS 41, at page 868; states that it is natural and evident that who assumes the custody of a citizen, also he assumes the duty for the security of the person under his custody up to the point to which he cannot take care of himself. The Honorable Court of Puerto Rico recognizes a special duty of care between the government and the citizens that are under the custody of their employees, imposing a duty to the first to take measures to counteract the vulnerability of the person under custody. The vulnerability originates from government employees' acts. See also, Articles 1802 and 1803 of the Civil Code of Puerto Rico.

14

See facts stated within paragraphs 4 to 19 of this document at pages 2 to 8 that will establish this cause of action.

31. Due to the fact that plaintiff establish their cause of action under section 1983, under amendment VIII of the Constitution and under Estelle vs. Gamble, supra(prison guards can manifest deliberate indifference by delaying the medical access), plaintiffs supplemental claims cannot be dismissed.

**WHEREFORE,** Plaintiffs very respectfully request this Honorable Court to deny defendants' Motion for Judgment as a Matter of Law.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY:** I hereby certify that on 3 day of January, 2006 I electronically filed the foregoing with the Clerk of the Court, using CM/ECF system which will send notification of such filing: laaparicio@justicia.gobierno.pr, rurorodriguez@justicia.gobierno.pr, joestades@justicia.gobierno.pr,    josgonzalez@justicia.gob.pr, and lavyaparicio@yahoo.com.

In San Juan, Puerto Rico, this 3 day of January, 2006.

s/ Glenn Carl James         Fax:(787)763-2881
Glenn Carl James             E-mail:
Attorney for Plaintiffs    jameslawoffices@centennialpr.net
USDC-PR 207,706
JAMES LAW OFFICE
PMB 501
1353 Rd. 19
Guaynabo, PR 00966-2700
Tel.(787)763-2888